UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6148-CIV-ZLOCH/JOHNSON

LOUIS H. CHIPPAS,                    :
                                     :
              Petitioner,            :
                                     :          **NIGHT BOX**
                                     :           **FILED**
        v.                           :
                                     :          MAY   4 2000
UNITED STATES PAROLE                 :
COMMISSION, et al,                   :           CLARENCE MADDOX
                                     :        CLERK, USDC / SDFL / FTL
              Respondents.           :
_____/

GOVERNMENT'S RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS PURSUANT
TO TITLE 28, U.S.C., SECTION 2241

The United States of America, by and through its undersigned
Assistant United States Attorney, hereby responds to Petitioner
Chippas's Petition for Writ of Habeas Corpus pursuant to Title 28,
U.S.C., Section 2241 as follows:

PROCEDURAL HISTORY

Petitioner Chippas is a federal prisoner at the Federal
Correctional Institution, Miami, Florida serving an aggregate term
of confinement of fifty years. See Exhibit 1, Sentence Computation
Record.  On January 16, 1986, he was sentenced to a thirty-year
prison term and a five-year probation term by the U.S. District
Court for the Southern District of Florida for conspiracy to
possess cocaine with intent to distribute, and aiding and abetting
an attempt to import cocaine. See Exhibit 2, Judgment in Case No.
84-6033-CR-Roettger.  After a remand from the Court of Appeals for
the Eleventh Circuit, on August 29, 1990, the same court imposed a
twenty-year term of imprisonment, to run consecutively with the



earlier sentence, for the offenses of conspiracy to import methaqualone powder, conspiracy to distribute methaqualone powder, aiding and abetting the importation of methaqualone powder, and interstate travel to distribute proceeds of illegal activities. See Exhibit 3, Judgment in Case No. 84-6034-CR-ZLOCH.

According to the presentence report for his methaqualone offenses, Chippas committed both the cocaine and methaqualone offenses in 1982 after he had been sentenced in New Jersey to a ten-year prison term in 1980 for possession of ten tons of marijuana with intent to distribute. Chippas had been permitted to remain on bail following his sentencing, and had jumped bail. See Exhibit 4, Presentence Report at pages 7-8. Chippas was one of the financiers of the methaqualone importation offense. He also assisted in setting up the importation, participating in discussions to hire a pilot, inspecting an airstrip, and testing radio equipment. The methaqualone was not imported because the pilot backed out of the plan. In the cocaine offense, Chippas conspired with a different group of individuals to import 340 kilograms of cocaine. See Exhibit 4, Presentence Report at pages 8-9. According to the presentence report, Chippas helped to acquire the aircraft and hire a pilot for the cocaine importation. The plane carrying the cocaine crashed and the drug shipment was lost. Shortly thereafter, Chippas participated in another meeting to arrange the shipment of 660 pounds of cocaine, but this transaction never occurred.

Chippas was arrested on December 6, 1982 for unlawful flight

-2-

to avoid confinement, and he was returned to New Jersey to serve his state prison sentence.  <u>See</u> Exhibit 4, Presentence Report at page 8.  He was writted out to the Southern District of Florida to face his federal criminal charges.  <u>Id.</u>  Chippas began serving his federal term on January 16, 1986 after the Bureau of Prisons agreed to commence the term while Chippas was still in New Jersey custody. <u>See</u> Exhibit 1, page 3.  However, he was not released from New Jersey custody to the U.S. Bureau of Prisons until November 18, 1986.  <u>Id.</u>

Chippas applied for parole on October 17, 1995 and acknowledged reviewing his institutional file in preparation for his initial hearing on or about October 20, 1995.  <u>See</u> Exhibit 5. After a review of his case on the record, Chippas was given his initial hearing on November 7, 1995.  <u>See</u> Exhibit 6, Prehearing Assessment, and Exhibit 7, Hearing Summary.  The hearing examiner recommended that Chippas receive a presumptive parole after the service of 180 months on January 15, 2001.  Upon review in the regional office, the reviewing examiner's recommendation set Chippas's presumptive parole date after the service of 204 months on January 15, 2003.  <u>See</u> Exhibit 7 at page 3.  The notice of action informing Chippas of this decision was issued on November 28, 1995.  <u>See</u> Exhibit 8.

In the reasons for the decision, the Commission explained that Chippas's guideline range was 100+ months to be served before release, based on a Category Eight offense severity rating (conspiracy to import more than 18.75 kilograms of cocaine, purity

unknown) and a salient factor score of 8.  Chippas appealed this
decision to the Commission's National Appeals Board.  See Exhibit
9.  The National Appeals Board affirmed the Commission's decision.
See Exhibit 10.

On September 9, 1996, petitioner filed a petition for writ of
habeas corpus in the United States District Court for the Southern
District of Florida, challenging his parole decision.  See Exhibit
11, Petition in Case No. 96-2602-CIV-MIDDLEBROOKS.  Petitioner
argued, among other things, that the Commission did not have a
rational basis for petitioner's parole decision, that the
Commission did not provide adequate reasons for providing him a
parole date more than 48 months above the lower limit of his
guideline range, and that there was unwarranted disparity in the
parole decisions for himself and his codefendant..

On December 12, 1996, the Parole Commission reopened Chippas's
case for a special reconsideration hearing on the next available
docket.  See Exhibit 12.  This action was ordered after a review of
Chippas's habeas petition, his parole file, and the files of
several of his codefendants.  Id.  As the agency explained in the
reasons for its reopening decision, the Commission intended to
reexamine the conclusion that he was a "more serious" parole risk
than shown by his salient factor score.  The purpose of the
reopening was to ensure that the Commission appropriately used the
"more serious" risk reasons for Chippas, who does not have a
history of violence, and to give Chippas the opportunity to present
his arguments on the issue of whether he was a "more serious"

-4-

parole risk.  Id.

        The Commission also explained in the reopening decision that,
in researching Chippas's claim of codefendant disparity, it had
reviewed the file of Joseph Vershish and discovered in Vershish's
file allegations of criminal behavior by Chippas previously unknown
to the Commission.  See Exhibit 12.  The Commission decided that
Chippas should be confronted with the new adverse information and
given an opportunity to respond.  At the same time , the Commission
decided   that   the   allegations   indicated   a   need   to   further
investigate   the   claims   of   criminal   behavior   in   order   to
appropriately determine the risk Chippas posed to the public.  Id.

        Petitioner   received   that   special   reconsideration   hearing
before Dorothy Beale, a hearing examiner of the Parole Commission.
See Exhibit 13.  Examiner Beale concluded that the allegations of
other   criminal   behavior   by   Chippas   were   not   supported   by   the
records   from   Chippas's   codefendant's   file.    She   also   concluded,
however, that Chippas's criminal history indicated that he was a
"poorer" parole risk than shown by his salient factor score (as
opposed to a "more serious" risk).  Examiner Beale recommended that
Chippas's presumptive parole date be reduced by thirty-six months
because she believed that it was unlikely Chippas would repeat his
criminal behavior due to his age.  Id. at page 5.

        After the hearing, Chippas's case was then reviewed by Hearing
Examiner Kathleen Pinner, who functioned as the Executive Hearing
Examiner in his case.  See Exhibit 13 at page 6.  Pinner agreed
with   Examiner   Beale   that   there   was   insufficient   evidence   that

Chippas had committed other criminal behavior.  Id.  However, she disagreed with Beale's conclusion that Chippas was not a "more serious" parole risk, finding that his criminal record of large-scale and extremely large-scale drug importation offenses indicated that there was a significant likelihood that he would resume such a drug offense in the future.  Pinner also discounted the use of Chippas's age for a more lenient decision because Chippas did not commence his drug importation offenses until age 40 and continued his drug crimes until arrested on the instant federal offenses at age 54.  Pinner did not believe that Chippas's propensity for criminal activity would lessen as he aged.  Id. at pages 6-7.

Pinner recommended that Chippas's presumptive parole date should remain at 204 months (January 15, 2003).  A third examiner, Sam Shoquist, and the Regional Commissioner, John Simpson, agreed with Examiner Pinner.  See Exhibit 14.  The concurrence resulted in the Commission decision of May 12, 1997 that continued Chippas to a presumptive parole after the service of 204 months.  See Exhibit 15.  The Notice of Action informed Chippas that he could appeal this decision to the Commission's National Appeals Board under 28 C.F.R. § 2.26, but he failed to do so.

After this decision, Chippas supplemented his earlier arguments in a motion to expedite in Case No. 96-2602-CIV-MIDDLEBROOKS.  In that supplement, it appears that petitioner challenged the 1997 special reconsideration hearing decision from the Commission on the grounds that the Commission did not adequately take into consideration petitioner's age, among others.

-6-

See Exhibit 16, Second Supplemental Order to Show Cause in Case No. 96-2602-CIV-MIDDLEBROOKS, at pages 3-4.[1]    After the Parole Commission responded to this show cause order, Magistrate Judge Sorrentino recommended dismissing the petition, and Judge Middlebrooks ordered that the petition be dismissed. See Exhibit 17, Report of Magistrate Judge and Final Judgment in Case No. 96-2602-CIV-MIDDLEBROOKS.

On March 16, 1999, petitioner received a statutory interim hearing before another hearing examiner of the U.S. Parole Commission to determine if there were any new significant developments or changes in petitioner's status that may have occurred subsequent to his initial hearing. See Exhibit 18. Noting petitioner's outstanding work in the recreational department at Miami Federal Correctional Institution, the examiner recommended awarding petitioner four months for Superior Program Achievement and advancing his presumptive parole date to September 15, 2002. Id. at page 2.    The Commission concurred with the hearing examiner's recommendation and ordered that petitioner's presumptive parole be advanced to September 15, 2002.    See Exhibit 19.[2] Petitioner appealed this favorable decision to the Commission's

---

[1] Petitioner's motion to expedite was not available to the Government at the time of this Response. The Government has offered Magistrate Judge Sorrentino's Second Supplemental Order to Show Cause in Case No. 96-2602-CIV-MIDDLEBROOKS (summarizing petitioner's arguments at page 4) in lieu of petitioner's filings. The Government will supplement the record with the actual filings of the petitioner when they become available to the Government, if the Court desires, at the request of the Court.

[2] The Commission's Notice of Action for this parole decision was amended without any substantive changes. See Exhibit 19 at page 2.

National Appeals Board, attempting to raise issues previously resolved by this Court, and the Board affirmed the Commission's decision. See Exhibits 20 & 21.

<u>ISSUES PRESENTED</u>

Petitioner challenges the Commission's May 17, 1997 parole decision denying him parole and granting him a presumptive parole date of January 15, 2003. Petitioner presents two issues: irst, petitioner contends that the Regional Commissioner modified the recommendation of the hearing examiner panel more than six months, in violation of 28 C.F.R § 2.24(b)(2); and, second, petitioner asks this Court to review the merits of his 1997 parole decision, arguing that his age was not adequately considered.

<u>ARGUMENT</u>

Petitioner is procedurally barred from raising these issues before this Court because these issues were addressed in an earlier petition for writ of habeas corpus. In the event that this Court were to address the merits of the petition, the petition is without merit. The Regional Commissioner did not modify the recommendation of the hearing examiner panel in violation of the Commission's regulations because the merits of a parole decision are not reviewable, and because the Commission had a rational basis for not advancing petitioner's parole date based on his age.

**A. Petitioner is procedurally barred from raising these claims before this Court.**

Petitioner's current application for habeas corpus relief raises issues that have either been previously litigated and

determined adversely to petitioner or could have been raised in previous litigation, but were not.  Title 28 U.S.C. § 2244 provides that a federal court may, in its discretion, decline to hear a successive federal habeas petiton if "the ground asserted was previously heard and decided." Sanders v. United States, 373 U.S. 1, 12, 83 S. Ct. 1068, 1075 (1963); Gunn v. Newsome, 881 F.2d 949, 955 n. 6 (11th Cir. 1989). See also George v. Perrill, 62 F.3d 333 (10th Cir. 1995); United States v. Tubwell, 37 F.3d 175, 178 (5th Cir. 1994); Sinclair v. Blackburn, 599 F.2d 673 (5th Cir. 1979), cert. denied 444 U.S. 1023 (1980); Brown v. Butler, 815 F.2d 1054 (5th Cir. 1987)(procedure to follow prior to dismissal for abuse of the writ; once abuse of the writ claim is made, burden shifts to petitioner); Demps v. Dugger, 874 F.2d 1385 (11th Cir. 1989); Julius v. Jones, 875 F.2d 1520, 1526-27 (11th Cir. 1989)(if issues raised in previous habeas action, petitioner must show that ends of justice would be served by redetermination of issue).

In the instant case, it appears that petitioner has raised some of the issues surrounding petitioner's 1997 special reconsideration hearing in an earlier habeas corpus petition before this Court.  According to Magistrate Judge Sorrentino's Second Supplemental Order to Show Cause in Case No. 96-2602-CIV-MIDDLEBROOKS, petitioner argued that the Commission's "failure to reduce his presumptive parole date following the reconsideration hearing was an abuse of discretion where: ... the examiner at the reconsideration hearing recommended that Chippas' presumptive parole date be advanced to 168 months, based on a new mitigating

factor (that Chippas had turned 65 years of age in March of 1997)
..." Exhibit 16 at page 4.   Therefore, it appears that petitioner
raised the issues of the Commission's modification of the hearing
examiner's recommendation and his age in the 1997 proceedings in
Case No. 96-2602-CIV-MIDDLEBROOKS.  See Exhibit 16 at pages 3-4.
This Court denied the petition in that case.   See Exhibit 17.
Therefore,  it  appears  that  these  issues  have  already  been
litigated, and petitioner's continued assertion of these arguments
constitutes abuse of the writ. See McCleskey v. Zant, 499 U.S. 467
(1991).

     Even if petitioner had not raised these exact issues in his
previous habeas proceeding,   they should still be dismissed on
abuse of the writ grounds because petitioner has offered no
explanation as to why the issues were not brought up during the
previous habeas corpus petition.  Jones v. Estelle, 722 F.2d 159,
156 (5th Cir. 1983) (en banc), cert. denied, 467 U.S. 1206 (1983).
As the court noted in Jones:

> [P]etitioner can excuse his omission of a claim from an
> earlier writ if he proves he did not know of the "new"
> claims when the earlier writ was filed.  The inquiry is
> easily answered when a claim has been made possible by a
> change in the law since the last writ or development in
> the facts which was not reasonably knowable before.  It
> is more difficult to review the efforts of a pro se
> petitioner to meet his burden of proving inexcusable
> neglect.  That difficulty suffices in pro se cases as a
> greater  tolerance  for  prisoner  compliance  for  these
> described rules.

Id.  Accord Emery v. Johnson, 139 F.3d 191, 195 (5th Cir. 1997).
Petitioner has made no showing that there has been a change in the

law or that this claim was not reasonably knowable before.  To the extent that petitioner may be arguing that there are claims purportedly based upon petitioner's 1999 statutory interim hearing (and the appeal therefrom where he attempted to raise issues regarding the 1997 decision), those claims should be dismissed because the underlying issue is identical - his 1997 special reconsideration proceedings.  See Glumb v. Honsted, 891 F.2d 872, 873 (11th Cir. 1990).  Similarly, an attempt to raise a new legal theory does not negate a successive petition challenge.  See George v. Perrill, 62 F.3d 333 (10th Cir. 1995).  Since petitioner understood the issues in the previous habeas corpus petition and the issues regarding his 1997 special reconsideration hearing have been long-settled, his claim should be dismissed on the abuse of the writ grounds.

**B.  The petition is without merit.**

    1. The Regional Commissioner did not modify the hearing examiner panel's recommendation in violation of the Commission's regulations.

Factually, petitioner's claim that the Regional Commissioner unlawfully modified the recommendation of the hearing examiner panel is incorrect.  Petitioner is obviously confused about the Commission's decision-making process after a parole hearing.  As the procedural history above clearly illustrates, the Regional Commissioner adopted the recommendation of the hearing examiner panel, and he did not modify the panel's recommendation by more than six months.  Thus, petitioner's claim that the Commission violated its own rules and regulations is without merit.

Under 18 U.S.C. § 4203(c)(2), the Commission may delegate to hearing examiners the power to conduct hearings and proceedings, receive evidence, make findings of fact, and recommend parole and parole revocation decisions.    See 18 U.S.C. 4203(c)(2)(1976). Under that statute, "any such findings or recommendations shall be based upon the concurrence of not less than two hearing examiners." Id.    In petitioner's case, Examiner Beale made a recommendation that petitioner receive a credit for his old age and that he be paroled on January 15, 2000, but she did not get the concurrence of any other hearing examiner.    Thus, Examiner Beale's recommendation did not constitute a statutory hearing examiner recommendation under 18 U.S.C. § 4203(c)(2).

The Commission has promulgated regulations that address the situation that arose in petitioner's case (where one hearing examiner does not get the concurrence of another), and the Commission applied those regulations to petitioner's case.    Under 28 C.F.R. § 2.23 (a), "[a]ny hearing may be conducted by a single examiner or by a panel of examiners.    A Executive Hearing Examiner shall function as a hearing examiner for the purpose of obtaining a panel recommendation whenever the Regional Commissioner has not ordered that a hearing be conducted by a panel of two examiners." 28  C.F.R.  2.23(a)(1999).    In accordance with  18  U.S.C.  § 4203(c)(2), the regulations also provide that, regardless of the number of examiners conducting a hearing, a panel recommendation of at  least  two  hearing  examiners  is  necessary.    28  C.F.R.  § 2.23(b)(1999)("The concurrence of two hearing examiners, or of a

-12-

hearing examiner and the Executive Hearing Examiner, shall be required to obtain a panel recommendation to the Regional Commissioner.")    The regulations contemplate a difference of opinion between examiners as well: "In the event of divergent votes, the case shall be referred to another hearing examiner ... for another vote.  If concurring votes do not result from such a referral, the case shall be referred to any available examiner until a panel recommendation is obtained."    28 C.F.R. § 2.23(c)(1999).

The Commission complied with above the statutory and regulatory scheme in obtaining a hearing examiner panel recommendation in this case.  First, it should be noted that the Regional Commissioner did not order that petitioner's hearing be conducted by a panel of two hearing examiners.  Thus, the hearing was conducted by only one examiner, Examiner Beale.  See Exhibit 13.  After she conducted the hearing, Examiner Beale recommended that petitioner receive a 36-month reduction in his time to be served because "she believe[d] that the likelihood of recidivism lessens with age." (Petitioner was 67 years old as of the hearing.) See Exhibit 13 at page 5.

Second, hearing examiner Pinner functioned as the Executive Hearing Examiner in this case.  (In his petition, petitioner seems to be confusing Examiner Pinner with the Regional Commissioner, John Simpson.  Examiner Pinner is a hearing examiner who makes recommendations to the Regional Commissioner and is not a member of the U.S. Parole Commission.)  Executive Hearing Examiner Pinner

-13-

disagreed with Examiner Beale's recommendation to credit the 36 months because petitioner only became involved in the importation of drugs at 40 and because he was involved in an extremely large-scale drug conspiracy until his arrest at age 54. Executive Hearing Examiner Pinner reasoned that the likelihood that petitioner's propensity for criminal activity would lessen as he ages was not supported by the above case-specific factors. See Exhibit    at pages 5-6. Examiner Pinner then made her recommendation and obtained the concurrence of another Commission employee functioning as another Executive Hearing Examiner, Mr. Shoquist. See Exhibit 14. Therefore, Examiners Pinner and Shoquist joined in the panel recommendation(required by statute and regulation) for submission to the Regional Commissioner.[3]

In a similar vein, the Commission complied with the statute and recommendation in adopting the examiner panel's recommendation. As noted above, 18 U.S.C. § 4203(c)(2) requires that, before the Commission adopts the findings and recommendations of a hearing examiner, there must exist the concurrence of at least two hearing examiners. (The Commission's regulations refer to this as a "panel recommendation.") Under 28 C.F.R.§ 2.23(d), "[a] recommendation of a hearing examiner panel shall become an effective Commission

_____

[3] To the extent that petitioner may be arguing that because Executive Hearing Examiner Pinner and Mr. Shoquist (and the Regional Commissioner, for that matter) were not present at the hearing, their recommendation violated due process, that argument is without merit. A parolee has no right to a hearing before the ultimate decision-maker. See, e.g., Moore v. Dubois, 848 F.2d 1115 (10th Cir. 1988)(Due process does not require that a decision-maker making credibility determination hear witnesses testimony and view witnesses personally.).

-14-

decision only upon the Regional Commissioner's approval, and docketing at the regional office." 28 C.F.R. § 2.23(d)(1999). As the signed order in this case illustrates, on May 12, 1997, Regional Commissioner John Simpson agreed with and adopted the Pinner-Shoquist recommendation. See Exhibit 14. On May 12, 1997, the Commission issued a Notice of Action to petitioner informing him of the Commission's decision. See Exhibit 15. Therefore, because the Regional Commissioner adopted the hearing examiner panel's recommendation (and that recommendation became the Commission's decision), the Regional Commissioner did not unlawfully modify the panel's recommendation.

    2. The Commission had a rational basis for petitioner's parole decision.

    Petitioner's argument that the Commission did not adequately consider his age in making his parole decision amounts to a request for impermissible review of the merits of his parole decision and is without merit. Judicial review of a parole decision by the U.S. Parole Commission is extremely limited. Judicial review of a Parole Commission decision is limited to whether the Commission has abused its discretion. See Brown v. Lundgren, 528 F.2d 1050, 1054 (5th Cir. 1976). To the extent that petitioner is attacking the merits of the Commission's decision to grant him a presumptive parole on January 15, 2003 (advanced to September 15, 2002 on June 19, 1999 for Superior Program Achievement), that argument is therefore unreviewable. See also Stroud v. U.S. Parole Com'n, 668 F.2d 843 (5th Cir. 1983)("So long as there are no violations of due

process and the Commission has acted within its authority, we will not usurp the Commission's position as established in the statutory scheme enacted by Congress.   Therefore any parole decision 100 months or more is within the guidelines.)

As the exhibits in this case and Executive Hearing Examiner Pinner's reasoning illustrate, the Commission had a rational basis for continuing petitioner to a presumptive parole after the service of 204 months.   After reviewing petitioner's case and applying its regulations at 28 C.F.R. § 2.20, the Commission found that petitioner had a salient factor score of 8, indicating a good parole prognosis.   However, because the Commission found that petitioner had been involved in an extremely large-scale drug importation enterprise, the Commission rated petitioner's offense severity Category Eight.[4]  With a salient factor score of 8 and an offense severity Category Eight, petitioner's guideline range was 100+ months.   (As a Category Eight offender, petitioner's guideline range has no upper limit.)

In its May 12, 1997 Notice of Action to petitioner granting petitioner a parole date after the service of 204 months, the

_____

[4] The Commission found that petitioner was involved in an extremely large-scale drug organization because petitioner's offense involved conspiracy to import more than 18.75 kilograms of cocaine of unknown purity.  This fact was elicited at petitioner's initial hearing and is noted in his presentence report.  See Exhibits 4 & 7.  When reviewing the fact finding function of an agency like the Parole Commission, a court may only inquire into whether the agency had "some evidence" supporting the finding before it when it made the decision. See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); See also Maddox v. U.S. Parole Com'n, 821 F.2d 997, 1000 (5th Cir. 1987).  Because the Commission considered the wealth of information in the presentence report and at his hearing showing that he was involved in an extremely large-scale drug trafficking operation, the Commission had the requisite "some evidence."

Commission explained the case-specific factors why petitioner's decision was more than 48 months above the minimum guideline range.[5]  Thus, the Commission continued petitioner to January 15, 2004 because petitioner had case-specific factors showing that he was a serious drug offender with a history of drug offenses (committed after of he was convicted of previous drug crimes and while he was on fugitive status).  Thus, the Commission had a rational basis for continuing petitioner to a presumptive parole after the service of 204 months, on January 15, 2003.

The Commission also had a rational basis for not granting petitioner "credit" for his age.  As Executive Hearing Examiner Pinner noted in the hearing summary, petitioner did not begin his criminal drug career until he was 40 years old.  See Exhibit 13 at page 5.  That activity continued until his arrest at age 54. Examiner Pinner noted that, given petitioner's continual involvement in many drug crimes (after arrests and convictions and while on fugitive status), there was a significant risk of his becoming involved in similar large or extremely large drug importation schemes when released in the future.  Therefore, Examiner Pinner reasoned that petitioner's age was not a factor indicating that petitioner was less likely to commit crimes in the

---

[5] The Commission is required to provide case-specific factors upon which it relied in reaching a decision more than 48 months above the minimum guideline range in Category Eight cases. See Note to Table, "Guidelines for Decisionmaking" at 28 C.F.R. § 2.20.  The Commission provided these reasons in the May 12, 1997 Notice of Action to petitioner.  See Exhibit 15.  The Commission specified petitioner's convictions and drug offense history in explaining these factors. Id.

future, and she recommended a parole date without any credit for age. Given the number of convictions and arrests petitioner has sustained, his flagrant criminal drug activity after arrests and convictions, and his advanced age at the outset of his criminal activity, the Commission had a rational basis for determining that his age was not a factor indicating he was less likely to commit crimes in the future. Thus, the Commission had a rational basis for its 1997 parole decision.

<u>CONCLUSION</u>

For the foregoing reasons, Petitioner Chippas's Petition for Writ of Habeas Corpus pursuant to Title 28, U.S.C., Section 2241 should be denied.

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY


BY: _____
    THOMAS P. LANIGAN
ASSISTANT UNITED STATES ATTORNEY
COURT I.D. NO. A5500033
500 E. BROWARD BOULEVARD, SUITE 700
FT. LAUDERDALE  FL  33394
TEL. NO. (954) 356-7254
FAX NO. (954) 356-7336

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the within and foregoing response has been mailed, postage pre-paid, this 4th day of May, 2000, to: Joe Daniel Harrington, Esquire, Attorney for Petitioner Chippas, at Law Offices of Mark E. Nejame, P.A., One S. Orange Avenue, Suite 304, Orlando, Florida, 32801.

THOMAS P. LANIGAN
ASSISTANT UNITED STATES ATTORNEY

## CERTIFICATE

I, **Douglas W. Thiessen**, Attorney in the Office of the General Counsel for the United States Parole Commission, with offices at 5550 Friendship Boulevard, Chevy Chase, Maryland 20815, hereby certify that the attached exhibits are true copies of documents found in the parole file of **Louis Chippas, Reg. No. 18565-004**, reviewed by me on the date noted below.

**IN WITNESS WHEREOF**, I have signed this **3rd** day of **May**, **2000**, and have affixed the seal of the United States Parole Commission.



DOUGLAS W. THIESSEN
Attorney
U.S. Parole Commission

```
   PAR37  540*23 *            SENTENCE MONITORING           *     05-02-2000
GE 001        *             COMPUTATION DATA            *      12:40:11
                            AS OF 05-02-2000
```

GNO..: 18565-004 NAME: CHIPPAS, LOUIS HARRY

```
I NO..........: 340879A                DATE OF BIRTH: 03-09-1932
S1.............: MIA/A-DES
IT.............: F                      QUARTERS.....: F01-006L
TAINERS........: NO                     NOTIFICATIONS: NO
```

E FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
E INMATE IS PROJECTED FOR RELEASE: 09-15-2002 VIA PRESUM PAR

------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
URT OF JURISDICTION..........: FLORIDA, SOUTHERN DISTRICT
CKET NUMBER..................: 84-6033-CR-ROETTGER
DGE..........................: ROTTGER
TE SENTENCED/PROBATION IMPOSED: 01-16-1986
TE WARRANT ISSUED.............: N/A
TE WARRANT EXECUTED...........: N/A
TE COMMITTED..................: 12-31-1986
W COMMITTED...................: US DISTRICT COURT COMMITMENT
OBATION IMPOSED...............: YES
OBATION IMPOSED REMARKS.......: 5 YRS. CT. 3
ECIAL PAROLE TERM.............:
```

STITUTION...:  PROPERTY:  NO  SERVICES:  NO         AMOUNT:  $00.00

-------------------CURRENT OBLIGATION NO: 010 ---------------------------
```
FENSE CODE....: 391
F/CHG: CONSP. TO IMPORT COCAINE, CONSP. TO POSS. COCAINE, A&A
       T 21 USC 963, 846
NTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
NTENCE IMPOSED/TIME TO SERVE.:    30 YEARS
ATE OF OFFENSE................: 11-04-1982
```

MARKS.......: 15 YRS. CT. 1, 15 YRS. CS. ON CT. 2, 5 YRS. PROB. CT. 3

------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------

```
JRT OF JURISDICTION..........: FLORIDA, SOUTHERN DISTRICT
    DOCKET NUMBER..................: 84-6034-CR-ZLOCH
GE...........................: ZLOCH
'E SENTENCED/PROBATION IMPOSED: 04-04-1986
```

02      MORE PAGES TO FOLLOW . . .



```
   PAR37  540*23 *              SENTENCE MONITORING         *     05-02-2000
GE 002         *              COMPUTATION DATA          *     12:40:11
                              AS OF 05-02-2000
```

GNO..: 18565-004 NAME: CHIPPAS, LOUIS HARRY


```
TE WARRANT ISSUED..............: N/A
TE WARRANT EXECUTED...........: N/A
TE COMMITTED...................: 12-31-1986
W COMMITTED...................: US DISTRICT COURT COMMITMENT
OBATION IMPOSED...............: NO
ECIAL PAROLE TERM............:
```


STITUTION...: PROPERTY: NO  SERVICES: NO        AMOUNT: $00.00

------------------CURRENT OBLIGATION NO: 010 --------------------------
```
FENSE CODE....:  392
F/CHG: CONSP. TO IMPORT METHAQUALONE, A&A T 21 USC 952(A), 846
```
```
FNTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
FNTENCE IMPOSED/TIME TO SERVE.:   25 YEARS
FW SENTENCE IMPOSED...........:   20 YEARS
ASIS FOR CHANGE...............: COURT ORDER MODIFYING SENTENCE
FLATIONSHIP OF THIS OBLIGATION
TO OTHERS FOR THE OFFENDER....: CS TO 010 010
ATE OF OFFENSE................: 06-25-1982
```

```
"MARKS.......: 5 YRS. CT. 1, 5 YRS. CS ON CTS. 2, 4 & 17.  5 YRS. CC
             ON CTS. 18 & 19. NOTE CT 3 DELETED ON AMENDED J&C
```

------------------CURRENT COMPUTATION NO: 010 -------------------------

MPUTATION 010 WAS LAST UPDATED ON 07-02-1999 AT MIA AUTOMATICALLY

: FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
RRENT COMPUTATION 010: 010 010, 020 010


)02      MORE PAGES TO FOLLOW . . .

```
    PAR37  540*23 *           SENTENCE MONITORING            *      05-02-2000
GE 003 OF 003 *              COMPUTATION DATA          *       12:40:11
                             AS OF 05-02-2000

GNO..: 18565-004 NAME: CHIPPAS, LOUIS HARRY


'E COMPUTATION BEGAN..........: 01-16-1986
'AL TERM IN EFFECT............:     50 YEARS
'AL TERM IN EFFECT CONVERTED..:     50 YEARS
GREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 10

'AL JAIL CREDIT TIME..........: 0
'AL INOPERATIVE TIME..........: 0
ATUTORY GOOD TIME RATE........: 10
'AL SGT POSSIBLE..............: 6000
:OLE ELIGIBILITY..............: 01-15-1996
ATUTORY RELEASE DATE..........: 08-12-2019
) THIRDS DATE.................: 01-15-2016
) DAY DATE....................: 07-19-2035
PIRATION FULL TERM DATE.......: 01-15-2036

:SUMPTIVE PAROLE DATE.........: 09-15-2002
:T PAROLE HEARING DATE........: 03-00-2001
'E OF HEARING.................: STATUTORY INTERIM HEARING

)JECTED SATISFACTION DATE.....: 09-15-2002
)JECTED SATISFACTION METHOD...: PRESUM PAR

1ARKS.......: ON 8-14-95, SOUTHEAST REGIONAL DIRECTOR SIGNED A STATE CC
              LETTER AGREEING TO ACCEPT INMATE AS A STATE CC CASE FROM
              THE DATE OF FIRST FEDERAL SENTENCE (1-16-86).  SENTENCE DCB
              ADJUSTED ACCORDINGLY. INMATE RECEIVED FROM NJ ST. ON 11-18-86.




)55      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

Metorpolitan Correctional Center
15801 S.W. 137 Avenue
Miami, FL 33171

DOCKET NO. ➤ 84-6033-Cr-ROETTGER

## JUDGMENT AND PROBATION/COMMITMENT ORDER

**COUNSEL**

In the presence of the attorney for the government L. Snow
the defendant appeared in person on this date ————————➤

| MONTH | DAY | YEAR |
| --- | --- | --- |
| January 16, 1986 | | |

|___| WITHOUT COUNSEL    However the court advised defendant of right to counsel and asked whether defendant desires to have counsel appointed by the court and the defendant thereupon waived assistance of counsel.

XX | WITH COUNSEL    Arthur Tifford, Esq 1531 N.W. 15th St. Miami, FL 33125
(Name of counsel)

**PLEA**

|___| GUILTY, and the court being satisfied that    |___| NOLO CONTENDERE,    |___| NOT GUILTY
there is a factual basis for the plea,

There being a finding/verdict of { |___| NOT GUILTY. Defendant is discharged
{ XX | GUILTY.

**FINDING & JUDGMENT**

Defendant has been convicted as charged of the offense(s) of  Conspiracy to import Cocaine; Title 21 U.S.C. § 963, Count 1.   Conspiracy to possess Cocaine; Title 21 U.S. § 846, Count 2.   Aiding and abetting in attempt to import Cocaine; Title 21 U.S.C. § 963, Count 3.

**SENTENCE OR PROBATION ORDER**

The court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the court, the court adjudged the defendant guilty as charged and convicted and ordered that: The defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of

FIFTEEN (15) Years, as to Count 1 of the indictment. FIFTEEN (15) Years as to Count 2 of the indictment, sentence imposed as to COunt 2 shall r consecutive with the sentence imposed as to Count 1.  Further, Ordered that imposition of sentence as to Count 3, of the indictment is witheld and upon defendants discharge from confinement, defendant shall be plac on Probation for a period of FIVE (5) years as to Count 3.  Defendant is hereby remanded to the custody of the U.S. Marshal. Total confinement imposed at this date: THIRTY (30) Years.

**SPECIAL CONDITIONS OF PROBATION**

**ADDITIONAL CONDITIONS OF PROBATION**

In addition to the special conditions of probation imposed above, it is hereby ordered that the general conditions of probation set out on the reverse side of this judgment be imposed. The Court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within a maximum probation period of five years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period.

**COMMITMENT RECOMMENDATION**

The court orders commitment to the custody of the Attorney General and recommends,

It is ordered that the Clerk deliver
Certified to be a true copy of this judgment
correct copy of the original.
Robert M. March, Clerk
U.S. District Court
Southern District of Florida
By
Deputy Clerk
Date

**SIGNED BY**
☐ U.S. District Judge
☐ U.S. Magistrate

Norman C. Roettger, Jr.    1/28/86

# Exh. 2

AO 245 (Rev. 6/87) Judgment in a Criminal Case

# United States District Court

Southern    **DISTRICT OF** Florida

FILED by _____ D.C.

AUG 29 1990

ROBERT M. MARCH
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

LOUIS HARRY CHIPPAS

18565-004

**AMENDED**

**JUDGMENT IN A CRIMINAL CASE**

Case Number:    84-6034-CR-ZLOCH

(Name and Address of Defendant)

Leonard Cooperman, Esq.
**Attorney for Defendant**

**THE DEFENDANT ENTERED A PLEA OF:**

[ ] guilty   [ ] nolo contendere] as to count(s) _____, and
[ ] not guilty as to count(s) _____.

**THERE WAS A:**
[ ] finding  [X] verdict] of guilty as to count(s)  1, 2 4, 17, 18 & 19 _____

**THERE WAS A:**
[ ] finding  [ ] verdict] of not guilty as to count(s) _____
[X] judgment of acquittal as to count(s)  3 _____
   The defendant is acquitted and discharged as to this/these count(s).

**THE DEFENDANT IS CONVICTED OF THE OFFENSE(S) OF:** conspiracy to import methaqualone powder – 21:952(a); conspiracy to distribute methaqualone powder – 21:846; aiding and abetting importation of methaqualone powder – 21:952(a) and 960(a) travel in interstate commerce to distribute proceeds of illegal activities – 18:1952

**IT IS THE JUDGMENT OF THIS COURT THAT:** as to  Count One of the indictment, the defendant is hereby committed to the custody of the Attorney General of the United States or his authorized representative for confinement for a period of five years.

IT IS FURTHER ADJUDGED that as to Counts 2, 4, and 17, that the defendant be committed to the custody of the Attorney General or his authorized representative for confinement for a period of five years as to each count. Each count is to run consecutively with each other and consecutively with the sentence imposed in Count 1.

IT IS FURTHER ADJUDGED that as to Counts 18 and 19 that the defendant be committed to the custody of the Attorney General or his authorized representative  for confinement for a period of five years.  Each count is to run  concurrently with each other and concurrently with the sentence imposed  Count 1.

The sent    e imposed herein is to run consecutively with the sentence imposed in Case    ber 84-6033-CR-ROETTGER.
In addition   any  conditions of probation imposed above, IT IS ORDERED that the conditions of proba-

EXH 3

3

AO 245 (Reverse)

## CONDITIONS OF PROBATION'

Where probation has been ordered the defendant shall:

(1) refrain from violation of any law (federal, state, and local) and get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer;
(2) associate only with law-abiding persons and maintain reasonable hours;
(3) work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. (When out of work notify your probation officer at once, and consult him prior to job changes);
(4) not leave the judicial district without permission of the probation officer;
(5) notify your probation officer immediately of any changes in your place of residence;
(6) follow the probation officer's instructions and report as directed.

The court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period.

IT IS FURTHER ORDERED that the defendant shall pay a total special assessment of $_____
pursuant to Title 18, U.S.C. Section 3013 for count(s)_____ as follows:


IT IS FURTHER ORDERED THAT counts_____are DISMISSED on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall pay to the United States attorney for this district any amount imposed as a fine, restitution or special assessment. The defendant shall pay to the clerk of the court any amount imposed as a cost of prosecution. Until all fines, restitution, special assessments and costs are fully paid, the defendant shall immediately notify the United States attorney for this district of any change in name and address.

IT IS FURTHER ORDERED that the clerk of the court deliver a certified copy of this judgment to the United States marshal of this district.

☐ The Court orders commitment to the custody of the Attorney General and recommends:


August 29, 1990
_____
Date of Imposition of Sentence

_____
Signature of Judicial Officer

WILLIAM J. ZLOCH, U. S. DISTRICT JUDGE
_____
Name and Title of Judicial Officer

8/29/90
_____
Date

**RETURN**

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____ at
                              Date

_____, the institution designated by the Attorney
General, with a certified copy of this Judgment in a Criminal Case.


_____
United States Marshal

By _____
   Deputy Marshal

PROB 2
(Rev. 4/84)

UNITED STATES DISTRICT COURT
**SOUTHERN DISTRICT OF FLORIDA**

**PRESENTENCE REPORT**
**MIAMI, FLORIDA**

| NAME (Last, First, Middle) | | DICTATION DATE |
|---|---|---|
| CHIPPAS, Louis Harry | | February 20, 1986 |

| ADDRESS | LEGAL RESIDENCE | SCHEDULED SENT. DATE |
|---|---|---|
| Metropolitan Correctional Center 15801 S.W. 137th Avenue Miami, Florida  33177 | 410 N.W. 9th Avenue Miami, Florida | February 28, 1986 |
| | | DOCKET NO. 84-6034-Cr-ZLOCH |
| | | CITIZENSHIP U.S. |

| AGE | RACE | DATE OF BIRTH | PLACE OF BIRTH | SEX | EDUCATION |
|---|---|---|---|---|---|
| 53 | White | 3-9-32 | New York, NY | Male | 10th Grade |

| MARITAL STATUS | DEPENDENTS | SOC. SEC. NO. |
|---|---|---|
| Married | 0 | Unknown |

| FBI NO. | U.S. MARSHAL NO. | OTHER IDENTIFYING NO. |
|---|---|---|
| 340 879 A | 18565-004 | |

OFFENSE    **19 COUNT INDICTMENT:**

Ct. 1:  conspiracy to import methaqualone powder, Title 21, USC, §952(a)
Ct. 2:  conspiracy to distribute methaqualone powder, Title 21, USC, §846
Ct. 3:  conspiracy to create counterfeit substance, Title 21, USC, §846
            SEE ATTACHED SHEET

PENALTY

Ct. 1:  5 years and/or $15,000        Ct. 4:  5 years and/or $15,000 + 2 yrs. SP
Ct. 2:  5 years and/or $15,000        Ct.17:  5 years and/or $10,000
Ct. 3:  5 years and/or $15,000        Ct. 18-19:  5 years and/or $10,000

| CUSTODIAL STATUS | DATE OF ARREST |
|---|---|
| In custody of lieu of $1,000,000 surety bond (on writ from New Jersey State Prison) | 4-20-84 |

PLEA

N/A

VERDICT

1-17-86:  jury, guilty to Counts 1,2,3,4,17,18 & 19

DETAINERS OR CHARGES PENDING

Serving 6-10 year sentence Rahway State Prison, New Jersey (in SD/FL on writ from New Jersey)

OTHER DEFENDANTS

SEE ATTACHED SHEET

| ASSISTANT U.S. ATTORNEY | DEFENSE COUNSEL |
|---|---|
| Lurana Snow | Arthur Tifford 1385 N.W. 15th Street Miami, Florida  33125    (Tel. 324-4104) |

DISPOSITION

| SENTENCING JUDGE | DATE | PROBATION OFFICER |
|---|---|---|
| William R. Zloch | | Raymond H. Mineau/rj |

Exh. 4

4

**OFFENSE:**

Ct. 4:  aid and abetting import methaqualone powder, Title 21, USC,
        §952(a) and 960(a)(l)

Ct.17:  travel in interstate commerce to distribute proceeds of illegal
        activities, Title 18, USC, §1952

Ct.18:  travel in interstate commerce to distribute proceeds of illegal
        activities, Title 18, USC, §1952

Ct.19:  travel in interstate commerce to distribute proceeds of illegal
        activities, Title 18, USC, §1952

## CO-DEFENDANT STATUS

| | |
|---|---|
| **LOUIS H. CHIPPAS** | Found guilty by jury, Cts. 1, 2, 3, 4, 17, 18, 19 Pending sentence |
| **JOSEPH VERSHISH** | Found guilty jury, Cts. 1-8, Pending sentence |
| **SERGE ALEXIS** | Pled guilty Cts. 2 & 3 Pending sentence. |
| **HOWARD KLUVER** | Found guilty by jury, Cts. 1,2,& 3, pending sentence |
| **GEORGE M. KHOURY** | Found guilty by jury Cts. 1,2,3,4, & 16 Pending sentence |
| **DAVID W. WEST** | Found guilty by jury Cts. 1,2,3,9,10,11, & 12 Pending sentence |
| **RICHARD E. WILLIAMS** | Fugitive |

**OFFENSE:**

**Prosecution Version:**  On January 17, 1986, the
defendant, Louis Harry Chippas, was found guilty by a
jury of Counts 1, 2, 3, 4, 17, 18 and 19 of a 19 Count
Indictment, charging conspiracy to import methaqualone,
possess/distribute methaqualone, create a counterfeit
substance and traveling in interstate commerce to distribute
proceeds of illegal activities.

According to information received from the U.S.
Attorney's office, in July, 1981, Joseph P. Vershish met
with a confidential informant (CI) in Broward County,
Florida to discuss Mr. Vershish's plans to travel to Asia
to purchase methaqualone powder.  Mr. Vershish met with
the CI and solicited from him $10,000 as an investment
in a tableting operation.  Mr. Vershish also received
$6,000 from another unindicted coconspirator as an
investment in his project.  On July 8, 1981, Vershish
traveled from Florida to Hong Kong to arrange for the
purchase of approximately 3,000 pounds of methaqualone
powder to be used in making the quaalude tablets.  He
returned from Asia on or about August 1, 1981.  Two days
later, Vershish traveled to Toronto, Canada, for the sole
purpose of arranging for the shipment of approximately
3,000 pounds of the methaqualone powder from Asia to Canada.
Approximately one month later, Mr. Vershish traveled to
Michigan to purchase an aircraft from Rosenbalm Aviation,
Inc.  Later, he and another defendant, Howard Kluver,
executed a lease of an aircraft to Antillean International
Air Lease, located in Port-Au-Prince, Haiti.  In furtherance
of this conspiracy, on September 15, 1981, Mr. Vershish
executed articles of incorporation for Airmark Industries,
Inc., located in Margate, Florida.

In September, 1981, Serge Alexis, wire-transferred
monies from Haiti, his native country, to Asia, as payment
for approximately 3,000 pounds of methaqualone powder.
Later during the next month, Vershish and an unindicted
coconspirator met at a storage warehouse to inspect
machinery, which was purchased to be used in the manufacture
of the methaqualone tablets.  Alexis, Vershish and Kluver
met in **Pompano Beach**, Florida in October, 1981 with an
unindicted coconspirator to discuss equipment to be used
in the manufacture of these tablets.

In December, 1981, in Ft. Lauderdale, Florida, Vershish
met with a representative of Business Jets International,
to discuss the location of an aircraft for Airmark
Industries.  In January, 1982, Mr. Vershish executed a
brokerage agreement with Business Jets International.

On February 1, 1982, in furtherance of the conspiracy,
Alexis provided a written commitment to Airmark Industries

-1-

regarding the use of a Cessna Titan 404 aircraft. On
March 1, 1982, Vershish, while in Canada, obtained a bank
check in the amount of $45,950 from the Royal Bank of
Canada. Vershish also met an individual at the Greater
Pittsburgh International Airport to inspect an aircraft.
Later in that month, Mr. Vershish met with two individuals
in Ft. Lauderdale to discuss the lease of an aircraft
by him on behalf of Airmark Industries. Further, Mr.
Vershish and another defendant, David West, met at Security
Self Storage Warehouse, Pompano Beach, Florida, where
they loaded a tableting machine into a rental truck. West
transported the machine from Pompano Beach to Bridgeport,
Connecticut. Between March 19 and March 22, 1982, at
a Holiday Inn, Bridgeport, Connecticut, Vershish and
defendants, Louis Chippas, David West and George Khoury
met with three unindicted coconspirators to discuss plans
for the manufacture of methaqualone tablets at an address
located at 348 George Street, Bridgeport, Connecticut.
Vershish and West met at the George Street address to
inspect machinery to be used to manufacture quaalude tablets
at that location. Later, West cancelled his lease with
Ostermore, Inc., for the premises located on George Street.
On March 22, 1982, Vershish agreed to provide a down payment
of $47,229.18 towards the purchase of a Cessna Titan
aircraft.

On March 23, 1982, an unindicted coconspirator rented
a vehicle at Budget Rental Company in Massachusetts.
Vershish, West and Chippas and an unindicted coconspirator
later met in Boston. West located a facility in
Massachusetts for the storage of machinery to be used
to manufacture methaqualone tablets. On March 28, 1982,
a meeting was held at the Airport Hilton Inn, Wichita,
Kansas, where Mr. Vershish directed two individuals to
fly the aircraft from Wichita, Kansas to New Haven,
Connecticut.

Between April and May, 1982, Vershish met with Alexis
and Kluver to discuss plans to import the 3,000 pounds
of methaqualone powder from Asia into Maine via Canada.
The meeting took place in Maine, where Chippas and Vershish
had checked into the same hotel. Both individuals were
met by West and Richard E. Williams. West and Williams
transported tableting machinery to Woburn, Massachusetts.
On June 14, 1982, Vershish and an unindicted coconspirator
traveled from Woburn to New Haven, Connecticut to obtain
$5,000. On June 14, 1982, Vershish agreed to purchase
50 cardboard boxes for the shipping of the quaaludes.
Between June 11 and June 15, 1982, Vershish, Khoury and
two coconspirators met at the Holiday Inn, Woburn,
Massachusetts. West, Williams and Chippas later met with
two unindicted coconspirators in Bangor, Maine.

On June 16, 1982, Chippas, West and Williams traveled

from Bangor to De Blois Maine, to inspect an airstrip to be used to offload 3,000 pounds of methaqualone from their aircraft. On June 17, 1982, Chippas, West and Williams and another unindicted coconspirator tested radio equipment, which had been mounted on a U-Haul truck, a Plymouth Reliant and a Lincoln Continental. Also on that date, Alexis telephoned the air cargo division of Air Canada, Montreal to inquire about the shipment of 3,000 pounds of methaqualone powder from Montreal to Halifax, Nova Scotia.

On June 18, 1982, in Ellsworth, Maine, Chippas, West and Williams and another unindicted coconspirator met to discuss the cancellation of plans to transport the 3,000 pounds of methaqualone powder from Halifax to De Bloise, Maine, aboard the aircraft. On June 21, 1982, Chippas, Vershish and another unindicted coconspirator met at a Howard Johnson's Motor Lodge, Danvers, Massachusetts, to discuss the hiring of a pilot for their aircraft.

Between June 20 and June 23, 1982, Vershish and West met at Danvers, Massachusetts to discuss securing the use of a pickup truck regarding the transporation of 3,000 pounds of methaqualone powder from an airstrip in De Bloise, Maine. Chippas, Khoury, West and Williams met in Danvers, Massachusetts and then traveled from Massachusetts to Maine. On June 24, 1982, Vershish delivered a certified check for $7,385 to the cargo division of Air Canada for the transporation of the methaqualone into the United States. On the same day, in Halifax, Nova Scotia, 38 of 46 drums containing methaqualone powder was loaded onto the aircraft. At this time, Williams rented a "Jartran" truck in Bangor, Maine. Chippas, West and Williams drove from Bangor, Maine to Cherryfield, Maine to an area adjacent to the De Bloise Airport.

On June 25, 1982, Vershish agreed to the air cargo division of Air Canada in Halifax for the unloading of 38 drums of methaqualone powder from the aircraft. On the same day, Vershish and an unindicted coconspirator flew the aircraft from Halifax, Nova Scotia to Bedford, Massachusetts. Vershish met with Chippas and Khoury in Danvers. The meeting was to discuss the cancellation of a flight of the aircraft from Canada to Maine.

In November, 1982, in Ft. Lauderdale, Florida, Alexis and Kluver met to discuss future transactions regarding the powder. Alexis met with another individual to discuss plans to import methaqualone powder into the U.S. on or about March 21, 1983. Subsequently, Alexis met with an undercover agent of the Drug Enforcement Administration in Plantation, Florida and discussed the importation of methaqualone powder from Asia and the production and distribution of methaqualone tablets in the United States.

-3-

Subsequently, all individuals involved in this offense were arrested as to the instant violation.

**Co-Defendant Information:** Information received during the course of this investigation revealed the following individuals participation and culpability as to this scheme.

**Louis H. Chippas:** Was one of the more culpable defendants. Chippas financed a portion of the operation and made arrangements in Maine for the importation of the methaqualone powder. According to the U.S. Attorney's office, Mr. Chippas is viewed as a "career criminal."

**Joseph P. Vershish:** Was the manager and organizer in the conspiracy. He traveled to Hong Kong and knew how to move the methaqualone powder out of that country. He met with the pilot and continued the negotiations. He also searched and secured the aircraft and also provided training for the pilot. Mr. Vershish located an airstrip in Maine for the eventual delivery, traveled to Canada and in summary, devoted all of his attention to the conspiracy.

**Serge Alexis:** Had many contacts in order to buy the equipment. He participated in many undercover meetings and provided information on how many pills could be made.

**Howard Kluver:** Was Alexis' partner in the United States. He was also an attorney, but not practicing law. Mr. Kluver was more marginal in terms of evidence, as he followed Mr. Alexis' orders. Kluver researched on how to manufacture the pills, however, was not involved in Canada or Maine and did not invest any money. He served merely as an advisor.

**George Khoury:** Was involved with the manufacturing of the quaaludes. He traveled to Maine and helped the group locate a warehouse, where the tablets were to be processed.

**David West:** Was involved in moving boxes containing the machinery from Florida to Connecticut. He located a warehouse in Boston, Massachusetts where the tablets were to be made and stored the equipment in that warehouse. Mr. West also had escape routes from the warehouse in case of a police raid. His brother-in-law in this conspiracy is a codefendant, Louis Chippas.

**Richard E. Williams:** Is a fugitive. Williams went with codefendant West to the airstrip and was to be present when the methaqualone was flown in by aircraft. He also assisted in securing the rental truck and was to provide transportation through this vehicle.

-4-

The U.S. Attorney's office indicated that culpability was hard to determine, in as much as all were involved in different aspects of the organization. However, clearly, Mr. Vershish and Mr. Chippas are depicted as being high in culpability, followed by Alexis. The next level of culpability include Kluver, Khoury, West and Williams, all of whom are equally culpable in this scheme.

Assistant U.S. Attorney B. Seltzer, indicated there was surveillance by agents during this conspiracy and consequently, the Government was well aware of what the group was conducting. The deal never took place, as the pilot in this matter, decided not to participate. The pilot suspected he was being watched and also the load which he was to carry was too heavy for the aircraft to make the flight into the United States. The DEA stated the amount of powder represents 4,500,000 tablets, at 250 milligrams per tablet.

**Defendant's Version of Offense:** An attempt was made to interview Mr. Chippas at the Metropolitan Correctional Center, however, Mr. Chippas indicated his attorney would be providing information to the Court at the time of sentencing. Mr. Chippas, pursuant to his own request, was not interviewed and information contained in this report was accumulated through prior presentence investigations.

**PRIOR RECORD:**

**Juvenile Adjudications:** None known.

**Adult Record:** The defendant is known under FBI number 340879A.

| DATE | OFFENSE | PLACE | DISPOSITION |
|------|---------|-------|-------------|
| 12-07-49 Age 17 | Breaking and entering (2 Cts.) grand larceny | Miami, FL | 10-09-50: pled guilty, sentence suspended, probation. |

A check Metro-Dade Police Department indicated no further information regarding the above mentioned charge. It should be noted Mr. Chippas, during his probationary period, was serving in the U.S. Army.

| 08-26-63 Age 31 | 1.Larceny (auto) 2.Unlawful altering of serial numbers | Miami, FL | Dismissed |
| 04-01-64 Age 32 | Auto Theft | Miami, FL | Dismissed |
| 09-05-64 Age 32 | 1.Breaking and entering (4 Cts.) | Miami, FL | 02-16-65: 15 years State Prison to the plea of |

2. Grand Larceny                    breaking with intent to
   (4 Cts.)                         commit grand larceny.
3. Larceny of motor
   vehicle.

    Information received from Metro-Dade Police Records
reflect that between May 3 and May 7, 1963, Chippas was
charged with unlawfully and feloniously breaking and
entering into the South Miami Letter Service, Inc., with
intent to commit grand larceny. He was arrested on
September 5, 1964 and remained in the Dade County Jail
until posting a $30,000 surety bond on September 15, 1964.
Mr. Chippas was convicted on February 17, 1965 and sentenced
to a term of 15 years in the Florida State Prison System.
He was subsequently released on a $25,000 appeal bond
and remained on bond until service of the sentence on
July 24, 1965.

    Records indicated Mr. Chippas was received at the
State Prison, Rayford, Florida on January 18, 1966. He
was released from that facility on August 11, 1966 as
he had been granted a motion for a new trial. Subsequently,
on January 13, 1969, Mr. Chippas was acquitted of all
the original charges. He was represented by counsel.

10-13-64   Interstate trans-   Miami, FL      04-06-65: dismissed
Age 32     portation of motor
           vehicle.

    Records in the Southern District of Florida, case
number 64-481-Cr-CF indicated the Court signed an order
of removal to Mobile, Alabama on October 23, 1964 for
charges involving transportation of a stolen auto. Records
also revealed that on April 6, 1965, that case was dismissed
by the U.S. Attorney's office of that District.

07-24-65   Throwing a deadly   Miami, FL      Acquitted
Age 33     explosive

06-02-72   Conspiracy to im-   Miami, FL      10-17-72: 2 years CAG,
Age 40     port marijuana                    2 years SPT, SD/FL

    Records reflect that on May 17, 1972, an undercover
agent met with Louis Chippas and a codefendant, Robert
D'Orsay in order to plan the smuggling operation of 10,000
pounds of marijuana into the United States. On May 25,
1972, the undercover agent met with Chippas and another
codefendant, Pat Birth, in Kingston, Jamaica during which
time a delivery of the marijuana was arranged. On May
26, 1972, Chippas and three Jamaicans were arrested as
they attempted to deliver 859 pounds of marijuana to an
aircraft at a Jamaican airport.

    Chippas was arrested by federal authorities in Miami
on June 2, 1972. On August 23, 1972, Chippas was found
guilty by a jury to Count One of the indictment. On

10-17-72, he was sentenced to two years confinement plus two years special parole term by the Honorable Peter T. Fay. He was represented by counsel, Milton Grusmark.

After his appeal was denied, Chippas began serving his sentence at the Federal Prison Camp, Eglin, on May 4, 1974. He remained in that facility until released to a community treatment center on May 16, 1975. Mr. Chippas was paroled from Village South Halfway House Program on June 13, 1975.

2-1

Mr. Chippas was under parole supervision in the Southern District of Florida until he was arrested on November 18, 1975 in Santa Marta, Colombia. Mr. Chippas was arrested by Colombian National Police, while in possession of 49 kilograms of hashish. As Mr. Chippas had not been given permission to leave the District, a parole warrant was requested and subsequently issued on January 21, 1976. Additionally, charges of conspiracy to import marijuana resin were filed in case number 76-42-Cr-JE in the Southern District of Florida. Chippas was returned to the United States and arrested by federal marshals on March 31, 1976. He remained in custody until the parole warrant was withdrawn on July 21, 1976. Mr. Chippas subsequently completed his special parole supervision without further incident and was discharged from supervision on April 12, 1978.

According to information received from the U.S. Attorney's office and the Drug Enforcement Administration, Louis Chippas was charged in superseding indictment 76-42-Cr-JE, along with codefendants, Louis Pabst and William Flingos. This conspiracy to smuggle hashish involves Mr. Chippas' behavior while under parole supervision. Mr. Chippas had been arrested in Santa Marta, Colombia for possession of 49 kilograms of hashish.

According to Court records, Mr. Chippas was found not guilty by a jury on April 20, 1977. Judge Joe Eaton entered a judgment of acquittal and ordered the indictment dismissed. Mr. Chippas was represented by Attorney, Steven Pave for the hashish violation and by Mr. William Cagney for the parole violation charges.

| | | |
|---|---|---|
| 07-08-78<br>Age 46 | Poss. of controlled Trenton, NJ<br>substance w/intent<br>to distribute; consp.<br>to possess a controlled<br>substance over 25 grams | 02-01-80: 6-10 years<br>NJ State Prison |

3-2

Records reflect that on July 8, 1978, Chippas was one of six individuals arrested in New Jersey, while unloading in excess of ten tons of Colombian marijuana from an aircraft, which had landed at New Jersey's Trenton-Robbinsvil Airport from the Bahamas. Chippas

was sentenced in Mercer County, New Jersey on February 1, 1980 to a prison term of six to ten years. He was permitted to remain on bond at the conclusion of sentencing. On July 1, 1981, the bond was revoked and a warrant issued for his arrest. He was subsequently arrested in Miami by the FBI on December 6, 1982 for unlawful flight to avoid confinement. He was returned to New Jersey and was serving the State Prison sentence at Rahway State Prison prior to be writted to the Southern District of Florida to face the aforementioned charges. Mr. Chippas was represented by counsel.

| | | | |
|---|---|---|---|
| 04-20-84 | Conspir. to import | Miami, FL | 01-16-86: Ct.1: 15 years |
| Age 52 | cocaine, conspiracy | | CAG. Ct.2: 15 years CAG. |
| | to poss. cocaine; | | Ct.2 to run consecutively |
| | aiding and abetting | | with Ct. 1. Ct.3: |
| | and attempting to | | imposition of sentence of |
| | import cocaine. | | confinement withheld, five |
| | | | years probation, consecutive |
| | | | to the above mentioned |
| | | | confinement sentences. |

According to information received from the U.S. Attorney's office and the Drug Enforcement Administration, Chippas was indicted in case number 84-6033-Cr-Roettger, charging him with conspiring to import and possession with intent to distribute cocaine. On September 12, 1984, a codefendant, Raul Wagner, met with other individuals **to discuss the importation of 1,000 pounds of cocaine.** The cocaine was to come from Colombia via Bimini into the United States. This meeting led to an attempt by Louis Chippas to secure an aircraft for this scheme. Chippas and another defendant, Frank Carcaise, were to arrange for a pilot to fly the drug shipment. Robert Armstrong was recruited by Chippas and Carcaise to fly the shipment of cocaine from Colombia to Bimini and was **to receive $200,000 for his participation.**

On October 18, 1982, Armstrong and defendant, Fernando Duran, departed the United States for Colombia, South America. The aircraft was loaded with **340 kilograms of cocaine** in Colombia, part of that load belonging to defendant, Leandro Castro-Zuluaga. **Shortly after takeoff,** the plane crashed and the fire destroyed the cocaine. Armstrong and Duran escaped without injuries and the aircraft was subsequently pushed into a lake with none of the cocaine being salvaged.

Subsequent to the crash, on November 4, 1982, Chippas and Carcaise met with other individuals in Sunrise, Florida to discuss another shipment of cocaine, **totaling 660 pounds** in the United States. This transaction never occurred and no cocaine was ever seized. Mr. Chippas had been charged with a Three Count conspiracy indictment.

-8-

On 5-6-85, Mr. Chippas was found guilty by a jury to all Three Counts of the indictment. He was given a 15 year consecutive sentence as to Counts One and Two of the indictment and a five year probationary sentence on Count Three. He was represented by Attorney Arthur Tifford.

| 04-20-84 | Conspiracy to | Miami, SD/FL | Instant offense. |
|---|---|---|---|
| Age 52 | import, distribute and create methaqualone powder. Traveling in interstate commerce to distribute proceeds from illegal activities. | | |

**PERSONAL AND FAMILY DATA:**

**Defendant:** Louis Harry Chippas was born on March 9, 1932 in New York City, New York to the union between Harry and Sylvia Chippas. Mr. Chippas experienced a relatively uneventful early childhood, being raised by his parents in New York until 1939, when the family moved to Greece, as both parents were natives of that country. Although they had planned to stay for a few years, the family remained in that country for five years, due to the war in Europe. Mr. Chippas had previously reported to State Probation authorities that he felt the tumultuous conditions in Greece, which the defendant had to live through probably had a detrimental effect on him at that time.

In 1944, the family returned to the United States and initially settled in Arlington, Virginia. Mr. Chippas and his family relocated to Miami in 1948, where he attended school for approximately one year before dropping out following his first criminal involvement. He subsequently enlisted in the U.S. Army on April 7, 1950 and completed airborne school at Ft. Campbell, Kentucky on August 23, 1950. Following his discharge from the military, Mr. Chippas returned to the Miami area. He was married in 1957 and three children resulted from that union. The defendant supported his family without incident for the next several years, however, he did incur a number of arrests between August, 1963 and September, 1964 which resulted in a 15 year state prison sentence. Mr. Chippas served approximately one year of that sentence before being granted a new trial which resulted in his acquittal.

The defendant experienced an arrest-free existence between 1966 and 1972 and supported his family during this time through land sales and development. He was again arrested on federal narcotic charges in June, 1972, resulting in the imposition of a two year confinement sentence. Mr. Chippas was divorced from his wife in 1973

-9-

just prior to beginning the service of his federal sentence. Following his parole in June, 1975, Mr. Chippas settled with his parents in Miami, where he remained for five months under supervision prior to being arrested in Colombia, South America. The Parole Commission chose not to revoke Mr. Chippas for parole violation and he was also subsequently acquitted of a federal hashish charge.

For the next several years, Mr. Chippas was under parole supervision in Miami, Florida, successfully completing that supervision in April, 1978. His non involvement with law enforcement authorities was short lived, as four months later, he was arrested in New Jersey in a major marijuana smuggling case which resulted in his receiving a six to ten year state sentence. Mr. Chippas appealed but failed to subsequently surrender to begin service of that sentence, which resulted in a warrant being issued for his arrest. He was subsequently arrested by federal authorities and returned to the New Jersey state prison. He was later indicted on the instant offense and is presently in the Southern District of Florida on a writ from the State of New Jersey.

**Parents and Siblings:** The subject's father, Harry Chippas, a native of Greece, is approximately 90 years of age. He is retired from the restaurant business. The defendant's mother, Sylvia, is approximately 78 years of age and is also a native of Greece.

Mr. Chippas has three siblings: Kathy Meador, is approximately 54 years of age; Mary Harrington, is 50 years of age and William Chippas is approximately 49 years of age. As Mr. Chippas declined to be interviewed for the presentence investigation, no additional information is available on the subject's family.

**Marital:** Mr. Chippas was married in 1957 in Chicago, Illinois to Ann Doran. Three children were born from this union: Lou is 26 years of age; Laura, age 25 and Linda, age 23. Mr. Chippas and his wife reportedly divorced in 1973.

Additionally, Mr. Chippas had reported a previous marriage occurring in 1954 which resulted in a divorce and probable anullment. There were no children from that union.

**Education:** Mr. Chippas completed the tenth grade at Miami Techinical High School and subsequently attended Miami Aviation School under the GI bill for approximately one year. He had completed his high school equivalency requirements while in the service.

**Employment:**   The last available records concerning the defendant's employment was during the time frame he was under federal parole supervision. Those records indicate that from June, 1975 through September, 1975, he was employed as a sales representative for Gardner Mulloy Athletic Club, 9629 S. Dixie Highway, Miami, Florida. Mr. Chippas was earning $150 per week.

Other than the aforementioned verified employment, Mr. Chippas indicated during October, 1975, he was an investor at Lake Towers Estates, Haines City, Florida. It was later noted in a letter of September 24, 1977, from his brother, William Chippas, President of Lake Towers Estates, Inc., that Mr. Chippas was a stock holder and earned $1,000 per month during 1977.

Mr. Chippas also indicated employment from August, 1976 through June, 1977 by Bob Pitts Realty, Winterhaven, Florida.  It was indicated Mr. Chippas earned $1,000 per month as a customer service representative.

It was noted that at the time of his discharge from parole, April, 1978, Mr. Chippas still listed his employment as Lake Towers, Inc., earning $1,000 per month.

There is no record of Mr. Chippas having filed income tax returns for the past five years.

**HEALTH:**

**Physical:**   The defendant is a white male, who stands 6' 1" tall, weighs 175 pounds, has brown eyes and black hair.  Mr. Chippas was involved in an automobile accident in 1952 from which he suffered back injuries.  Additionally, he reportedly ruptured an eardrum in October, 1961, a direct result of being wounded while in Korea.  It was noted at the time of his initial incarceration in 1966, Mr. Chippas was classified for heavy physical duty. Additionally, in a classification study conducted by the U.S. Bureau of Prisons in 1974, it was reported he appeared to be in good physical condition.

**Mental and Emotional:**   No assessment could be made of the defendant's current status as he declined to participate in the presentence investigation preparation. At the time of his incarceration in 1966, his IQ was tested at 96 or normal intelligence.  Observations by prison staff during Mr. Chippas' incarceration, reported no overt indications of either mental or emotional instability.

**MILITARY SERVICE:**

Mr. Chippas entered the U.S. Army under serial number RA14357560 in 1950.  He was a member of the Airborne Infantry and received an honorable discharge in 1953.  He

received the rank of Private First Class and was also awarded a purple heart in combat infantry men's badge for his participation in the Korean war. From all indications, Mr. Chippas received no general or summary court marshals while a member of the armed forces.

**FINANCIAL CONDITION:**

  **Assets:** None known.

  **Liabilities:** None known

**EVALUATION:**

  **Probation Officer's Assessment:** Louis Chippas appears before the Court after being found guilty by a jury of Seven Counts of a 19 Count Indictment, involving conspiracy to bring into the United States approximately 3,000 pounds of methaqualone powder. The facts of the case reflect Mr. Chippas, along with six other codefendants, was involved in a smuggling venture where methaqualone powder was to be shipped from Asia through Canada and subsequently into the United States. The powder was to be brought into the United States by aircraft. The deal was never consummated and no methaqualone powder was seized in the United States. According to the Government, this amount of powder would have been able to manufacture 4,500,000 quaalude tablets.

  According to the Government, Mr. Chippas, along with Joseph Vershish, is considered to be the most culpable individual involved in this scheme. The Government asserts Mr. Chippas financed a portion of the operation and made arrangements in Maine for the importation of methaqualone powder. No information has been received from Mr. Chippas, as he declined to participate in the preparation of the presentence investigation. He had been incarcerated since December, 1982 on a sentence resulting from unrelated charges. The instant offense represents his fifth felony conviction, the fourth involving narcotics.

  From available information, Mr. Chippas was afforded a relatively stable upbringing by his natural parents, aside from a five year period when he lived in Greece during WWII. He has been a resident of the South Florida area since 1948 and did raise and support three children during a portion of his adult life. The defendant appears to have had little gainful employment during the past ten years and has not accumulated any verifiable, significant financial assets.

  The defendant has been characterized as a "career criminal" and from all indications, he has lived up to that reputation. The instant offense must certainly be considered extremely serious due to the tremendous quantity

of methaqualone powder that Mr. Chippas conspired to import into the United States. The defendant's involvement is aggravated by the fact that the offense occurred while he was a fugitive from previous narcotics activities occurring in 1978. Mr. Chippas, having had numerous prior contacts with law enforcement authorities, well knew that his participation in the instant offense was contrary to the laws of the United States. Thus, a period of incarceration commensurate with his level of culpability, is deemed an appropriate sentence in this case.

**Supervision Plan:** At such time as Mr. Chippas comes under supervision, he will be required to maintain close contact with our office. He will be required to maintain full-time, legitimate employment and all travel outside the U.S. will be curtailed.

-13-

OFFENSE: **21 USC, §846 – CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE SCHEDULE 2 DRUGS**

PENALTY: **5 years and/or $15,000 plus 2 years SPT**

### SENTENCING DATA

(**As** provided by the Administrative Office of the U.S. Counts for a twelve month period ending June 30, 1983)

|  | NATIONAL | | SD/FLORIDA | |
|---|---|---|---|---|
|  | NUMBER | PERCENT | NUMBER | PERCENT |
| Imprisonment: | 130 | 61 | 4 | 57 |
| Received Probation: | 55 | 26 | 3 | 43 |
| Split-Sentence: | 28 | 13 | – | – |
| Fine Only: | – | – | – | – |
| Other: | 1 | 1 | – | – |
| Total Defendants: | 214 | 100 | 7 | 100 |

Average Sentence of Imprisonment was: __57__ months          __30__ months

Average Sentence of Probation was: __40__ months          __36__ months

### PAROLE DATA

Salient Factor Score __4__          Offense Severity Rating ___6___

    If incarcerated, Parole Commission guidelines indicate the defendant would likely serve _____ **64 – 78** _____ months before being considered eligible for parole. However, in all cases, the final **determination** as to parole eligibility is made solely by the U. S. Parole Commission.

Respectfully submitted,

Raymond H. Mineau
U. S. Probation Officer

APPROVED: _____

R. Allen Satcher
Supervising Probation Officer

**U.S. Department of Justice**
United States Parole Commission

U.S. Probation O.     s Estimated Parole Guideline Worksheet

Name: __CHIPPAS, Louis__     Docket No.:__84-6034-Cr-Zloch__  Date: __2-20-86__

*[Note: The following is only an estimate of the parole guideline range as the U.S. Parole Commission will compute the actual parole guideline range at the time of the parole hearing.]*

Offense Severity Rating is assessed as Category _____6_____ because __conspiracy 3,000 pounds__
____of methaqualone powder.____

## SALIENT FACTORS

A. PRIOR CONVICTIONS/ADJUDICATIONS *(ADULT OR JUVENILE)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    None = 3; One = 2; Two or three = 1; Four or more = 0      | 0 |

B. PRIOR COMMITMENT*(S)* OF MORE THAN THIRTY DAYS *(ADULT OR JUVENILE)* . . . . . . . . . . . . . . . . . . . .
    None = 2; One or two = 1; Three or more = 0      | 0 |

C. AGE AT CURRENT OFFENSE/PRIOR COMMITMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    Age at commencement of the current offense:
    26 years of age or more = 2***; 20-25 years of age = 1***;
    19 years of age or less = 0
    *** EXCEPTION: If five or more prior commitments of more than
        thirty days *(adult or juvenile)*, place an "x" here _____
        and score this item = 0      | 2 |

D. RECENT COMMITMENT FREE PERIOD *(THREE YEARS)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    No prior commitment of more than thirty days *(adult or juvenile)* or
    released to the community from last such commitment at least three years
    prior to the commencement of the current offense = 1; Otherwise = 0      | 0 |

E. PROBATION/PAROLE/CONFINEMENT/ESCAPE STATUS VIOLATOR THIS TIME . . . . . . . . . . . . . . . . . . . . .
    Neither on probation, parole, confinement, or escape status at the time
    of the current offense; nor committed as a probation, parole, confinement,
    or escape status violator this time = 1; Otherwise = 0      | 1 |

F. HEROIN/OPIATE DEPENDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    No history of heroin/opiate dependence = 1; Otherwise = 0      | 1 |

TOTAL SCORE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      | 4 |

Estimated Guideline Range _____64 – 78_____ months.

Particularly Aggravating/Mitigating Factors (Optional): _____

**U.S. Department of Justice**

United States Parole Commission

Notice of Hearing    role Application,

Representative and Disclosure Request

Date 10-16-1995

Name: CHIPPAS, LOUIS

Register No: 18565-004          Institution FCI MIAMI

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

1. NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for _____ to _____ , 19 _____ . [Juveniles do not apply for parole and will be heard as scheduled.]

NOTE:    In certain cases the decision will be made by a quorum of National Commissioners under original jurisdiction procedures. See 28 CFR 2.17.

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

*L.C.*
(initials)    I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2. APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled:

*Louis Clippas*
(Signature)          10-17-95
(Date)

IF YOU WISH TO POSTPONE YOUR PAROLE HEARING UNTIL A LATER TIME, INITIAL THE FOLLOWING WAIVER.
_____    I do not wish to be considered for parole at this time, and for that reason, I waive the hearing which has been scheduled for me. I understand that I may still apply for parole at a later date, and will be scheduled for a hearing provided I submit an application at least 45 days prior to the first day of the month in which hearings are conducted
(initials)    at the institution where I am then confined.

3. REPRESENTATIVE: At your hearing you may have a representative of your choice who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager

Name of Representative: _____

IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING WAIVER:

*R.C.*
(initials)    I do not wish a representative at my hearing.

INMATE COPY



4. DISCLOSURE OF FILE INFORMATION: You may review the reports and documents in your file which will be considered by the Commission, if you submit a request for disclosure on this form at least 15 days in advance of your hearing [NOTE: Certain material which the Commission will consider may be exempt by law from disclosure. In such event, a summary of the material withheld from you will be furnished if you request to review your file.]

_R. C._
(initials)   I wish to inspect the disclosable material in my institutional file.

_____
(initials)   I wish to inspect any documents concerning me which the Parole Commission may have in its Regional Office. I understand that in most cases, the Commission will have no material, until after an initial hearing has [....] [If you request disclosure of Regional Office documents you must do so on [....] the hearing.]

NOTE:        At review hearings, the Commission will consider only information at factors which have changed, or which may have changed, since your last parole hearing.

IF YOU DO NOT WISH TO REQUEST ANY DISCLOSURE, INITIAL THE FOLLOWING WAIVER:

_____
(initials)   I do not wish to inspect my files before the hearing scheduled on this form.

IF YOU HAVE INSPECTED FILE MATERIAL, INITIAL BELOW.

_R. C._
(initials)   I have reviewed the materials in my institutional file on _April 10/2 0_____, 19_____.

_____
(initials)   I have reviewed the Parole Commission file material on _____, 19_____.

IF YOU HAVE NOT YET RECEIVED DISCLOSURE OF THE FILE MATERIALS YOU REQUESTED OR IF THERE ARE LESS THAN 30 DAYS BETWEEN EITHER OF THE ABOVE DATES AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION UNLESS YOU INITIAL THE FOLLOWING WAIVER:

_RC_
(initials)   I did not receive 30 days prehearing disclosure of the material I requested from my files. However, I hereby waive my right to disclosure 30 days in advance of the hearing, and I request to be heard as scheduled.

5

PRE-HEARING ASSESSMENT

|  |  | INSTITUTION: | Miami FCI |
|---|---|---|---|
| NAME: Chippas, Louis |  | REG NO: | 18565-004 |
| DATE OF BIRTH: | 3/9/32 | MONTHS IN CUSTODY 115 AS OF 11/15/95 | |
| SENTENCE(S) LENGTH/TYPE: | 50 yr RA | 2/3 DATE: 1/15/2016 | |
| PAROLE ELIGIBILITY DATE: | 1/15/96 | DETAINER: | |
| FINES/RESTITUTION/COURT ASSESSMENT: | | N/A | |
| REVIEWER: Lee H. Chait | | DATE: | 10/31/95 |

**********************************************************************

I.   PRESENT OFFENSE:

   A.   The prisoner was convicted by trial of counts 1, 2, 4, 17, 18 and 19 charging conspiracy to import methaqualone and related offenses. He was acquitted on count 3. The aggregate sentence imposed was 55 years but was later modified to an aggregate sentence of 50 years.

   The subject was sentenced in consecutive indictments #84-6033 and 84-6034 with 30 years in indictment #1 and 25 years reduced to 20 years in indictment #2.

   B.   In indictment #84-6033 subject and others were involved in a conspiracy to import 340 kilograms of cocaine on 10/18/82 but the plane crashed upon take off from Colombia, South America. The subject and Frank Carcaise were suppose to arrange for a pilot to fly the drug shipment and the pilot was to receive $200,000.

   There is not a PSI for this case number, however, this case is described on page 8 of the PSI for 84-6044. There is some confusion over the dates in that there are 2 episodes described on 10/18/82 when the crash occurred and a 2nd episode on 11/4/82 involving 660 pounds of cocaine which never occurred.

   A date of 9/12/84 appears on page 8, paragraph 3, however, this clearly appears to be in error in that the date of arrest on the indictment was 4/20/84.

   In indictment #84-6034, the subject and a separate group of individuals (6 others) were involved in a conspiracy to import methaqualone beginning in 1981. In a 3/82 meeting at a Holiday Inn in Bridgeport, CT, the subject was present. Codefendant Vershish was to provide a down-payment of more than $47,000 to purchase a 2 engine aircraft.

CHIPPAS.185                                    Page 1 of 3



Approximately 3,000 pounds of methaqualone powder were to be brought into Maine through Asia and then Canada. Subsequent meetings were held in Maine at which the subject was present in 4/82 and 6/82.

On 6/16/82 the subject and others inspected an airstrip to be used to off-load the methaqualone.

A certified check was delivered to the cargo division of Air Canada to cover the transportation of the methaqualone. Efforts continued into 11/82 to make the plan come to a head, however, at some point an undercover agent became aware of the effort and arrests were made.

According to page 5 of the PSI, the operation was under surveillance of the government and the deal never took place because the pilot declined to participate. According to DEA, the effort would have involved the equivalent of approximately 4.5 million tablets.

C.   The offense behavior is rated as Category Eight severity because it involved a conspiracy to import more than 18.75 kilograms of cocaine (purity unknown).

The separate and distinct offense involving the methaqualone powder is seen as an aggravating factor.

## II.   SALIENT FACTOR SCORE:

A = 1   Subject has 3 convictions.

1.   12/7/49: Breaking and entering, 2 counts, grand larceny; pled guilty.  Sentence suspended probation.
2.   6/2/72: Conspiracy to import marijuana; 2 years + 2 years SPT. This case involved 859 pounds of marijuana; paroled 6/13/75.

While on parole subject was arrested in possession of 49 kilograms of hashish in Colombia and a PV warrant was issued but later withdrawn on 7/21/76.  The subject was found not guilty by a jury on 4/20/77.

3.   7/8/78: Possession of controlled substance; 6-10 years New Jersey State prison, imposed 2/1/80 with continued release on bond.  Bond revoked 7/1/81, warrant issued, subject arrested 12/6/82, unlawful flight to avoid confinement.

This case involved in excess of 10 tons of Colombian marijuana.  It appears subject has been in continuous custody since 12/6/82 and this should be considered at the hearing.

Subject was released from state custody on 11/18/86, however, the regional director of the BOP on 8/14/95 agreed to accept the subject as of 1/16/86 which was the date of sentencing.

B = 1   Subject has 2 commitments of more than 30 days that were

CHIPPAS.185                                              **Page 2 of 3**

imposed prior to the last overt act of the current offense.

C = 2    Subject was 49 years old at the commencement of the current offense.

D = 1    Subject was last released from a countable commitment, three or more years prior to the current offense. Date of last release is 6/13/75.

E = 1    Subject is not a status violator.

F = 1    Subject does not have a history of Opiate Dependence.

G = 1    Subject was 41 years of age or more at the commencement of the current offense.

8    **TOTAL SCORE**

III. **The guideline range is 100+ months.**

IV. **OTHER SIGNIFICANT PRIOR RECORD/STABILITY FACTORS:**

Subject appears to be a professional drug trafficker based on his continued involvement in narcotics trafficking since 1972.

RISK:

Subject does appear to be a more serious risk based on the nature of the drug offenses involving a smuggling operation of about 10,000 pounds of marijuana in 1972; 10 tons of marijuana in 1978; and the instant offenses involving 1,000 pounds of cocaine and the equivalent of several million methaqualone tablets. Arrests by law enforcement authorities and acquittals or not guilty findings did nothing to deter the subject.

He also appears to be a poorer parole risk than the SFS of 8 by virtue of the nature of his crime and the on-going pattern established.

V. **CO-DEFENDANTS:**

None of the codefendants were involved in both schemes as was the subject.

VI. **FORM USA-792, AO-235, AO-337:**

Absent

VII. **PAROLE ON THE RECORD:**

No

DMJ
November 1, 1995

CHIPPAS.185                                        **Page 3 of 3**

## INITIAL HEARING SUMMARY

**Name:** . . . . . . . .  Chippas, Louis

**Reg No:** . . . . . . .  18565-004

**Hearing Date:** . . .  11/7/95

**Institution:** . . . . .  FCI Miami

**Examiner:** . . . . . .  Lee H. Chait

**2/3 or MR Date:** . . . . .  1/15/2016

**Statutory MR Date:** . .  8/12/2019

**Full Term Date:** . . . . .  1/15/2036

**Months in Custody:** . .  118

             **As Of:** . . .  11/15/95

**Severity Rating:** . . . . .  Eight

**Salient Factor Score:** .  8

**Guideline Range:** . . . .  100+ months

**Recommended Release** Presumptive Parole **After Service of** 180 **Months**

---

I.    The panel has discussed the prisoner's severity rating, salient factor score and guidelines with the prisoner. The prisoner contests the description of the offense behavior, salient factor score items and/or guideline range.

     He maintains that there was not a meeting in November 1982 to discuss the additional importation of 660 pounds of cocaine.

Subject denied being a professional drug trafficker. Subject states that on the methaqualone case he was already serving time on the New Jersey case, and the original plan was to have everything imported into Haiti and processed there. He was told that this would not be illegal according to an attorney. Subject states that while he was incarcerated, others went ahead with the scheme, which resulted in the conviction.

Subject stated that he used to sell cars to Jamaica, and he knew the governor of St. Ann. The subject was approached to go to Jamaica and talk to persons regarding marijuana importing, however, they declined to participate. The subject stated that he thought that this was all a game intended to try to mitigate his behavior. Subject stated that codefendant Joseph Vershish received 35 years on the quaalude sentence but cooperated with the government and had his sentence reduced. The subject claimed that Vershish was also involved in the cocaine case.

The subject reviewed his file on or about 10/20/95, and waived the 30 days prehearing disclosure.

II.   **Modifications, Additions, Corrections from Prehearing Assessment:**

CHIPPAS.185                                             Page 1 of 3



None.

## III.  Institutional Factors:

### A.  Discipline:

Clear conduct.

### B.  Program Achievement:

Subject was initially confined at USP Lewisburg and worked in the educational and mechanical services department.  Assigned to the yard maintenance detail in 1990, he remained there until his transfer.  He received very good to outstanding work reports.  At Atlanta, subject worked in Food Service and Landscape until assigned as a mechanic for the recreation department.  Subject received outstanding work reports.

Subject is currently in FCI Miami and receives outstanding work reports in the recreation department.

## IV.  Fines, Restitution, Court Assessment:

N/A

## V.  Release Plans:

Upon release, subject will reside in Miami, FL with his wife.  Subject will work in the family business of either T-shirt manufacturing or manufacturing anchor arms for securing boats to the docks.

## VI.  Representative:

None.

## VII.  Risk:

Please see pre-review dated 10/31/95.  This examiner finds that subject is a poorer parole risk and also a more serious parole risk due to the ongoing involvement with drug trafficking since 1972, and despite periods of incarceration and acquittals in court, nothing has deterred the subject from involving himself now in two separate and unrelated extremely large-scale drug trafficking efforts.

## VIII.  Evaluation:

The applicable guideline range is 100 + months.  This examiner finds that service of

CHIPPAS.185                                                              Page 2 of 3

more than 48 months above the minimum guideline range is warranted, and that subject was involved in two separate and unrelated extremely large-scale drug trafficking efforts involving methaqualone in one case and cocaine in another. In addition, the subject appears to be a professional drug trafficker based on his past criminal history of narcotics trafficking since 1972.

He appears to be one of the most culpable in these behaviors, and despite his age (63 at the present time), this examiner finds that additional confinement service is warranted. The service of 180 months is found to be appropriate.

While the subject will have additional SIH hearings in 11/97 and 11/99, this examiner does not feel that a reduction for SPA would be appropriate. The subject has done well in the institution, but this examiner finds that service of 180 months is the minimum accountability to be expected concerning the subject's past history and his current violations.

## XI.    Panel Recommendation:

1)    Continue to presumptive parole after service of 180 months (1/15/2001).

2)    Continue to a presumptive parole after the service of 204 months 1/15/2003

tes
November 28, 1995

Addendum    I believe that subject should serve 17 years minimum considering the aggravating factors pointed to by my Chair. Subject is considered a principal co-defendant in this case. He will be age 70 in the year 2003. Any earlier release would depreciate the seriousness of the offense.

11/28/95

Com    Other most culpable codefendant had a 35 yr sentence + reduced to 9 + was paroled in 9/90

CHIPPAS.185

Page 3 of 3

Case 0:00-cv-06148-WJZ   Notice of Action

United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

**Name:** CHIPPAS, Louis Harry

**Register Number:** 18565-004                    **Institution:** Miami FCI

---

In the case of the above-named parole action was ordered:

Continue to a Presumptive Parole after service of 204 months (January 15, 2003).

**REASONS:**

Your offense behavior has been rated as Category Eight severity because it involved a conspiracy to import more than 18.75 kilograms of cocaine, purity unknown. Your salient factor score (SFS-81) is 8. You have been in state and federal confinement as a result of your behavior for a total of 118 months as of 11-15-95. Guidelines established by the Commission indicate a range of 100+ months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented a decision more than 48 months above the minimum guidelines is warranted because you are a more serious risk than indicated by your salient factor score and your offense behavior involved the following aggravating factors: In addition to the two federal convictions you have two other convictions for narcotic trafficking related offenses in 1972 and 1978. You also have been acquitted of other narcotics charges. Your prior encounters with the criminal justice system did not deter you from the current behavior which is involvement in two separate, unrelated, extremely large scale drug trafficking behaviors.


As required by law, you have also been scheduled for a statutory interim hearing during November 1997.

**SALIENT FACTOR SCORE (SFS-81):** Your salient factor score items have been computed as shown below. For an explanation of the salient factor score items, see the reverse side of this form.

**ITEM A[ 1 ]; B[ 1 ]; C[ 2 ] (   ); D[ 1 ]; E[ 1 ]; F[ 1 ]; G[ 1 ]; Total[ 8 ]**

*If five or more prior commitments, place an 'x' in the parenthesis in Item C.

---

**Appeals Procedure:**
The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26:

November 28, 1995  Eastern Region        Commissioner: John R. Simpson        Docket Clerk: dlw



Page 1 of 1

Exh 8

U. S. Department of Justice

United States Parole Commission

Washington, D. C.   20537

# APPEAL

Name _LOUIS CHIPPAS_

Register Number _18565 004_    Institution _F.C.L MIAMI_

I received a Notice of Action sent _11-28-95; Ext. Granted to 3-5-96_ and hereby appeal that decision:
(Date)

| | |
|---|---|
| **REGIONAL APPEAL** | I appeal to the Regional Commissioner to review and reverse or modify the decision. |
| _____ | _____ |
| (Witness Signature) | (Signature) |

RECEIVED
MAR 0 4 1996
N·R·B
U.S. PAROLE COMMISSION

**NATIONAL APPEAL**                I appeal to the National Appeals Board to review and reverse or modify the decision.

_____        _Louis Chippas_        _12-5-95_
(Witness Signature)                  (Signature)                  (Date)

**INSTRUCTIONS:**        Appeals may be based on the following grounds. Check one or more of the grounds that are applicable to your case. Explain your basis for appeal on the reverse side of this form using separate sheets if necessary. Use headings so that the Commission can see which of your grounds you are discussing. Address one point at a time:

(1)  [  ]  The guidelines were incorrectly applied in my case as to any or all of the following:

    (A)  [  ]  Offense severity rating;
    (B)  [  ]  Salient factor score item(s) _____;
    (C)  [  ]  Time in custody.

(2)  [ ✓ ]  A decision outside the guidelines was not supported by the reasons or the facts as stated in the Notice of Action;

(3)  [ ✓ ]  Especially mitigating circumstances justify a different decision;

(4)  [  ]  The decision was based on erroneous information and the actual facts justify a different decision;

(5)  [  ]  The Commission did not follow correct procedure in deciding my case, and a different decision would have resulted if the error had not occurred;

(6)  [  ]  There was significant information in existence but not known at the time of the hearing;

(7)  [ ✓ ]  There are compelling reasons why a more lenient decision should be rendered on grounds of ~~compassion~~. _Codef. Dismiss_

(See reverse side for further instructions)

# Exh. 9

Parole Form I-22 Nov. 1979

**ORIGINAL TO THE APPROPRIATE REGIONAL OFFICE OF THE COMMISSION**

MAILING INSTRUCTIONS:

NOTE:   All appeals (both regional and national) must be mailed to the appropriate regional office within
        30 days from the date on the Notice of Action.

APPELLATE HEARINGS:           If the initial decision in your case was by original jurisdiction, your appeal
                              will be heard before the full Commission. Otherwise, your appeals (region-
                              al/national) will be decided on the record. However, regional appellate
hearings may be ordered in exceptional cases. You may have one or more representatives at an original juris-
diction or regional appellate hearing, but you may not appear personally. Initial below whether you wish repre-
sentation in the event a hearing is held on your appeal. Time and place will be furnished.

**(Initial where applicable)**

_____ I do not wish to have a representative present.

_____ I wish to be represented by:

------------------------------------          ------------------------------------
           (Name)                                     (Street Address)


------------------------------------          ------------------------------------
  (Telephone: area code and number)              (City, State and Zip Code)

INMATE'S EXPLANATION OF APPEAL:

INMATE'S EXPLANATION OF APPEAL
RE: LOUIS H. CHIPPAS
Reg. #18565-004
FCI Miami

<u>NATIONAL APPEAL</u>
<u>TO THE</u>
<u>U. S. PAROLE COMMISSION</u>

<u>SUMMARY</u>

Louis Chippas, the petitioner, hereby appeals from the Notice
of Action dated November 28, 1995.  Permission to submit this appeal
by March 5, 1996, was granted by the National Appeals Board by letter
of January 22, 1996.  Pursuant to §2.26, this brief is submitted
along with a properly executed form I-22.  The issues raised by the
petitioner at his initial hearing on November 7, 1995, are incor-
porated by reference and made a part of this appeal.

<u>BACKGROUND STATEMENT OF CASE</u>

Mr. Chippas is serving an aggregate fifty (50) year sentence
following his convictions for conspiracy to import methaqualone powder
(case no. 84-6034) and conspiracy to import cocaine (case no. 84-
6033).  In neither case were drugs actually imported.  In the first
case the pilot apparently refused to fly the methaqualone powder,
and in the second case the plane crashed before any cocaine was im-
ported.

At the initial hearing examiner Chait determined the guidelines
to be 100+ months based on a Category Eight offense and a Salient
Factor Score of eight.  It was this examiner's recommendation to

-2-

grant parole after service of 180 months.  However, during admin-
istrative review, secondary examiner Shoquist recommended 204 months
and that was concurred in without comment by examiner Pinner and
the Commissioner.  The reasons cited in aggravation for exceeding
the 148 month point of the guidelines indicated Mr. Chippas was a
more serious parole risk than indicated by his Salient Factor Score
and the case was further aggravated by "two other convictions for
narcotic trafficking related offenses in 1972 and 1978.  You also
have been acquitted of other narcotics charges..." (NOA).  The de-
cision to release after 204 months is hereby appealed.


## BASIS OF APPEAL AND ARGUMENT


I.   DECISION OUTSIDE THE GUIDELINE (OF 148 MONTHS) UNSUPPORTED
     BY THE REASONS GIVEN

     Mr. Chippas is sixty-four years old (DOB 3-9-32).  He has three
(3) prior convictions which contribute to his Salient Factor Score
of eight.  The score is an eight because the Commission recently
recognized that the older inmate is less likely to recidivate, and
thus added Item G to reflect that assessment.  Therefore, Mr. Chippas
is not a poorer risk than indicated by his Salient Factor Score.

          "Note that a decision above the upper limits of the
          'poor risk' category may be warranted on the grounds
          of 'poorer risk' in certain extreme cases (e.g., where
          the prisoner has a substantially worse prior record
          than the typical case with a score of zero.  But also
          note that the majority of prisoners with a Salient
          Factor Score of zero have 8-12 prior convictions and
          6-12 prior commitments..." [§2.20-06 (B)].

-3-

While Mr. Chippas has a score of eight, he's been treated as if it were zero! To have increased the guideline as if his score were a six or seven is one thing, but to basically ignore the guidelines altogether and somehow - magically - arrive at seventeen years or 204 months to be the right amount of time is to show contempt for the Commission's rules and procedures.

Similarly, the guidance by the Commission for determining a prisoner to be a 'more serious risk' than indicated by the guidelines is discussed at §2.20-06 (A) and examples of such offenders are given at 2.20-05 (B)(5-7). These examples of the more serious offender include:

- You are a more serious risk because you have a history of repetitive assaultive behavior...

- You are a more serious risk because of your history of repetitive sophisticated criminal behavior - three out of five prior convictions involve sophisticated fraud similar to your current offense.

- You are a more serious risk because of your extensive and serious prior record (e.g., you have eight previous convictions for serious offenses).

Mr. Chippas has no history of assaultive behavior and he does not have five or eight previous convictions as contemplated by examples two and three above. In sum, he is not a more serious parole risk than accounted for in his guidelines of 100+ months (i.e., more than 48 months from the base of the guidelines).

-4-

If the Commission were to ignore the point for Item G, his score
would be seven and the guidelines 120+ or 168 months before arriving
at the 'top.' Such a decision would, at the minimum, contain some
rational basis as opposed to 'I think subject should serve seventeen
years.'

Finally, the Commission has included as an aggravating basis
for exceeding the upper threshold for Category Eight the fact that
Mr. Chippas "has been acquitted of other narcotics charges" (NOA).
On April 20, 1977, Mr. Chippas "was found not guilty by a jury...
U. S. District Judge Joe Eaton entered a judgement of acquittal and
ordered the indictment dismissed" (PSI, pg. 7, para. 5). Previously,
on a charge of breaking with intent to commit larceny, "On Jan. 13,
1969, Mr. Chippas was acquitted of all the original charges." Thus,
there was one acquittal for a narcotics charge – not charges as the
notice says.

Regardless, the fact that a prisoner has been <u>acquitted</u> of
offenses has no proper place in a determination affecting his future
or his risk assessment. An acquittal is precisely that - a rejection
in a court of law of the allegations against a defendant. To use
behavior for which the prisoner has been acquitted in a court of
law depreciates the most fundamental principles of our system of
justice. The reviewer should ask him or herself if something like
that were to happen to them personally, how he or she would react.
There would most likely be stunned outrage.

In sum, the basis for exceeding the guidelines is unwarranted.
There is no intent or desire here to diminish Mr. Chippas' three

-5-

prior convictions.  One was for breaking and entering in 1949 when
he was seventeen years old.  The second one involved 859 pounds of
marijuana, and the third was for helping to unload about 20,000 pounds
of marijuana.  Such a history hardly stacks up against those envi-
sioned at §2.20-06 (B) or 2.20-05 (B)(5-7).


II.  COMMISSION'S HANDLING OF THE CO-DEFENDANTS

    1.  Joseph Vershish, reg. #18515-004 - There is no dispute
that co-defendant Vershish was the number one, primary mover of the
conspiracy to import methaqualone powder.  The plan originated with
Vershish and he directed its every move.  The government says Vershish
"was the manager and organizer in the conspiracy."  Like petitioner
Chippas, co-defendant Vershish involved himself in a "large-scale
cocaine conspiracy" once the methaqualone case was aborted.  Ver-
shish's case was rated Category Seven and he was released on parole
after 62 months (see Ex. A 1-3, Vershish's NOA's).  It would appear
that while Mr. Vershish's involvement was far more extensive in the
methaqualone case than was Mr. Chippas', the cocaine conspiracy in
which Mr. Chippas was involved was more extensive than the one in-
volving Mr. Vershish.  However, the vast difference between 62 months
for Mr. Vershish and 204 months for Mr. Chippas is inexplicable and
unwarranted.

    2.  Raul Wagner - In the cocaine conspiracy, co-defendant Raul
Wagner was the originator of the scheme.  He apparently recruited

-6-

petitioner Chippas and Frank Carcaise to assist with the transporta-
tion of the cocaine.  Raul Wagner's offense was rated Category Eight,
but for unknown reasons he was released on parole "after service
of 58 months" (see letter from Michael Stover, dated Jan. 4, 1996,
confirming this release, marked Exhibit B).

3.  <u>Frank Carcaise</u>, reg. #18058-004 - Co-defendant was con-
sidered equal in culpability in every respect to Mr. Chippas in the
cocaine case.  Frank Carcaise and Mr. Chippas were to obtain the
aircraft.  They were to arrange for the pilot, etc.  The Commission
initially granted co-defendant Carcaise a parole after 127 months.
That was subsequently advanced to 121 months (see Carcaise's NOA's
marked Ex. C 1-2).

There are almost always individual case specifics to distinguish
the different parole decisions for co-defendants.  However, there
are no case specifics to warrant a difference between 62 months
(Vershish), 58 months (Wagner), 121 months (Carcaise), and 204 months
for Mr. Chippas.  Interestingly, the secondary examiner noted by
hand that the "other most culpable co-defendant had a 35 year sen-
tence reduced to 9 and was paroled in 9/90" (pg. 3, hearing summary).
Presumably, Vershish cooperated or assisted in some matter to get
a thirty-five year sentence cut to nine, but he was also rewarded
with a parole at 62 months!

-7-

III. <u>CONTINUOUS TIME IN CUSTODY</u>

Mr. Chippas has been in continuous custody since December, 1982, or a period of 159 months. Mr. Chippas was in state custody until the time the federal sentence is computed from on 1-16-86, or a difference of about 37 months. Interestingly, the pre-reviewer noted that:

"It appears subject has been in continuous custody since 12-6-82 and this <u>should be considered at the hearing</u>" (pre-hearing summary, page 2, emphasis added).

Similarly, under mitigating factors at §2.20-05, C 10, the Commission states that where "the prisoner has served a substantial continuous period of time in federal or state custody as a result of other charges," such time will be considered in mitigation. Even though intended, it does not appear that Mr. Chippas received the benefit of such consideration.

<div align="center">CONCLUSION</div>

Mr. Chippas is a sixty-four year old man who has been continuously confined for over 159 months. He has had a long time to reflect on the wasted years, loss of family, and the things important to his remaining life. His family remains supportive and he longs to return to them. He fully recognizes that his convicted behavior warrants punishment, and he feels he has been sufficiently punished. At this stage in his life he poses no risk of recidivisim. His release would not depreciate the seriousness of his behavior. His

-8-

guidelines are significantly long and do not understate the serious-
ness of the offense in any way.

For all of the foregoing reasons, the petitioner seeks a parole
after service of 126 months (which is over 163 months of continuous
confinement in both state and federal custody).

Respectfully submitted,

Cecil C. McCall

CECIL C. MCCALL ASSOCIATES
P. O. Box 71655
Marietta, Georgia  30007
PH: (770) 640-1001

Department of Justice

United States Parole Commission
Chevy Chase, MD 20815

## NOTICE OF ACTION

PAROLE FORM H-7
AUG 85

NAME: Versish, Joseph

REGISTER NUMBER:   18515-004            INSTITUTION:   FPC, Pensacola, FL

In the case of the above-named the following parole action was ordered:

--------------------

REOPEN: ADVANCE PAROLE OF 9/17/90 TO PAROLE EFFECTIVE 9/13/90.

--------------------

(Reasons/Conditions)

28 CFR 2.28(e) ADDITIONAL JAIL CREDIT HAS BEEN DISCOVERED.

-------------------------------------------------------------------

THE ABOVE DECISION IS NOT APPEALABLE.

-------------------------------------------------------------------

  06/19/90        SERO      G. MacKenzie Rast              MIT
  (Date)         (Region)    (Commissioner)            (Docket Clerk):
-------------------------------------------------------------------

COPIES:  Inmate    Institution    Probation Officer    Commission    FOIA    ASM

EV. A'

# NOTICE OF ACTION ON APPEAL

...t of Justice
...d States Parole Commission
Chevy Chase, MD 20815

**NAME**        VERSISH, Joseph

**REGISTER NUMBER**        18515-004        **INSTITUTION**   Pensacola

NATIONAL APPEALS BOARD/FULL COMMISSION: *The appeal by the above-named has been carefully examined by the National Appeals Board/Full Commission and the following has been ordered:*

Continue to a presumptive parole after service of 62 months, September 17, 1990.

**REASONS:**

. the decision in your case has been modified as indicated above.

*All decisions by the National Appeals Board/Full Commission on appeal are final.*

| January 25, 1990 | X | | br |
|---|---|---|---|
| (Date of Notice) | (National Appeals Board) | (Full Commission) | (Docket Clerk) |

( ) Inmate        ( ) Institution        ( ) U.S. Probation Officer        ( ) Commission        ( ) FOIA

PAROLE FORM H-29
JUL 85

# NOTICE OF ACTION

U.S. Department of Justice
United States Parole Commission
Chevy Chase, MD 20815

---

NAME __VERSHISH, Joseph_____
REGISTER NUMBER___18515-004_____INSTITUTION ___DANBURY_____
In case of the above-named the following action was ordered:

Continue to expiration.

***********************************************************************
(REASONS)

Your offense behavior has been rated as Category seven severity because it
involves conspiracy participation in the very large scale distribution of 6.25-
18.74 kilograms of cocaine of unknown purity. Your salient factor score
           You have been in federal confinement as a result of your behavior
for a total of 49 months. Guidelines established by the Commission
                                   before release for cases with good
institutional adjustment and program achievement.

***********************************************************************
SALIENT FACTOR SCORE (SFS-81): YOUR INDIVIDUAL SFS ITEMS HAVE BEEN COMPUTED AS
SHOWN BELOW. FOR AN EXPLANATION OF THE SFS ITEMS, SEE REVERSE SIDE OF THIS
FORM.

*If five or more prior commitments, place an "x" in the parenthesis in item C.
***********************************************************************
Appeals Procedure:

XXX___The above decision is appealable to the National Appeals Board under 28
      CFR, 2.26
_____The above decision is an original jurisdiction decision, and is appealable
      to the Commission under 28 CFR 2.27
_____THE ABOVE DECISION IS NOT APPEALABLE

***********************************************************************
September__15, 1989____NORTHEAST_____DANIEL__R. LOPEZ_____
(Date)                 (Region)         (Commissioner)        (Docket Clerk)

DISTRIBUTION: INMATE, INSTITUTION, ISM, USPO ^

A$^3$



**U.S. DEPARTMENT OF JUSTICE**
United States Parole Commission

5550 Friendship Boulevard
Chevy Chase, Maryland 20815

January 9, 1996

Cecil C. McCall
1813 Baldwin Farms Drive
P.O. Box 71655
Marietta, GA 30007

Dear Mr. McCall:

This letter is in response to your Freedom of Information Act requests of December 6, December 8, December 11, December 13, 1995.

Enclosed please find the Notices of Action which relate to **Reynier Eire, Ricky Sullivan, Benae Floyd, Frank Carcaise**, Joseph Verslish, and **Joseph Clendenny**. Excisions have been made to these documents pursuant to Exemptions 6 and 7(C) of the Freedom of Information Act, 5 U.S.C. §552(b)(6) and (b)(7)(C). **Exemption 6** applies to information which if released would constitute a clearly **unwarranted** invasion of personal privacy. Exemption 7(C) applies to information **compiled for law** enforcement, the release of which could be expected to constitute **an unwarranted** invasion of personal privacy.

The following files have been archived and the information **was obtained from** our computer system: Brenda West's offense was rated **Category Six because it** involved drugs, very large scale. She was continued to the expiration **of her sentence** and released on November 26, 1991; **Raul Wagner's offense was rated Category Eight because it involved more than 15 kilograms of cocaine. He was paroled on September 13, 1990, after service of 58 months;** Serge Alexis's offense was rated **Category Five** because it involved drugs, very large scale and a peripheral role. **He was paroled on August 28, 1987**, after the service of 38 months; Howard Kluver's **offense was rated** Category Six because it involved drugs, very large scale. He was **paroled on October 24, 1990**, after service of 72 months; David West's offense was **rated Category Six** because it involved drugs, very large scale. He was paroled on **November 14, 1990**, after the service of 59 months.

The file of Sophia Floyd is being used by another section of **the Commission.** Using the computer system, Ms. Floyd's offense was rated Category **Six because it** involved more than 5 kilograms of cocaine, with a peripheral role. **She was paroled** on October 18, 1991, after the service of 63 months. She has **been returned as a**

*EX. 73*

parole violator.

Nelson Cossio-Sanchez Aguilar waived his parole hearing **and he was mandatorily** released from prison on August 16, 1994.

Richard Walter Neely was sentenced under the Sentencing **Reform Act so the** Commission does not have a file for this individual.

There were many individuals with the name Robert Armstrong. **The Register** number that most closely matched the other individuals listed on **your request (Reg.** No. 37026-004) is not eligible for parole.  The Commission also **does not have a filed** for Fernando Duran.  Further, no file could be located for an **individual named** Leandro Castro-Zuluaga.

If you are dissatisfied with this decision, you have thirty (30) **days from the** date of this letter to appeal this decision to the Chairman of **the Commission.  An** appeal to the Chairman must be made in writing and addressed **to the Office of the** Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, **Suite 420, Chevy** Chase, Maryland, 20815.

Sincerely,

MICHAEL A. STOVER
General Counsel

2

U.S. Department of Justice

United States Parole Commission

Chevy Chase, MD 20815

# NOTICE OF ACTION

AUG. 89

NAME:  CARCAISE, FRANK              INSTITUTION:  MCC, MIAMI

REGISTER NUMBER:  18058-004

In the case of the above-named the following parole action was ordered:

---

CONTINUE TO A PRESUMPTIVE PAROLE AFTER SERVICE OF 127 MONTHS (8/7/94).

---

Reasons/Conditions:

Your offense  behavior has been rated as Category EIGHT  severity because
it involved CONSPIRACY TO IMPORT MORE THAN 18.75 KILOGRAMS OF COCAINE
(PURITY UNKNOWN) IN 1982 AND CONSPIRACY WITH INTENT TO DISTRIBUTE DIAZEPAM
IN 1983-1984.

Your salient factor score [                              ] You have been in
federal  confinement as a result of your behavior for a total of 82
months.  Guidelines established by the Commission indicate [
                              ] for cases with good institutional adjustment and
program achievement.

Salient Factor Score (SFS-81):  Your individual salient factor score items
have been computed as shown below.  For an explanation of the salient
factor score items, see the reverse of this form.

Appeals Procedure:
        The above decision is appealable to the National Appeals
        Board under 28 CFR 2.26.

| NOV 2 1 1990 | SERO | VINCENT FECHTEL | (Docket Clerk) |
| (Date) | (Region) | (Commissioner) | |

Copies:  Inmate    Institution    Probation Officer   Commission  FOIA  ASM

EX. C

U.S. Department of Justice                    **Notice of Action**
United States Parole Commission
Chevy Chase, MD 20815

---

**Name**        Carcaise, Frank

**Register Number**        18058-004              **Institution**        FPC, Maxwell

---

In the case of the above-named parole action, was ordered:

Reopen and advance presumptive parole date of August 7, 1994.  Continue for a
presumptive parole February 7, 1994.

**REASONS**:

Retroactivity does not apply: Neither your recalculated severity rating (old
Category Eight; new Category Eight) nor your recalculated salient factor risk
category         is more favorable.

The above decision includes a 6 month credit for superior program achievement,
specifically:

---

Appeals Procedure:
_____  The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26.
_____  The above is an original jurisdiction decision, and is appealable to the Commission under 28 C.F.R. 2.27.
_____  THE ABOVE DECISION IS NOT APPEALABLE.
          December 30, 1992              ERO                                                jt

| (Date of Notice) | (Region) | (National Commissioners) | (Docket Clerk) |

( ) Inmate    ( ) Institution    ( ) Admin Systems Manager    ( ) U S Probation Officer    ( ) Commission    ( ) FOIA

EV.02.



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

_5550 Friendship Boulevard_
_Chevy Chase, Maryland 20815_

January 22, 1996

Mr. Cecil C. McCall
1813 Baldwin Farms Drive
P.O. Box 71655
Marietta, GA  30007

                          **Re:  Chippas, Louis**
                          **Reg. No. 18565-004**

Dear Mr. McCall:

This is to inform you that an extension of time has been granted for the filing of the National Appeal for the above-named.

Please submit all information along with Parole Form I-22 signed by your client to our Chevy Chase, Maryland Office by March 5, 1996.  Your client may obtain this Form from the Case Manager at the Institution.

                          Sincerely,

                          Thomas C. Kowalski
                          Director
                          Case Operations

cc:    Louis Chippas
       Reg. No. 18565-004
       Miami FCI
       15801 SW 137th Avenue
       Miami, Fl  33177

nrt

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**NOTICE OF ACTION 'N APPEAL**

---

NAME:  Chippas, Louis Harry          REG. NO. 18565-004          INST: Miami FCI

---

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

<u>RESPONSE:</u>

The National Appeals Board has considered your claim on appeal and affirms the Commission's decision, with modified reasons.

The Board finds no merit in your claim that the Commission's decision outside your guidelines was unsupported by the reasons given. Category Eight guidelines have no upper limit, and the Commission's decision was therefore not outside your guidelines.  The Commission is not required to state "good cause" for Category Eight decisions, but only to set forth the pertinent case factors upon which it relied in setting a release date more than 48 months above the lower limit of the guidelines.  The Board has modified those case factors in your decision.

As you recognize in your appeal, individual case specifics distinguish different decisions for codefendants. The fact that a court has granted leniency to your codefendants is also not a sufficient reason for the Commission to grant unwarranted leniency in your case.  The Board finds no error in the Commission's decision in your case.

The Board declines to give you an earlier release date based on the time you spent serving a New Jersey State sentence for an unrelated marijuana offense.

All decisions by the National Appeals Board on appeal are final.



---

June 4, 1996                    **National Appeals Board**                    **Docket Clerk: DMJ**



Page 1 of 1

143

FORM TO BE USED BY FEDERAL PRISONERS FILING A PETITION
FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

RECEIVE
NOV 2 7 1996
...ISSION

LOUIS H. CHIPPAS

Reg. No. 18565-004

FCI-MIAMI   15801 S.W. 137 Ave.

Miami, FL 33177

(Name, prison number, and address or
place of confinement of Petitioner),

Petitioner,

vs.

UNITED STATES PAROLE COMMISSION

and WILLIAM J. PATRICK, Warden

FCI-Miami

(Name of warden or other official
having custody of Petitioner),

Respondent.

# 96-2602
## CIV-MORENO
MAGISTRATE JUDGE
SORRENTINO

Case Number:

(To be assigned by Clerk)

FILED BY
96 SEP -9 PM 5:05
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI
D.C.

## HABEAS APPLICANTS MUST COMPLETE THIS ENTIRE FORM

Cat/div   A-Dade
Case #   1:96 CV 2402
Judge   Moreno Mag CHS
Motn IIp   No   Fee pd$ No
Receipt #

Cat/div   A-Fort Lauderdale
Case #
Judge   Gonzalez Mag CHS
Motn IIp   N0   Fee pd$
Receipt #


Exh. 11

PLEASE COMPLETE THE FOLLOWING (check where applicable):

1.  This petition concerns:

     (a)    _____  a conviction

     (b)    _____  a sentence

     (c)    _____  jail or prison conditions

     (d)    _____  prison discipline

     (e)    \_X\_  parole

     (f)    _____  other (explain) _____

_____

2.  Provide the following information regarding the conviction(s) and sentence(s) for which you are presently incarcerated:

     (a)    Name(s) and location(s) of court: U.S. District for the Southern District of Florida, Ft. Lauderdale Division

     (b)    Case number(s): \_\_\_84-6033_____

     (c)    Nature of the charge(s) for which you were convicted:

1. Conspiracy to import cocaine

2. Conspiracy to distribute cocaine

3. Attempt to import cocaine

     (d)    The conviction followed your plea of not guilty, x not guilty, or \_\_\_ nolo contendere.

2

(e)  Did you appeal the conviction or sentence?

___ Yes, x No.  If yes, state the date, outcome, and number

assigned to the appeal:

_____

_____

_____

3.  Are you currently represented by counsel in this case or any

other court case?  ___ Yes, X No.

4.  In the spaces below, set forth every ground which supports

your claim that you are incarcerated unlawfully.  Briefly

summarize the specific facts in support of each ground raised,

and provide the information regarding exhaustion under your

summary of facts.  You may attach additional pages, if necessary.

Conclusions which are not supported by specific facts are

insufficient.  Do not cite any law in your statement of facts.

> CAUTION:  An application for writ of habeas corpus by a
> prisoner authorized to apply for relief by motion under
> 28 U.S.C. § 2255 will not be entertained by the court
> unless it appears that the remedy by § 2255 motion is
> inadequate.  Therefore, IF any of the grounds raised
> below challenge the validity of your conviction or
> sentence as imposed by the sentencing court, YOU MUST
> COMPLETE ITEM 5.  If they do not, you may skip item 5.

(a)  GROUND ONE:  THE PAROLE COMMISSION'S DECISION TO SET

MORE THAN 48 MONTHS ABOVE THE LOWER LIMIT OF THE 100 MONTHS OF

THE GUIDELINES APPLICABLE TO THE PETITIONER IS INCONSISTENT WITH

THE COMMISSION'S RULES AND REGULATIONS FOR LACK OF A RATIONAL

BASIS AND IS THEREBY ARBITRARY.

3

SUPPORTING FACTS: <u>See accompanying Supplement to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241</u>

EXHAUSTION: Have you presented ground two to the Bureau of Prisons, or in any other administrative or judicial proceeding? X Yes, ___ No. If yes, provide the number(s) assigned to the proceeding, the result(s), and the date(s) of the result(s) of that proceeding, including any appeals:

<u>See accompanying Supplement to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241</u>

(c) GROUND THREE: <u>SIGNIFICANTLY DIFFERENT DECISIONS BY THE PAROLE COMMISSION WITHOUT RELEVANT INDIVIDUAL CASE SPECIFICS RESULTED IN UNWARRANTED CODEFENDANT DISPARITY</u>

5

SUPPORTING FACTS:  See accompanying Supplement to Petition for Writ
of Habeas Corpus Pursuant to 28 U.S.C. §2241

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

EXHAUSTION:  Have you presented ground three to the Bureau of
Prisons, or in any other administrative or judicial proceeding?
__X__ Yes, ____ No.  If yes, provide the number(s) assigned to the
proceeding, the result(s), and the date(s) of the result(s) of
that proceeding, including any appeals:

See accompanying Supplement to Petitionf for Writ of Habeas Corpus
Pursuant to 28 U.S.C. §2241

_____

_____

_____

    (d)   GROUND FOUR:  ____none_____

_____

6

SUPPORTING FACTS:

EXHAUSTION: Have you presented ground four to the Bureau of Prisons, or in any other administrative or judicial proceeding? ___ Yes, ___ No. If yes, provide the number(s) assigned to the proceeding, the result(s), and the date(s) of the result(s) of that proceeding, including any appeals:

7

5.   If any of the grounds raised above challenge your conviction
or sentence imposed by the sentencing court:

   (a)   Explain in the space below why your remedy under 28
U.S.C. § 2255 is inadequate or ineffective to test the legality
of your detention:

Collateral attack of parole decision is appropriately addressed
pursuant to 28 U.S.C. §2241

   (b)   State whether you have ever filed a § 2255 motion, and
the result:

Not applicable

6.   WHEREFORE, based on the grounds raised above, Petitioner
prays that the court will grant the following relief:

Order that the Parole Commission set Petitioner's parole release
after serving 148 months or in the alternative credit Petitioner's
parole release date 37 months served in continious state custody.

8

# DECLARATION

I declare under penalty of perjury that I have read the above and
state that the information contained therein is true and correct
to the best of my knowledge.

Executed ____8-29-96____, at __FCI-Miami_____,
                (date)              (place)


                    by _____
                                  Petitioner


_____(not applicable)_____
Signature of Attorney (if applicable)


*Note: If you have not paid the $ 5.00 filing fee, you must also
submit an application to proceed in forma pauperis, which must
also be signed under penalty of perjury.*

9

FILED BY_____A_____D.C

96 SEP 9 PM 5:05 IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF FLORIDA
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAM
LOUIS H. CHIPPAS,
            Petitioner,

                                        96-2602

v.                          CIVIL ACTION NO ___

                                        CIV-MORENO

UNITED STATES PAROLE
COMMISSION,                             MAGISTRATE JUDGE
_____Respondent._____/                  SORRENTINO


                    SUPPLEMENT TO PETITION FOR
        WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. ss.2241

        The Petitioner, Louis H. Chippas, pro se, pursuant to

Title 28 U.S.C. ss.2241, the Due Process Clause of the Fifth

Amendment of the United States Constitution, and the

decisional authorities hereinafter more fully set forth and

otherwise applicable to the issues at bar, hereby supplements

the Form -- Petition for Writ of Habeas Corpus pursuant to

Title 28 U.S.C. ss. 2241, to challenge an arbitrary parole

release date set by the United States Parole Commission by

granting of writ of habeas corpus or in the alternative the

entry of an order by this Honorable Court that accomplishes

the same result.

                        FACTUAL BACKGROUND

        The Petitioner was serving sentence for the State of

New Jersey on April 19, 1984 when the state produced him in

the U.S. District Court for the Southern District of Florida

pursuant to writ of habeas corpus ad prosequendum.

        The federal indictment, sealed since April 14, 1984,

1

named the Petitioner and three others in three counts

charging: Count I, conspiracy to import cocaine, 21 U.S.C.

ss. 963; Count II, conspiracy to distribute cocaine, 21

U.S.C. ss. 846; and Count III, attempting/aiding and abetting

to import cocaine, 18 U.S.C. ss. 2.

Trial by jury began on April 29, 1985, as to Case No.

84-6033, resulting in guilty verdicts as to all counts on May

16, 1985.

The Court imposed sentence on August 6, 1985 as

follows: Count I, fifteen (15) years; Count II fifteen (15)

years, consecutive to Count I; and Count III, five (5) years

probationary term following an aggregate term of thirty (30)

years.

On April 4, 1985, the Petitioner was sentenced to

another aggregate term of twenty-five (25) years as to Case

No. 84-6034, an unrelated methaqualone case in the same

district. The second federal sentence involved five seperate

counts with maximum five year terms imposed consecutively and

then ordered consecutive to the first federal sentence for an

aggregate term of fifty-five (55) years.

The Petitioner moved the District Court on May 13,

1986, as to the cocaine case, on Motion For New Trial

Predicated Upon Newly Found Evidence pursuant to Rule 33,

Fed.R.Crim.P.. The process entailed three evidentiary

hearings resulting in a denial of the Motion on March 20,

1991. The Petitioner's appeal to the Court for the Eleventh

Circuit was affirmed December 20, 1992 in an unpublished

opinion. Thereafter, the United States Supreme Court denied certiorari.

The direct appeal to the U.S. Court for the Eleventh Circuit, as to the methaqualone case, was affirmed and reversed in pertinent part vacating Count III (one of the five counts with five year term). On remand, the U.S. District Court vacated the five year term, reducing the aggregate term to twenty (20) years, consistent with United States v. Khoury, 901 F.2d 948, 965 (11th Cir. 1990).

In neither case were drugs actually imported. In the cocaine case the aircraft crashed on a foreign airstrip on takeoff. As to the methaqualone case, that venture was aborted in Canada by the same pilot who subsequently crashed the aircraft attempting takeoff in the cocaine case.

On June 26, 1986, the Petitioner was returned to the State of New Jersey and subsequently paroled by the state to the federal authorities on November 18, 1986. The U.S. Bureau of Prisons thereafter credited the Petitioner time for the commencement of his federal sentence as of January 16, 1986.

The Petitioner received his initial parole hearing on November 7, 1995 at FCI-Miami, Florida. The parole examiner determined the parole guidelines to be 100+ months based on a Category Eight offense severity and a Salient Factor Score of Eight. It was examiner Chait's reccomendation to grant parole after service of 180 months. During Administrative Revue, secondary examiner Shoquist recommended 204 months where examiner Pinner and the commissioner concurred without

3

comment.

The National Appeals Board subsequently affirmed the
release date of 204 months and simultaneously modified the
original Notice of Action to coincide with the reasons stated
in the Notice of Action, dated May 31, 1996, exhausting
administrative remedy. This petition follows.

<center>**ARGUMENT**</center>

<center>**ISSUE I**</center>

<center>**THE PAROLE COMMISSION'S DECISION TO SET A RELEASE DATE
MORE THAN 48 MONTHS ABOVE THE LOWER LIMIT OF 100
MONTHS GUIDELINE APPLICABLE TO PETITIONER IS
INCONSISTENT WITH THE COMMISSION'S RULES AND
REGULATIONS FOR LACK OF A RATIONAL BASIS
AND IS THEREBY ARBITRARY**</center>

The United States Parole Commission's (hereafter
"Parole Commission") final decision in setting a release date
more than 48 months above the lower limit of the Petitioner's
parole guideline was predicated on specific case factors set
forth in an arbitrary manner contrary to the intent and
rationale of its own rules. Pursuant to 18 U.S.C. ss.
4203(a), the Parole Commission adopted guidelines designed to
promote "a more consistent exercise of discretion, and enable
fairer and more equitable decision-making... in granting
parole." See 28 C.F.R. ss. 2.20(a) and Baker v. McCall, 543
F. Supp. 498, 500 (S.D.N.Y. 1981) aff'd without opinion, 697
F.2d 287 (2nd Cir. 1982). The main ingredient in the
Petitioner's claim is that the Parole Commission's
indiscretion forged an arbitrary application of parole policy

<center>4</center>

by methodically ignoring the guidance set forth in its own rules and regulations.

As noted above, in 28 C.F.R. ss. 2.20 of the Parole Commission's Rules, (see exhibit "A" attatched) the Parole Commission has adopted Guidelines for Decision-Making. The Parole Commission is to first derive a number for the Offense Characteristic, that is the severity of the offense behavior, the number applied ranging from Category 1 least severe to Category 8 most severe. Secondly, the Parole Commission is to derive a number for the Offender Characteristic, that is parole prognosis for the offender known as a Salient Factor Score, the number applied ranging from 10-8 equating to Very Good parole prognosis, 7-6 Good, 5-4 Fair, and lastly 3-0 Poor parole prognosis. Once both numbers are derived and all the factors taking into consideration for each number are arrived at then the "Customary Total Time to be Served before Release" is determined in a consistent fashion.

When the Parole Commission determined Petitioner's Offense Characteristic as Category 8 it did so based on the cocaine case, Case No. 84-6033.( It should be noted that the methaqualone case, Case No. 84-6034 is an Offense Characteristic as Category 6 , coupled with Petitioner's Salient Factor Score of 8 indicating very good parole prognosis, the methaqualone case guideline is 40-52 months. In effect making Case No. 84-6034 a moot issue.) Petitioner's Category 8 Offense Characteristic is the most severe category. The Parole Commission's drafting of the Offense

Characteristics did not allow for distinctions based on inchoate crimes versus actual completed crimes. Therefore, Petitioner's Offense Characteristic is the same as if it were a completed crime rather than one that never came to fruition.

When the Parole Commission determined Petitioner's Offender Characteristics, known as the Salient Factor Score, the process incorporated many factors to determine Petitioner's parole prognosis. Petitioner's Salient Factor Score of 8, indicating the top range of a very good parole prognosis, took into consideration the following factors; Prior Convictions/Adjudications, Prior Commitment(s), Age at Current Offense, Recent Commitment Free Period, Escape Status, and Drug Dependence.

Petitioner's Salient Factor Score of Eight, in essence, absorbed his prior convictions and were then factored in with the Category Eight offense severity rating. Again, the Salient Factor Score of eight is the highest possible level (Very Good 8-10) while Category Eight is the severest offense rating. The Court should note that the Parole Commission just recently amended its rules in recognizing that the older applicants are less likely to recidivate. As a result, Item G was added as a factor and guidance for computing the Salient Factor Score pursuant to the <u>United States Parole Commission Rules & Procedures Manual</u> published subsequent to January 1, 1995. The Petitioner's present age is 64 (DOB 3-9-32). The intended purpose of the

6

rule change was to guide in assessing 'parole risk' based on constructive changes in policy from past practice. In that light, it is reasonable to conclude that the Petitioner should benefit from such an ameliorative factor and should not be treated as a 'poorer risk' than indicated by his Salient Factor Score save for reasonable grounds of 'poorer risk' in certain extreme cases as demonstrated in the Parole Commission's own rules. Subsection 2.20-06(B) states:

> "Better/Poorer Parole Risk. This judgment concerns whether a parole applicant poses a significatly lower or higher likelihood of any new criminal conduct after release than indicated by the Salient Factor Score. See 2.20-05(B)(4):(C)(7). In such case, a parole applicant may be given a decision below or above the guidelines (as if the parole applicant had a higher or lower Salient Factor Score. Note that a decision above the upper limit of the 'poor risk' category may be warranted on the grounds of 'poorer risk' in certain extreme cases, e.g., where the prisoner has a substantially worse prior record than the typical case with a score of zero. But also note that the majority of prisoners with a Salient Factor Score of Zero have 8-12 prior convictions and 6-9 prior commitments. Prior negative parole histories are also frequent. A decision above the upper limit of the 'poor riskcategory' on the basis of 'poorer risk' should be considered only where such case can logically be distinguished from the typical case with a score of zero.
>
>                    (emphasis supplied.)

The Parole Commission's initial examiner determined the Petitioner's guidelines to be 100+ months based on a category eight offense and a Salient Factor Score of Eight. The Parole Examiner recommended to grant parole after service

of 180 months. During administrative review, however,
Secondary Examiner Shoquist recommended 204 months that was
concurred by Examiner Pinner and the Commissioner without
comment. The reasons cited in the Notice of Action (NOA) to
justify the aggravation for exceeding a release date more
than 48 months above the lower limit of the guidelines, in
the instant case more than 148 months, maintained that
Petitioner was a more serious parole risk than indicated by
his Salient Factor Score and the case was further aggravated
by "two other convictions for narcotic trafficking related
offenses in 1972 and 1978. You also have been acquitted of
other narcotic charges...." (Initial Notice of Action,
exhibit "B"). The second decision to release after 204
months, was appealed to the National Appeals Board and
subsequently upheld on modified reasoning. In its Notice of
Action on Appeal, the Parole Commission stated that ;
"Category Eight Guidelines have no upper limit, and subject's
claim that the Commission's decision is 'outside' his
guidelines therefore has no merit. I recommend that the
pertinent case factors in the decision be modified by the
deletion of 'you also have been acquitted of other narcotic
charges' and the insertion of 'while on federal special
parole supervision in 1975 from one of those convictions, you
left the USA without permission to leave your district of
supervision and were arrested in Columbia while in possession
of 49 kilograms of hashish!" (Notice of Action on Appeal,
exhibit "C")

8

The Parole Commission's re-editing for modification of the above stated case factors patently denied the Petitioner due process by not affording him the opportunity to dispute pertinent information, such as, no charges were filed on the above modified alleged information and the fact the parole violation was dismissed. Under 28 C.F.R. ss. 2.19(c) The Commission may take into account substatntial information ... for aggravating..., **provided the prisoner is apprised of the information and afforded the opportunity to respond.** (emphasis added to due process language.) The Parole Commission's capricious undertaking to alter the initial reasons stated in Notice of Action from the special case factors relied upon during the Petitioner's parole hearing is in keeping with its indiscriminate reasoning to set a whimsical parole release date of 204 months.

It is irrefutable that the Parole Commission ignored its own procedure manual that mandates prehearing disclosure upon request which the Petitioner timely submitted within thirty days prior to his hearing. The Parole Commission's use of unadjudicated offenses is not the legal issue here. However, its emergence further demonstrates the Parole Commission's failure to "follow its own regulations, which have the force of law." See Marshall v. Lansing, 839 F. 2d 933 (3rd Cir. 1988).

Assuming arguendo that the Parole Commission could legally rely on previously undisclosed case factors as here, the reasons stated for the aggravation beyond 148 months does

9

not meet the severity requirement contemplated in the Rules &
Procedures Manual. The Petitioner's Salient Factor Score of
Eight was treated as if it were a Salient Factor Score of
Zero. To have increased the guidelines as if the Petitioner's
Salient Factor Score were bumped into the next category as a
six or seven is one thing, but to basically ignore the
guidelines altogether and arrive at an entirely arbitrary and
capricious term of 204 months as an appropiate period of time
is unjustified and incongruous with the Parole Commission's
rules and procedures.

The guidance for determining a prisoner to be a 'more
serious risk' than indicated by the guidelines is discussed
at ss. 2.20-06(A) in the Parole Commissions Rules &
Procedures Manual and examples of such offenders are given at
ss. 2.20-05(B)(5-7). These examples of the more serious
offender include:

----- You are a more serious risk because you have a
history of repetitive assaultive behavior...
----- You are a more serious risk because of your
history of repetitive sophisticated criminal behavior - three
out of five prior convictions involve sophisticated fraud
similar to your current offense.
----- You are a more serious risk because of your
extensive and serious record (e.g., you have eight previous
convictions for serious offenses.)

Without intending to minimize the seriousness of the
Petitioner's prior record, it does not approach the degree of
severity contemplated by the Parole Commission's examples set
forth in its rules and regulations. The Petitioner has no
history of assaultive behavior and does not have five or
eight previous convictions as examplified in ss.

10

2.20-05(B)(5-7). Factually, the Petitioner is not a more
serious parole risk than accounted for in the guidelines of
100+ months (i.e., more than 48 months from the base of the
guidelines). The Parole Commission then, in this case, chose
to ignore its guidelines and based its aggravation solely on
the subjective opinion of an examiner who "thinks the subject
should serve 17 years."

As alleged by the Petitioner in his appeal to the U.S.
Parole Comission, if the commission were to ignore the point
for Item G, his Salient Factor Score would be seven. The
guidelines would then be 120+ or 168 months before arriving
at the 'top.' Such a decision, despite the fact it would be
arbitrary, would at least contain some rational basis as
opposed to the unsupported and unilateral decision of "I
think that the subject should serve 17 years."

In deciding Briggs v. United States Parole Comm., 736
F.2d 446 at 450, (8th Cir. 1984), the Eighth Circuit held
that "once the Commission develops guidelines which it
determines will appropiately measure parole risk, it should
either follow the guidelines or amend them." (Citing Myrick
v. Gunnell, 563 F.Supp. 51, 54, (D. Conn. 1983); Allen v.
Hadden, 536 F. Supp. 586, 596 (D. Colo. 1982); Baker v.
McCall, supra, and Brach v. Nelson, 472 F.Supp. 569, 574 (D.
Conn. 1979). "The reasons for deviating from the guidelines
must be beyond and apart from the factors the Commission uses
in applying them." Id., 736 F.2d 450.

Though it is settled law that the determination of a

parole date is well within the discretion of the Parole

Board, such discretion is not totally unbridled. Where

Petitioner has his parole date set arbitrarily and on changes

done at the appeals level without fair notice to him and

contrary to the very guidelines that the Commission is bound

to abide by, then a Court would be remiss if it did not, in

the proper case, exercise its plenary powers and grant habeas

relief. Petitioner submits that this is a proper case, and

the appropiate remedy is for this Honorable Court to grant

its writ.

### ISSUE II

#### THE PAROLE COMMISSION'S DENIAL OF CREDIT FOR TIME SERVED BY PETITIONER IN UNRELATED STATE CASE PRIOR TO FEDERAL SENTENCE IS CONTRARY TO THE DICTATES OF THE PAROLE GUIDELINES PURSUANT TO SECTION 2.20-05(C)(10) AND THEREBY AND ABUSE OF DISCRETION.

The Petitioner has been in continuous custody since

December 6, 1982, for a period of one hundred and sixty-four

(164) months as of this habeas. The period of time includes

thirty-seven (37) months in state custody until the

commencement of the federal sentence, computed as 1-16-86.

During the Petitioner's initial hearing on November 7,

1995, the pre-reviewer noted that:

> "It appears subject has been in
> continuous custody since 12-6-82 and this
> should be considered at the hearing."
> (pre-hearing summary, page 2, emphasis
> supplied.)

The pre-examiner was appropiately considering the

application of Section 2.20-05(C)(10), which states ---
"SUBSTAINTIAL PERIOD IN CUSTODY ON OTHER SENTENCE(S) --- The
prisoner has served a substantial continuous period of time
(...months) in federal or state custody as a result of other
charges." This is a pertinent mitigating factor under the
parole guidelines that the Parole Commission arbitrarily
chose to disregard.

In the case at bar, there is a noted absence of an
appropiate reason or explanation by the Parole Commission for
its action in refusing to follow the guidance set out by
example in the parole guidelines manual. The Notice of Action
on Appeal merely states, "The Board declines to give you an
earlier release date based on the time you spent serving a
New Jersey State sentence for an unrelated offense." The
Parole Commission presumably adopted the recommendation,
reflected in the notes of its action on appeal, of the
secondary parole examiner who stated "given subject's record,
I recommend not giving him credit for the approximately 37
months he spent in state custody on the unrelated case."

This is a warranted mitigating factor set forth in the
parole guidelines which the Parole Commission arbitrarily
chose to disregard. The Petitioner, most respectfully,
contends that the Parole Commission is not totally at liberty
to disregard its own rules. Controlling case law holds that:

> "An inmate may prevail in a suit seeking
> reconsideration of parole, or an attack on
> the parole board's manner of decision
> making only if the board's action was
> 'flagrant, unwarranted and unauthorized.'"

13

See Briggs v. U.S. Parole Commission, 736
F.2d 466, 450 (8th Cir. 1984), citing
Kelsey v. State of Minnesota, 565 F.2d
503, 506 (8th Cir. 1977).

Under the facts in the instant case, the Parole
Commission failed to substantially comply with its own rules
and regulations in reaching a decision to deny the Petitioner
credit of 37 months, a substantial period of time which he
served continuously in an unrelated case prior to his federal
sentence, despite the pre-examiner's recommendation. Such an
arbitrary manner is facially impermissible double counting
where the Parole Commission relies on the Petitioner's record
to deny him the credit of 37 months under section
2.20-05(C)(10) for the same reason used initially to set his
parole release date 56 months above his maximum guideline of
148 months. In deciding Baker v.McCall, 543 F.Supp. 498
(S.D.N.Y. 1981) Aff'd mem. 697 F.2d 287, (2nd Cir. 1982), the
Second Circuit Court of Appeals held that:

> ".....it is irrational --- and therefore
> a violation of due process -- for the
> Commission to confine a prisoner beyond
> the applicable guideline for the same
> reasons used to select the prisoner's
> guideline in the first place."

Similarly, the Parole Commission's irrational
conclusion to rely on the Petitioner's record twice to
resolve two seperate and distinctively different parole
issues in setting his release date in excess of 148 months is
flagrant, unwarranted and unauthorized under the parole rules
and precedented case law. See Briggs v. U.S. Parole

14

Commission, supra.

Analogously, the Parole Commission here relied on the
Petitioner's record to (1) set his offense severity category
at Eight, (2) then applied it to factoring his Salient Factor
Score, (3) applied it again to exceed the guidelines, and
then (4) once more applied it to deny a crucial mitigating
consideration pursuant to Section 2.20-05(C)(10) to justify
an irrational result. Such a flagrant abuse of discretion
constitutes not only impermissible double or triple counting,
but outright fourfold usage of Petitioner's record to
exacerbate his parole release date. As stated in the above
mentioned case law, the Parole Commission's fourfold usage of
Petitioner's record as the reason to exceed the guideline of
148 months is clearly a due process violation rising to a
constitutional level, and it should not be permitted under
the supervisory powers of this Honorable Court.

### ISSUE III

#### SIGNIFICANTLY DIFFERENT DECISIONS BY THE
PAROLE COMMISSION WITHOUT RELEVANT
INDIVIDUAL CASE SPECIFICS RESULTED
IN UNWARRANTED CODEFENDANT DISPARITY

Pursuant to Section 2.20-09 of the Parole Guidelines,
"Unwarranted codefendant disparity refers to different parole
decisions for similarly situated offenders where no
legitimate reasons for the difference in decisions exist."
Contrary to such guidance, however, the Parole Commission
rejected such compliance for a warranted situation at the

case at bar based on an improvisation of a rather novel
concept that a "Codefendant disparity is not a reason for
giving subject a more lenient decision than is warranted, and
the decision here appears warranted." See Notice of Action on
Appeal, notes.

On appeal to the National Appeals Board, dated
February 27, 1996, the Petitioner delineated the Parole
Commission's handling of the codefendants, as follows:

1. Joseph Vershish, reg.#18515-004 - There is no
dispute that co-defendant Vershish was the number one,
primary mover of the conspiracy to import methaqualone
powder. The plan originated with Vershish and he directed
its every move. The government says Vershish "was the manager
and organizer in the conspiracy." Like Petitioner Chippas,
co-defendant Vershish involved himself in a "large-scale
cocaine conspiracy" once the methaqualone case was aborted.
Vershish's case was rated Category Seven and he was released
on parole after 62 months (See Ex. A 1-3, Vershish's NOA's).
It would appear that while Mr. Vershish's involvement was far
more extensive in the methaqualone case than was Mr.
Chippas', the cocaine conspiracy in which Mr. Chippas was
involved was more extensive than the one involving Mr.
Vershish. However, the vast difference between 62 months for
Mr. Vershish and 204 months for Mr. Chippas is inexplicable
and unwarranted.

2. Raul Wagner - In the cocaine conspiracy,
co-defendant Raul Wagner was the originator of the scheme. He

16

apparently recruited Petitioner Chippas and Frank Carcaise to assist with the attempted transportation of the cocaine. Raul Wagner's offense was rated category Eight, but for unknown reasons he was released on parole "after service of 58 months" (see letter from Michael Stover, dated January 4, 1996, confirming this release, marked Exhibit B).

   3. Frank Carcaise, reg. #18058-004 - Co-defendant was considered equal in culpability in every respect to Mr. Chippas in the cocaine case. Frank Carcaise and Mr. Chippas were to obtain the aircraft. They were to arrange for the pilot, etc. The Commission initially granted co-defendant Carcaise parole after 127 months. That was subsequently advanced to 121 months (see Carcaise's NOA's marked Ex. C 1-2).

   There are almost always individual case specifics to distinguish the different parole decisions for co-defendants. However, there are no case specifics to warrant so great a difference between 62 months (Vershish), 58 months (Wagner), 121 months (Carcaise), and 204 months for Mr. Chippas. Interestingly, the secondary examiner noted by hand that the "other most culpable co-defendant had a 35 year sentence reduced to 9 and was paroled 9/90" (pg.3, hearing summary). Presumably, Vershish cooperated or assisted in some matter to get a thirty-five year sentence cut to nine, but he was also rewarded with a parole at 62 months!

   The Petitioner is cognizant of Section 2.20-09 in that it also states "it is to be remembered that different

decisions for co-defendants are not necessarily inappropiate." The distinction here is in the obviously disparitive parole release dates set for co-defendants (1) Vershish - 62 months, (2) Wagner - 58 months, and (3) Carcaise - 121 months, respectively. The substantial difference mirrors the Parole Commission's utter disregard of its own guidance provided under Section 2.20-09 examples 1 through 7.

Presumably, in arriving at the parole dates for the co-defendants Vershish, Wagner, and Carcaise, the Parole Commission took into consideration the fact that the object of the conspiracy never materialized. There were no actual underlying activities to rely upon as a measure to distinguish case specifics pertinent to individual co-conspirators. But in looking at the disparity of the parole dates, whatever consideration might have been appropiately applicable, when it came to Petitioner Chippas, the Parole Commission elected to unjustifiably and arbitrarily disregard.

## CONCLUSION

Based on the foregoing, the Petitioner moves this Honorable Court to grant the instant writ of habeas corpus.

Respectfully submitted,

*Louis H. Chippas*

Louis H. Chippas, pro se
Reg. No. 18565-004
FCI-Miami
15801 S.W. 137 Ave.
Miami, FL 33177

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Supplement to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. ss. 2241 was mailed, postage prepaid, to the U.S. Attorney, U.S. Courthouse, 299 E. Broward Blvd., Ft. Lauderdale, FL 33301, on this the 28 day of _August_, 1996.

*Louis H. Chippas*

Louis H. Chippas

19

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Corrected Notice of Action**

---

Name: Chippas, Louis

Register Number: 18565-004                    Institution: Miami FCI

---

In the case of the above-named, the following parole action was ordered:

Reopen for a special reconsideration hearing on the next available docket.


THE ABOVE DECISION IS NOT APPEALABLE.


**REASONS**:

This decision gives you the opportunity to submit further arguments to the Commission concerning the reasons for a decision more than 48 months beyond the minimum of your parole guideline range. The Commission will be re-examining the basis for its previous conclusion that you are a more serious parole risk than shown by your salient factor score.

In reviewing the case of codefendant Joseph Vershish, the Commission discovered new and significant adverse information about you that might result in the loss of your present presumptive parole date. This information may be summarized as allegations that you obtained computerized law enforcement information from a U.S. Customs agent, that you intimidated witnesses in federal prosecutions, and that you directed the co-conspirators in the methaqualone offense. (These documents are currently being reviewed for disclosure to you under 28 C.F.R. §2.55). Therefore, your case is also reopened under 28 C.F.R. §2.28(f) to consider this new and significant adverse information. The Commission is seeking further information on the above allegations and, if more information is received, it will be disclosed to you in accordance with the regulation at 28 C.F.R. §2.55


THIS CORRECTS NOTICE OF ACTION DATED DECEMBER 11, 1996.

---

Date: December 12, 1996                              Clerk: DMJ

Page 1 of 1                                          Chippas.185

## SIH/REVIEW HEARING SUMMARY

| | | |
|---|---|---|
| **Hearing Type:** . . . SIH | **2/3 or MR Date:** . . . . . | 1/15/2016 |
| **Name:** . . . . . . . . . Chippas, Louis | **Projected MR Date:** . . | 1/15/2003 |
| **Reg No:** . . . . . . . 18565-004 | **Full Term Date:** . . . . . | 1/15/2036 |
| **Hearing Date:** . . . 4/3/97 | **Months in Custody:** . . | 135 |
| **Institution:** . . . . . . FCI Miami | **As Of:** . . | 4/15/97 |
| **Examiner:** . . . . . . Beale, Dorothy A. | | |
| **Recommended Release** 1/15/2000 | | |

---

### I.    Previous Commission Action:

See prehearing assessment dated 2/16/97.

### II.    Codefendants:

Joseph Vershish who is a codefendant in another case has been paroled. However, this examiner does not have the register number or date of release. All other codefendants in the Methaqualone case are also to have been released. Raul Wegal, who is involved with the subject on another case, was released after the service of 58 months.

Frank Carcaise, register number 18058-004, who is alleged to have been as equal in culpability as the subject, was released after the service of 121 months. A review of his sentence computation indicates that he was paroled on 2/7/94.

### III.    Institutional Adjustment And Release Plans:

See prehearing assessment dated 2/16/97.

At today's hearing, subject confirmed that the information relative to this section in the prehearing assessment dated 2/16/97. At today's hearing, the subject stated that upon release, he plans to reside with extended family at 1330 Northwest 13th Street, Boca Rotan, Florida and he will work part-time at the family business.

### IV.    Fines, Restitution, Court Assessment:

Yes.

CHIPPAS.185                                                                 Page 1 of 6



## V.    Representative:

Mr. Joe Daniel Harrington, Attorney at Law
One South Orange Avenue, Suite 304
Orlando, Florida 32801
(407) 896-0536

The primary focus of Attorney Harrington's argument was the credibility of codefendant Vershish; codefendant disparity; time served in custody; and whether or not subject is a poor risk than his salient factor score of 8.

Attorney Harrington stated that codefendant Vershish is not a credible witness and this individual not only used adverse information, he cooperated with law enforcement personnel for his own benefit.  Attorney Harrington stated that he has evidence that this statement is true and he submitted to hand written, undated documents which was signed Joe as well as other hand written statements which gives specific details of cooperation that individual was involved in.  He further stated that the jury did not find the codefendant Vershish to be very credible when he testified in case no. 87-563CR, wherein codefendant Vershish had alleged that a U.S. Customs employee had leaked computerized law enforcement information to Chippas. However, he stated that both were eventually acquitted in federal court following a trial, primarily because codefendant Vershish was not very credible.  Additionally, he stated that another fact that shows that codefendant Vershish is not credible is that due to his cooperation, he received an early release.  However, upon his return to supervision, he absconded and his whereabouts are unknown and an outstanding warrant is still lodged for his arrest.

Attorney Harrington stated that he believes that there is an issue of codefendant disparity, specifically, in relation to codefendant Frank Carcaise (reg. no. 18058-004).  He stated that this codefendant was equal in culpability as the subject, however, he was released after the service of 121 months.  He also stated that there is codefendant disparity in regards to all codefendants in the Methaqualone case, specifically, Raul Wegal who was released after the service of 58 months.  However, he agreed with the examiner that this is not a valid issue since subject's involvement in the extremely large cocaine case is why he is being held so long in custody.

Attorney Harrington stated that the subject has been in continuous custody since his conviction in federal court on 4/19/84, however, the Commission is crediting him with time served commencing on 1/16/86.  However, he stated that subsection 2.2.05C (10) indicates that an incarcerated person can receive unrelated credit on a non-related crime.  However, he can see that this is an independent discretion.  He stated that if, in fact subject receives credit starting on 4/19/97 that would add approximately an additional 37 months towards continuous custody.

Attorney Harrington said that the subject's salient factor score of 8 indicates that he is a very

CHIPPAS.185                                                      Page 2 of 6

good risk for parole. However, at subject's initial hearing the examiner indicated that he was a poor risk and recommended a release date accordingly. However, an above decision for poor risk should be applied in extreme cases, i.e., worse prior record with a salient factor score of 0. He stated that the subject is 65 years of age and as research has shown chances of recidivism for persons in his age category usually decreases.

In closing, attorney Harrington stated that the subject has served a total of 135 months in federal custody on the cocaine conviction which is 14 months above codefendant Frank Carcaise who he stated was as culpable as the subject. Therefore, he believes that the subject should have not received a more stringent release date than he. Therefore, he believes that accountability has been met and that the subject should receive a release date consistent with his involvement.

## VI.  Risk:

The examiner believes that the subject is a poor risk than indicated by his salient factor score of 8 and that his criminal record which commenced at age 40 wherein he became committed to importing and distributing illegal drugs as a career and means of financially sustaining himself through these illegal activities. The subject has convictions of drug offenses in 1972 and 1978 which involved importation of large amounts of marijuana. Additionally, after he jumped bail following his sentencing in the state of New Jersey for his last marijuana offense, he engaged in the instant offenses which involved the import/distribution of illegal methaqualone and cocaine.

## VII.  Evaluation:

Retroactivity does not apply.

Guidelines of 100+ months which was established at his initial hearing were reviewed, but not changed.

This case was ordered reopen to give subject an opportunity to submit further arguments to the Commission concerning the reasons for a decision more than 48 months beyond the minimum of his parole guideline range. This hearing addressed/reexamined the basis for its previous conclusion that he is a more serious risk than shown by his salient factor score of 8.

There were several issues at today's hearing. The first issue addressed was the credibility of codefendant Vershish. Subject's attorney, Mr. Harrington submitted two handwritten documents which included other copies of handwritten notes regarding specific cooperation that codefendant Vershish had been involved in. Mr. Harrington stated that he believes that this package of material will show that codefendant Vershish orchestrated an elaborate scheme to fabricate false information about the subject and he cooperated to obtain an early release which in fact did occur. While this examiner can see that there made be a credibility issue in regards to codefendant Vershish, her review of the documentation which was submitted by

CHIPPAS.185                                                                Page 3 of 6

Attorney Harrington failed to show that the subject submitted fraudulent information to gain an earlier release or that these documents lead to the acquittal of subject and the U.S. Custom agent. In fact, information in letter dated 8/15/89 from U.S. Assistant Attorney Lee Marsey indicates otherwise. In that letter, he describes codefendant Vershish as having given excellent testimony and "he was found to be a very credible witness in regards to the conviction of subject and others of narcotics trafficking." The U.S. Attorney's letter further indicates that the case wherein subject and the U.S. Customs Agent was acquitted had no association with codefendant Vershish's testimony or his credibility.

The second issue involved codefendant disparity between subject and codefendant Frank Carcaise (reg. no. 18058-004) who attorney Harrington described as being equal in culpability as the subject. He stated that although they were equal in culpability, codefendant Carcaise was released after the service of 120 months. This examiner advised subject and his attorney that she could not adequately addressed this issue without all of the facts at hand. However, she would indicate for the record that issue was raised and upon her return to the office, if time permitted, she would review this codefendant's case. Upon return to the office, this examiner briefly reviewed information on SENTRY due to time limitation and she found out that codefendant Carcaise was released on 2/7/94 and that he had been serving a 15-year sentence. While she can no addressed other factors as to why he was released earlier, she has concluded that it appears that he was only serving a 15 year wherein the subject was serving a more substantial sentence. Case and point, the subject was convicted of a New Jersey state sentence and served part of it before he began serving his federal sentence.

Subject's attorney, Mr. Harrington agrees that the other issues of codefendant disparity in regards to the New Jersey conviction is not relevant because it is the cocaine portion of his sentence which is impacting on the amount of time that he must serve.

The third issue at this hearing involved subject attorney's request that subject receive credit for time served beginning on 12/6/82. He stated that if the subject is not given credit to that date, he will request that the 4/19/84, wherein he appeared in federal court, be considered as part of the time he served.

This examiner disagrees with the subject's attorney's request that he be given credit from the date of 4/19/84. The examiner believes that the appropriate time that he should receive credit should be the date of conviction of 1/16/86 wherein he was convicted of methaqualone and cocaine trafficking which is the offense for which this hearing is relevant.

The fourth issue at this hearing dealt with whether subject should be viewed as a more serious risk than indicated by his salient factor score of 8. Subject's attorney, Mr. Harrington, stated that subject does not meet the criteria because he has a salient factor score of 8 which indicates he is a very good risk for parole and that there is no evidence of violence in his past other than the alleged allegations by codefendant Vershish which are unfounded as evident by the fact that subject was never convicted of such behavior. Additionally, subject's attorney stated that in cases wherein this criteria are used, it is usually applied in extreme cases wherein an

CHIPPAS.185                                                                Page 4 of 6

individual has a worse prior record and a salient factor score of 0. He further stated that the mitigated factor which shows that the subject is not a more serious risk is his age of 65 which indicates the chances of recidivism usually decreases as one gets older. He also stated another mitigating factor is that the subject has a good solid family to return to and he will be residing with extended family and will be working part-time at a family business.

This examiner agrees that the subject is not a more serious risk than indicted by his SFS. However, she believes that he is a poorer risk than his salient factor score of 8 in that his criminal record since he was 40 years old indicates that he was committed to importing and distributing illegal drugs as a career and means of financially sustaining himself through this type of behavior. In support of this, he has received convictions in 1972 and 1978 for importing large amounts of marijuana. Additionally, after he jumped bail following his sentencing in New Jersey for a marijuana offense, he engaged in the instant offenses, which involved two different conspiracies to import and distribute illegal drugs, i.e., methaqualone and cocaine.

The examiner did not find that there was adverse information, specifically, whether there is evidence that the subject threatened the life of codefendant Vershish or that he was a defendant that was feared by his criminal associates. The subject and his attorney was advised of this issue and allowed to give an appropriate response which is incorporated in the area which addresses the credibility of codefendant Vershish. In essence, subject and his attorney's defense was that the subject was never convicted of this behavior and that codefendant Vershish is not a credible witness. Thus, this examiner is not recommending that there is any reason to recommend a longer decision than the previous of 204 months.

The examiner, however, is recommending that the subject's age of 65 be considered in recommending a release. While the examiner believes that he is a poorer risk than indicated by his salient factor score, she believes that the likelihood of a recidivism lessens with age. Therefore, she believes that he should receive some reduction for his age. The examiner recommends a release after the service of 168 months or a 36 month reduction for his age. At the time he will be released, he will be 67 1/2 years of age and this examiner believes that the chances of him reinvolving himself in new criminal conduct is unlikely. The examiner does not believe that this will depreciate the seriousness of his offenses because he will have been in continuous custody for the drug convictions for a total of 205 months and he will be 67 years of age.

When the examiner advised subject and his attorney of this recommendation, subject's attorney, Mr. Harrington, replied that he believes that this recommended release is still to harsh, although the examiner quoted the reasons as indicated in the risk area, for this recommendation. He stated that he wished to advise the Commission that he would be willing to withdraw his Habeas Corpus if the Commission is willing to release the subject after the service of 148 months. Subject was advised that this is the examiner's final recommendation as she initially was going to recommend a 204 months release date, however, in consideration of the subject's age coupled with the fact that research shows that as one gets older, chances of recidivism decreases, she believes that a 168 month is appropriate and is reasonable in light of

CHIPPAS.185                                                         Page 5 of 6



the amount of drugs the subject was involved in. Subject and his attorney was also advised that the Commission will abide by whatever decisions rendered by the Court.

**VIII. Recommendation:**

Reopen and advance presumptive parole of 1/15/2003 for more favorable information and continue to presumptive parole (1/15/2000).

**IX.    Reasons:**


CVG
April 10, 1997
Word Count 227

**Addendum by Acting EHE Pinner:**

I disagree with an advancement of 3 years for the reasons provided by the primary examiner. As the primary examiner noted in her summary, S. did not begin his involvement in criminal activity involving importation of drugs until the age of 40, and continued his involvement until arrested on the instant federal offenses at the age of 54. To recommend an advancement of 3 years from the release date imposed at the initial hearing in November, 1995 on a belief that S's propensity for criminal activity will lessen as he ages is not supported by the case-specific facts noted above.

I recommend that the S. be paroled after the service of 204 months, January 15, 2003. I believe that S. is a more serious risk than indicated by his salient of factor of 8 in that he has a history of repetitive sophisticated criminal behavior. He has received two convictions for drug offenses of an extremely large scale and one conviction for large scale importation activity. He was convicted in U.S. District Court, FLS, in 1972 for the importation of 859 pounds of marijuana from Jamaica. While under parole supervision for that conspiracy to import marijuana offense, S. absconded from supervision and traveled to Colombia, a country known for its illegal narcotics activity. This examiner believes it is reasonable to assume that the basis for the travel was illegal drug activity, as S. had not sought permission from his Probation Officer to travel for either business or personal reasons. Also, S. was arrested and subsequently convicted in New Jersey in 1978 for the offense of conspiracy to import marijuana.
S. and 6 others were arrested as they were unloading in excess of 10 tons of Colombian marijuana from an aircraft. Permitted to remain on bond after sentencing, a warrant was issued for his arrest on 07-01-81, after he unlawfully left the State. He was arrested in Miami, Fl on 12-06-82. While in fugitive status, S. became involved in one of the instant federal offenses. S. and his codefendants were involved in a conspiracy to import 3,000 pounds of methaqualone powder. He also was involved in a separate, unrelated drug offense during the

CHIPPAS.185                                                      Page 6 of 6

same time frame, which resulted in a second federal conviction. He and his codefendants were involved in a conspiracy to import 340 kilograms of cocaine from colombia, however, the plane crashed.

I believe that the above facts portray an individual whose elected to participate in separate and distinct large/extremely large scale drug importation schemes over a period of 12 years, which reflects a risk of his becoming involved in similar large/extremely large scale drug importation schemes when released in the future.

This examiner notes that the Commission had previously referenced the fact that S. had been acquitted of possession of 49 kilograms of hashish in Colombia in 1975. I believe that since the Commission has no other information regarding the circumstances surrounding the acquittal, that the fact that the acquittal was from a case originating from a drug offense can not be utilized in determining whether or not S. is a more serious risk.

I also concur with Examiner Beale's recommendation not to consider the information gleaned from S's codefendant Joseph Vershish (Docket #84-6034) regarding the allegation of S's involvement in a bribery scheme with a U.S. Customs Agent. I also concur with her recommendation that S. not be given credit for time served on an unrelated sentence towards the guidelines for the instant federal offenses.

CHIPPAS.185                                                        Page 7 of 6

**U.S. Department of Justice**
**U.S. Parole Commission**

# ORDER

**Name** _Charles Lewis_

**Register Number** _12 565 004_    **Institution** _FCI Miami FL_

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

_Reopen and advance Presumptive Parole 1/15/2003 for new favorable information and_
_Continue to a Presumptive Parole (1/15/2003)._

_JA Beck_

**Date** _4/3/97_

_CONTINUE to a PRESUMPTIVE PAROLE AFTER the SERVICE of 40y MONTHS, JANUARY 15, 2003._

_T. W. Tisnan  5-8-97_
_[signature]  5/9/97_
_John R. Simpson  5/9/97_

**Date** _____

*(Date Notice sent)*    *(Region-specify)*

*Joe Daniel Harrington*
ATTORNEY AT LAW

LAW OFFICES OF
MARK E. NeJAME, P.A.

407-896-0536    1 SOUTH ORANGE AVE., SUITE 304
FAX 407-896-0540    ORLANDO, FLORIDA 32801

National Appeals Board _____ *(check)*

National Commissioners _____ *(check)*

Full Commission _____ *(check)*

PAROLE FORM H-6
APR. 83

Exh. 14

U.S. Department of Justice

Notice of Action

United States Parole Commission
550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Name: CHIPPAS, Louis Harry

Register Number: 18565-004                    Institution: Miami FCI

In the case of the above-named, the following parole action was ordered:

Continue to a Presumptive Parole after service of 204 months (January 15, 2003).

The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26.

**REASONS**:

Your offense behavior has been rated as Category Eight severity because it involved a conspiracy to import more than 18.75 kilograms of cocaine, purity unknown. Your salient factor score (SFS-95) is 8. You have been in federal confinement as a result of your behavior for a total of 135 months as of 4/15/97. Guidelines established by the Commission indicate a range of 100+ months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented, a decision more than 48 months above the minimum guidelines is warranted because you are a more serious risk than indicated by your salient factor score in that you have a history of repetitive, sophisticated, criminal behavior. You have received two (2) convictions for drug offenses of an extremely large scale and one (1) conviction for large scale importation activity. Your were convicted in 1972 (U.S. District Court, Southern District of Florida) for the importation of 859 pounds of marijuana from Jamaica. While under parole supervision for that offense, you absconded from supervision and traveled to Columbia, a country known for its illegal narcotics activity. It is reasonable to find that the basis for the travel was illegal drug activity. As you had not sought permission from your U.S. Probation Officer to travel for either business of personal reasons. In addition, you were arrested in 1978 and subsequently convicted in New Jersey for another drug conspiracy. You and six others were arrested while unloading in excess of 10 tons of Colombian marijuana from an aircraft. Permitted to remain on bond after sentencing in this case, you unlawfully left New Jersey and remained in fugitive status until December 6, 1982. While in fugitive status, you became involved in one of your two instant federal offenses, a conspiracy to import 3,000 pounds of methaqualone powder. Finally, you became involved in the second federal offense, a separate, unrelated drug conspiracy, an attempt to import 340 kilograms of cocaine from Columbia.

The facts noted above portray an individual who has elected to participate in at least four (4) distinct, large scale/extremely large scale drug importation schemes over a period of 12 years, which reflects a risk of your becoming involved in similar large scale/extremely large scale drug importation schemes when released in the future.

As required by law, you have also been scheduled for a statutory interim hearing during April 1999.

Date: May 12, 1997                                    Clerk: dlw



Page 1 of 2                                          CHIPPAS.185

**SALIENT FACTOR SCORE (SFS-95)**:  Your salient factor score items have been computed as shown below.  For an explanation of the salient factor score items, see the reverse side of this form.

**ITEM A[ 1 ]; B[ 1 ]; C[ 2 ]; D[ 1 ]; E[ 1 ]; F[ 1 ]; G[ 1 ]  Total[ 8 ]**

cc:        U.S. Probation Officer
           Southern District of Florida
           U.S. Courthouse
           300 N.E. 1 Avenue
           Room 315

           Miami, FL  33132-2126

---

**Date: May 12, 1997**                                    **Clerk: dlw**


**CHIPPAS.185**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-2602-Civ-MIDDLEBROOKS
MAGISTRATE JUDGE SORRENTINO

LOUIS H. CHIPPAS,                    :

        Petitioner,          :

v.                                   :

UNITED STATES PAROLE                 :    **SECOND SUPPLEMENTAL**
COMMISSION, et al.,                       **ORDER TO SHOW CAUSE**
                                     :

        Respondents.         :
_____:

## I. Introduction

On September 9, 1996, Louis H. Chippas filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 (DE# 1) and supporting memorandum (DE# 2). Therein, Chippas alleged that he was entitled to credit toward his federal sentence for time served in state prison, and alleged that in November 1995 and June 1996 proceedings the Parole Commission abused its discretion when it set his presumptive parole date at 204 months, notwithstanding the hearing officer's recommendation in November 1995 that Chippas receive a presumptive parole date after service of 180 months.

Since the filing of the original petition in 1996, this habeas corpus action has had a convoluted procedural history. The case has been fraught with delays, as discussed below in Section II, the most significant of which was the Commission's decision to reopen Chippas' case for a special reconsideration hearing after this habeas corpus action was filed. Chippas is no longer proceeding *pro se* in this action, and the government's decision to reopen Chippas' case and the result of the reconsideration hearing have spawned new claims in this §2241 habeas corpus proceeding.

Documentation in this case is incomplete, despite the entry of an Order in June of 1997 requiring that it be supplemented, and this habeas corpus action therefore cannot yet go forward.



The following discussion in Section II of this report regarding the procedural history of the case will: 1) reflect the reasons for delay, 2) clarify the current posture of the case, and 3) serve to place in context the need for further documentation, before the case can proceed.

## II. Procedural History of the Case

Petitioner Chippas did not pay the Clerk's filing fee or submit a motion to proceed *in forma pauperis* when he filed the petition in September of 1996. When the filing fee was paid in October of 1996, an Order was entered requiring the respondents to show cause why the petition should not be granted. The respondents requested and were granted an extension of time to respond to the original petition. Thereafter, between the filing of Chippas' pro se §2241 petition and memorandum in September 1996, and the filing of the respondents' Response to Order to Show Cause on December 13, 1996, a notice of action was issued by the Parole Commission to inform Chippas that his case was being reopened by the Parole Commission for a special reconsideration hearing relating to his presumptive parole date, "to be held on the next available docket." The notice of action was dated December 12, 1996. The reconsideration hearing, however, was not held until April 3, 1997, and Chippas was not notified of the results of the reconsideration hearing until May of 1997.

Chippas filed a pro se motion to expedite on May 21, 1997, and on June 13, 1997, a supplemental Order to Show Cause was entered, requiring the respondent to file a supplemental response and to provide the Court with supporting documentation relating to the 1997 reconsideration hearing and exhaustion of Chippas' available administrative remedies. On July 11, 1997, in response to the supplemental order to show cause, the "Government's Second Response to Movant's §2241 Petition" was filed, with no documentation whatsoever attached. (DE# 17).

2

After entry of the June 13, 1997 Supplemental Order to Show Cause, Chippas obtained assistance of counsel, whose August 18 Petition for Admittance *PRO HAC VICE* (DE# 19) was granted on August 20, 1997 (DE# 21).

Chippas, through counsel, filed a renewed motion to expedite (DE# 18) which supplemented Chippas' earlier pro se motion to expedite, and which together with the pro se motion to expedite serves as Chippas' reply to the government's first and second responses (DE#s 9 and 17).

### III. Discussion

The original petition alleges, *inter alia*, that the 1995-96 decision refusing to reduce Chippas' presumptive parole date from 204 months was an abuse of the Commission's discretion[1].

As noted, supra, the government's decision to reopen Chippas' parole proceedings, and the Commission action taken following the special reconsideration hearing which was held upon the reopening of Chippas' case, have given rise to new claims. Chippas' motion to expedite which he filed pro se (DE# 13), and his renewed motion to

---

[1]    The claims presented in Chippas' pro se supporting memorandum (DE# 2), are framed in terms of three grounds for relief, as follow, verbatim:

1.    The Parole Commission's decision to set a release date more than 48 months above the lower limit of 100 months guideline applicable to petitioner is inconsistent with the commission's rules and regulations for lack of a rational basis and is thereby arbitrary.

2.    The Parole Commission's denial of credit for time served by petitioner in unrelated state case prior to federal sentence is contrary to the dictates of the parole guidelines pursuant to section 2.20-05(c)(10) and thereby an abuse of discretion.

3.    Significantly different decisions by the Parole Commission without relevant individual case specifics resulted in unwarranted codefendant disparity.

3

expedite which he filed with assistance of counsel (DE# 18)
supplement the original petition with new grounds for relief which
the respondents have not addressed, despite the supplemental order
to show cause entered in June of 1997.

Chippas now, in addition to the original claims, also
challenges the 1997 proceedings.

Chippas argues that the failure to reduce his presumptive
parole date following the reconsideration hearing was an abuse of
discretion where: (a) aggravating factors presented by the
government, which were the basis for the Parole Commission
unilaterally reopening Chippas' proceedings, were dismissed as "not
credible" by the parole examiner at the April 3, 1997
reconsideration hearing; and (b) the examiner at the reconsidera-
tion hearing recommended that Chippas' presumptive parole date be
advanced to 168 months, based on a new mitigating factor (that
Chippas had turned 65 years of age in March of 1997), and indicated
that she would further recommend that the presumptive parole date
be advanced to 148 months, within the guidelines, if after a file
review of the file for Frank Carcaise, a co-defendant of Chippas,
it was determined that the two men were similarly situated.

In his renewed motion to expedite Chippas alleges, in part, as
follows, verbatim:

> As this Court is clearly aware, Petitioner
> labeled Respondent's motive for requesting the
> Reconsideration hearing in its First Response
> as an "obvious blatant attempt to derail due
> process and stonewall a remedy to which
> Petitioner is manifestly entitled."

(DE# 18, at p. 2).

Chippas, through counsel, alleges that the Commission abused
its discretion in 1995-96, that the Commission abused its

4

f

discretion when it reopened his case and then refused to reduce his presumptive parole date in 1997, and that the respondents' failure to provide documentation relating to the reconsideration hearing as directed by Court Order indicates that abuse.

A re-reading of the respondents' First Response, and of the petitioner's two motions to expedite reveals that the basis for the charge that the government is "stonewalling," and attempting to "derail due process," is the petitioner's apparent belief that: 1) the reopening of his case in the first instance in December of 1996 was an act in bad faith, designed to prevent or delay review of his federal habeas corpus claims, and 2) that the reasons given by the respondents for doing so were disingenuous since, notwithstanding the fact that Chippas was informed that he would be required to defend against "new and significant adverse information" which could result in rescission of his presumptive parole date [the same information which according to Chippas was "dismissed" as "not credible" by the hearing examiner on April 3, 1997] the government in it's response to the §2241 petition (DE# 9) also suggested that the reconsideration hearing could, on the other hand, result in prompt parole for Chippas.

The government's first response, in addition to stating the government's intent to reopen Chippas' case because there was adverse information which the Commission believed might warrant rescission of Chippas' presumptive parole date (DE# 9, at pp. 4 and 5), also stated that: "[t]he new hearing will give Chippas the opportunity to present his side of the story concerning the new adverse information..."(DE# 9, p. 4); "[t]his [reconsideration] hearing will allow the Commission to re-examine the reasoning employed for the continuance given to Chippas, after receiving any further arguments by the petitioner on his parole denial..." (DE# 9, at p. 5); "[a]t a minimum, the new hearing will allow the Commission to develop a better administrative record of the reasoning for its decision in this case, which will facilitate

5

judicial review..." (DE# 9, at p. 5); and "[a] new hearing may possibly result in a prompt parole for Chippas, which would probably moot the habeas corpus claim and obviate judicial review..." (DE# 9, at pp. 5-6).

From a review of the present record it appears unlikely that the government reopened Chippas' case because the reconsideration hearing might "possibly result in a prompt parole for Chippas."

It may very well be that the Commission did reopen Chippas' case in reaction to his filing this habeas corpus action. The government, without disclosing the possible existence of adverse information in its December 2, 1996 motion for extension of time, requested an extension of time until December 13, to respond to the petition. The government's first response (DE# 9) was filed on December 13, 1996, just one day after the December 12 Notice of Action was issued informing Chippas that his parole case was being reopened.

While the government stated in its response that the reconsideration hearing: 1) would allow the Commission to reconsider it's decision to set Chippas' presumptive parole date at 204 months, and 2) would "at a minimum" allow "development of the administrative record" and "facilitate judicial review," its failure to comply with the supplemental order to show cause issued in June of 1997 is inconsistent with those goals, and at this juncture, at least, appears to lend credence to petitioner Chippas' arguments.

Chippas has disclosed that the 1997 reconsideration hearing was recorded. This suggests that the earlier proceeding in 1995 may also have been recorded. It appears that judicial review of the administrative record which the government has developed in Chippas' case therefore need not be limited solely to written hearing summaries; and copies of transcripts of the November 1995 hearing before hearing examiner Chait, and of the April 1997

6

reconsideration hearing before hearing examiner Beale should be required, in addition to other documentation.

It is thereupon

ORDERED AND ADJUDGED as follows:

1.  On or before November 24, 1997, the respondents shall supplement their prior responses to the petition with a Second Supplemental Response consisting of the following documentation:

(a) a complete typed transcript of the November 1995 hearing in Chippas' case before hearing examiner Chait;

(b) copies of any and all additional documentation which may not previously have been provided to the Court by the respondent which relates to examiner Chait's recommendation for Chippas' release after 180 months, and the decisions by other examiners, the Commissioner, and the National Board to overrule examiner Chait's recommendation and set Chippas' presumptive parole date at 204 months. This shall include but not limited to all documentation from Chippas' file relating to his guidelines calculations, including information concerning his offense category and salient factor score;

(c) a complete typed transcript of the April 1997 reconsideration hearing before examiner Beale;

(d) copies of any and all documentation of the "new and significant adverse information" against Chippas, as relied upon by the government at the April 1997 reconsideration hearing before examiner Beale, which the government has stated was discovered upon examination of the file of Chippas' co-defendant Joseph Vershish;

7

(e) copies of any and all documentation memorializing or otherwise relating to examiner Beale's recommendation following the reconsideration hearing (as reported by the petitioner) that Chippas should be released after 168 months based on the new mitigating factor that he had reached 65 years of age;

(f) copies of any and all documentation, including documents from the file of Frank Carcaise, memorializing or otherwise relating to examiner Beale's statement at the reconsideration hearing (as reported by the petitioner) that she would consider recommending Chippas' release after 148 months if scrutiny of the file of Chippas' co-defendant Frank Carcaise indicated the existence of co-defendant disparity and that Chippas and Carcaise were similarly situated.

(g) copies of any and all other documentation memorializing or otherwise relating to the 1997 reconsideration hearing itself, Regional action following the hearing, and action by the National Appeals Board (if any), including but not limited to:

(i)     the Prehearing Assessment,

(ii)    the Hearing Summary,

(iii)   the Panel Recommendations, and all Addenda thereto,

(iv)    Regional Notices of Action,

(v)     any Appeals therefrom, including supporting documentation, exhibits, and/or memoranda related thereto,

8

**CLOSED**
**CIVIL**
**CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-2602-Civ-MIDDLEBROOKS
MAGISTRATE JUDGE SORRENTINO

LOUIS CHIPPAS                    :

     Petitioner,              :

v.                               :         <u>FINAL JUDGMENT</u>
                                          <u>HABEAS CORPUS</u>
UNITED STATE PAROLE
COMMISSION, et al,               :

     Respondents.             :
_____

FILED by H.N.    D.C.

AUG 2 0 1998

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

     For the reasons stated in the report of the Magistrate Judge, and upon independent review of the file, it is

     ORDERED AND ADJUDGED as follows:

     1.    This petition for writ of habeas corpus is denied.

     2.    All pending motions not otherwise ruled upon are dismissed, as moot.

     DONE AND ORDERED at Miami, Florida, this ___20th___ day of
___August___, 1998.

UNITED STATES DISTRICT JUDGE

cc:  Joe Daniel Harrington, Esq.

     Juan C. Elso, Esq.

     Jennifer Prior, AUSA

Exh. 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-2602-Civ-MIDDLEBROOKS
MAGISTRATE JUDGE SORRENTINO

LOUIS H. CHIPPAS,            :

        Petitioner,       :

v.                          :            REPORT OF
                                      MAGISTRATE JUDGE
UNITED STATES PAROLE
COMMISSION, et al.,         :

        Respondents.      :

———————————————————

    Louis Chippas, a federal prisoner confined at the local Federal Correctional Institution, filed this petition for writ of corpus pursuant to 28 U.S.C. §§2241-43 pro se in September, 1996, asserting that the respondent Parole Commission abused its discretion with respect to various decisions made in connection with his presumptive parole release date. The petitioner is now represented by counsel, Joe Daniel Harrington, Esquire. [DE 19, 21]

    For its consideration of this petition, the Court has a memorandum of fact and law with exhibits submitted by the petitioner, which is captioned as a "supplement" to the initial petition, the government's responses to an order and two supplemental orders to show cause, the latter with numerous exhibits, and the petitioner's reply to the government's second supplemental response.

1

Chippas makes the following claims:

1. The Parole Commission's decision to set a release date more than 48 months above the lower limit of the guidelines applicable to him is inconsistent with its rules and regulations and therefore lacks a rational basis and is arbitrary.

2. The Parole Commission's denial of credit for time served by petitioner in an unrelated state case is contrary to the dictates of the parole guidelines pursuant to section 2.20-05(c)(10) and is an abuse of discretion.

3. Significantly different decisions by the Parole Commission without relevant individual case specifics resulted in unwarranted co-defendant disparity.

Chippas is currently in federal custody, serving an aggregate term of 50 years in prison. In case number 84-6033-Cr-Roettger, Chippas was convicted of conspiracy to import cocaine, conspiracy to possess with the intent to distribute cocaine, and aiding and abetting an attempt to import cocaine. [DE 9, Ex.2] On January 16, 1986, he was sentenced in that case to a thirty-year prison term and a five-year term of probation.[1]

In case number 84-6034-Cr-Zloch, Chippas was convicted of conspiracy to import methaqualone powder, conspiracy to distribute methaqualone powder, aiding and abetting the importation of methaqualone powder, and interstate travel to distribute the

---

[1]Chippas' presentence investigation report ("PSI") reflects the fact that he was one of the financiers of the methaqualone importation scheme. He participated in setting up the importation in the amount of 3,000 pounds, hiring a pilot, inspecting an airstrip, and testing radio equipment. [Id.] The plan did not come to fruition only because the pilot backed out.

2

proceeds of illegal activities. [DE 9, Ex.3] In that case, he received a sentence of twenty years imprisonment, to run consecutive to the sentence imposed in case number 84-6033-Cr-Roettger.[2]

The PSI states that Chippas was sentenced in New Jersey in 1980 for possession of ten tons of marijuana with the intent to distribute. [DE 9, Ex.4] He was permitted to remain free on bail following his sentencing in that case, and he jumped bail. He committed the offenses in case numbers 84-6033-Cr-Roettger and 84-6034-Cr-Zloch while a fugitive. [Id.]

Chippas was arrested on December 6, 1982, on a charge of unlawful flight to avoid confinement. He was returned to New Jersey to serve his sentence in that state, and was writted in to the Southern District of Florida to stand trial on his federal charges. Chippas began serving his federal sentences on January 16, 1986, after the Bureau of Prisons agreed to commence his term while he was still in New Jersey custody. [DE 9, Ex.1]

---

[2]In the cocaine case, Chippas conspired with a different group of individuals to import 340 kilograms of cocaine. Again, Chippas in that case helped to acquire an aircraft and hire a pilot, but the importation was not completed because the plane crashed and the shipment was lost. Chippas thereafter participated in a meeting to arrange a shipment of 660 pounds of cocaine, but that transaction never materialized. [DE 9, Ex.4]

3

Chippas applied for parole on October 17, 1995. [DE 9, Ex.5] Following an initial hearing on November 7, 1995, the hearing examiner recommended that Chippas receive a presumptive parole date of January 15, 2001, after the service of 180 months in prison. [DE 9, Ex.6-7] However, upon review, the regional examiners and Regional Commissioners disagreed, and set Chippas' presumptive parole release date at January 15, 2003, after the service of 204 months. [DE 9, Ex.8]

As the reasons for its decision, the Commission explained that Chippas' parole guideline range was 100+ months to be served before release, based on a Category Eight offense severity rating (conspiracy to import more than 18.75 kilograms of cocaine, purity unknown) and a salient factor score of 8. As its reasons for setting Chippas' presumptive parole release date more than 48 months beyond the minimum of his guideline, the Commission stated:

> [Y]ou are a more serious risk than indicated by your salient factor score and your offense behavior involved the following aggravating factors: In addition to the two federal convictions you have two other convictions for narcotic trafficking related offenses in 1972 and 1978. You also have been acquitted of other narcotics charges. Your prior encounters with the criminal justice system did not deter you from the current behavior which is involvement in two separate, unrelated, extremely large scale drug trafficking behaviors.
>
> [DE 9, Ex.8]

4

Chippas appealed the Commission's decision to the National Appeals Board, which affirmed in a notice of action issued June 4, 1996. [DE 9, Ex.11]

Chippas filed this application for federal habeas corpus relief on September 9, 1996. After reviewing it, the Commission decided to reopen Chippas' case for a special reconsideration hearing. [DE 9, Ex.12] The notice of action informed Chippas that the reconsideration hearing would give him the opportunity to submit further arguments to the Commission concerning the reasons for the decision more than 48 months beyond his minimum guideline range, and that the Commission would be re-examining the basis for its conclusion that he is more serious parole risk than his salient factor score would indicate. [Id.] In addition, the Commission notified Chippas that his case was also being reopened to examine new and significant adverse information, in the form of allegation in the case of a codefendant, Joseph Vershish, that Chippas obtained computerized law enforcement information from a U.S. Customs agent, intimidated witnesses in federal prosecutions, and directed the coconspirators in the methaqualone offense. [Id.][3]

There was a delay of three and a half months in conducting Chippas' special reconsideration, due to the fact that Commission examiners visit federal institutions every other month. [DE 23,

_____

[3]The information from Joseph Vershish's parole file can be found as an exhibit to DE 23.

5

05/02/00  18:07 FAX 9543367836                LAUDERALE                                      ☑008

Declaration of Thomas C. Kowalski] The hearing was conducted on April 3, 1997.  The Review Hearing Summary [DE 23, Exhibit] indicates that Chippas' primary arguments there, as they essentially are in this federal proceeding, were that codefendant Vershish was not credible, that Chippas' sentence was unlawfully disparate from that of his codefendants, the time he served in custody in New Jersey should be credited toward his federal sentence, and he is not a poorer parole risk than indicated by his salient factor score of 8. [DE 23, Review Hearing Summary]

Following the special reconsideration hearing, Examiner Dorothy Beale concluded that the allegations of other criminal behavior were not supported by the records from Vershish's parole file. However, she also concluded that Chippas' criminal history indicates that he is a "poorer" rather than a "more serious" parole risk than shown by his salient factor score. She recommended that his presumptive parole release date should be reduced by 36 months, because she believed it unlikely that Chippas will repeat his criminal behavior due to his age of 65. Beale also stated that she would consider the case of Chippas' codefendant Frank Carcaise, who had been released after 121 months incarceration, to determine whether there was unwarranted codefendant disparity in the two cases.

The summary indicates that Beale reviewed information on Carcaise's case upon her return to her office, and noted that

6

Carcaise had received only a 15-year prison term, as opposed to Chippas' 50-year sentence.[4]

After the hearing, Chippas' case was reviewed by Hearing Examiner Kathleen Pinner. Pinner agreed with Beale that there was insufficient evidence to conclude that Chippas had engaged in other criminal behavior. However, she disagreed with Beale's conclusion that Chippas was not a "more serious" parole risk, because his record of large and extremely large-scale drug importation offenses indicated a significant likelihood that he would resume such behavior in the future. Pinner also discounted the importance of Chippas' age as a mitigating factor, because he did not commence his drug importation offenses until he was forty and stopped only because he was arrested at the age of 54.

Pinner recommended that Chippas' presumptive parole date should remain at 204 months, or January 15, 2003. A third examiner, Sam Shoquist, and the Regional Commissioner, John Simpson, agreed with Pinner. Accordingly, a notice of action was issued on May 12, 1997, continuing Chippas to a presumptive parole date after the service of 204 months. [DE 23, Notice of Action] Chippas did not appeal this result to the National Appeals Board.

---

[4]In its second supplemental response to the order to show cause, the government acknowledges that Carcaise's aggregate sentence in fact totaled 21 years, 7 months and 20 days. [DE 23 at 3, n.2] However, the discrepancy in the Commissioner's statement is not significant, because the sentence imposed on Carcaise was still less than half as long as that of Chippas.

7

In its initial response to the order to show cause [DE 9], the respondent invoked the exhaustion requirement. Federal prisoners are required to exhaust available administrative remedies prior to seeking extraordinary relief in federal courts. <u>United States v. Lucas</u>, 898 F.2d 1554 (11 Cir. 1990); <u>United States v. Flanagan</u>, 868 F.2d 1544 (11 Cir. 1989); <u>United States v. Mathis</u>, 689 F.2d 1364 (11 Cir. 1982); <u>Burnett v. U.S. Board of Parole</u>, 491 F.2d 966 (5 Cir. 1974); <u>Hale v. United States</u>, 307 F.Supp. 345 (W.D.Okla. 1970). Unlike exhaustion in the context of 28 U.S.C. §2254, which is based upon comity and can be deemed satisfied if justice requires, the requirement as to federal prisoners in some cases is jurisdictional. <u>United States v. Mathis</u>, <u>supra</u>, at 1365.

At the time this petition was filed, Chippas' three claims were exhausted by virtue of having been raised before the Commission in the first parole proceeding, and then before the National Appeals Board. [DE 9, Ex.11]  It is true that the Parole Commission's intervening act of scheduling the special reconsideration hearing rendered the claims technically unexhausted, because Chippas thereafter had an administrative avenue open to him as to any adverse decision reached by the Commission -- namely, a second appeal to the National Appeals Board. <u>United States ex rel. D'Agostino v. Keohane</u>, 877 F.2d 1167, 1173 (3 Cir. 1989)(dismissal of habeas corpus petition affirmed where reconsideration hearing negated petitioner's claim that Commission's refusal to reduce offense severity rating was

8

arbitrary and capricious); <u>Arias v. U.S. Parole Commission</u>, 648 F.2d 196 (3 Cir. 1981)(federal prisoner may not challenge parole decision until all administrative remedies are  exhausted).

Nonetheless, after the reconsideration hearing was conducted, Chippas essentially found himself in precisely the same legal position he previously occupied. Consequently, the petitioner argues in his reply to the government's second supplemental response, "nothing has changed" as the result of the reconsideration hearing [DE 24 at 2], so despite the absence of a second review by the National Appeals Board "... the Petitioner only seeks this Honorable Court's resolve, specifically as to the three grounds for relief raised in his petition." [DE 24 at 5]

Under the circumstances, where the claims of this petition were exhausted when filed, the National Appeals Board has already affirmed the petitioner's present parole posture, and the government has responded to the claims on the merits in its second response [DE 17] and second supplemental response [DE 23] to the order to show cause, justice would best be served by accepting the petitioner's argument and disposing of the present claims on the merits.

It should also be noted that the petitioner may have interpreted statements in the second supplemental order to show cause in a manner that was unintended. For instance, it was noted

9

there that it "appear[ed] unlikely that the Government reopened
Chippas' case because the reconsideration hearing might "possibly
result in a prompt parole for Chippas'." In his reply to the
government's second supplemental response [DE 24], the petitioner
appears to assume that that statement, and others, were an implicit
observation that the Commission reopened Chippas' case in bad
faith, with the intent to subvert the resolution of this habeas
corpus proceeding. Such an interpretation was not intended, nor is
it correct.

Government officials are presumed to act in good faith. Ward
v. Rock of Racism, 491 U.S. 781 (1989). That same presumption
extends to members of the Parole Board. Paine v. Baker, 595 F.2d
197, 203 (4 Cir.), cert.denied, 444 U.S. 925 (1979). Accordingly,
the presumption that the Parole Board would reopen a case pendent
lite to deny a prisoner's access to federal habeas corpus review is
unwarranted, both as a general rule and specifically in this case.

In United States ex rel. D'Agostino v. Keohane, supra, the
petitioner argued, as Chippas does here, that the Parole
Commission's sua sponte reopening of his case was indicative of bad
faith, such that its actions should not be accorded deference. The
court rejected that interpretation in the absence of a showing of
a series of such actions by the Commission, and noted, "We fail to
see how the granting of a hearing to allow D'Agostino to challenge
the very actions he alleges in his habeas petition to be arbitrary,

10

capricious and not in accordance with the law amounts to bad faith." Id. at 1174, n. 12.

In this case, there has occurred a single instance of the Parole Commission *sua sponte* reopening Chippas' case. This fact, standing alone, is insufficient to attribute the Commission's actions to bad faith or other improper motive. D'Agostino, supra.

Chippas also argues in his reply to the second supplemental response that bad faith on the Commission's part is evidenced by the fact that the information gleaned from codefendant Vershish's parole file for review at the reconsideration hearing "was neither new nor significant." [DE 24 at 4] Again, this circumstance is of no legal significance, at least under the facts of this case. "The Commission may reopen a parole decision for consideration of new information at any time prior to a prisoner's release, even if the new information was in existence, but not considered, when the initial parole decision was made." Bridge v. United States Parole Commission, 981 F.2d 97, 104 (3 Cir. 1992), and cases cited.

In this case, the information in codefendant Vershish's parole file was not considered in Chippas' initial parole proceeding, but came to light as the result of the Commission's need to investigate his present claim of codefendant disparity. [DE 23 at 5] It was Chippas himself who argued at the outset of this case that he had not had an opportunity to dispute information presented at his

11

initial parole proceeding. [DE 2 at 9] The special reconsideration hearing ensured him that opportunity. [DE 23, Transcript] He cannot transmute the fact that he was afforded the very opportunity he sought to present his case to the Commission as an indication of bad faith on the Commission's part. Bridge, supra.

Turning to Chippas' claims, he argues in his first claim that the Parole Commission's decision to set a presumptive parole release date more than 48 months above his guideline range is inconsistent with its rules and regulations and therefore lacks a rational basis and is arbitrary.

The Parole Commission is vested by Congress with absolute discretion in matters of parole, Farkas v. United States, 744 F.2d 37 (6 Cir. 1984), and its decisions involving the granting, denial, modification or revocation of parole are unreviewable by district courts even for an abuse of discretion. Larson v. United States, 907 F.2d 85 (8 Cir. 1990); Wallace v. Christiansen, 802 F.2d 1539 (9 Cir. 1986). A Parole Commission determination thus is reversible by a court only if the decision is so arbitrary and capricious as to be beyond the Commission's discretion, or violative of the defendant's constitutional rights. Glumb v. Honsted, 891 F.2d 872 (11 Cir. 1990), citing Whitehead v. U.S. Parole Commission, 755 F.2d 1536 (11 Cir. 1985); Bowen v. United States Parole Commission, 805 F.2d 885 (9 Cir. 1986); Brown v. Lundgren, 528 F.2d 1050 (5 Cir. 1976).

12

Chippas has fallen far short of demonstrating that the Commission's parole decision fell beneath this standard. He argues first that the Commission acted arbitrarily by ignoring its own guidelines in determining his presumptive parole release date. However, the Commission may follow its parole guidelines, disregard them, or change them, because parole is purely an act of discretion. Tobon v. Martin, 809 F.2d 1544, 1545 (11 Cir. 1987). Nor may a petitioner seek to enforce statements in an agency's internal procedures manual against the agency in litigation, as Chippas does here. Caporate v. Gasele, 940 F.2d 305 (8 Cir. 19891).

The Commission in this case determined at the initial parole proceeding and again following the reconsideration hearing that Chippas' longtime involvement in sophisticated, very large-scale criminal activity warranted setting his presumptive parole release date more than 48 months beyond the minimum of his guideline. [DE 9, Ex.8] Clearly, the Commission's decision in this regard was not capricious or arbitrary, and so it will not support a claim for habeas corpus relief. Ammirato v. Hanberry, 797 F.2d 961 (11 Cir. 1986)( Parole Commission decision to exceed the guidelines upheld where decision based on petitioner's involvement in sophisticated and continuing criminal activity); Glumb v. Honsted, supra.

In his second claim, Chippas argues that the Commission's denial of credit for the time he served in New Jersey custody on unrelated charges is contrary to the dictates of the parole

13

guidelines pursuant to section 2.20-05(c)(10) and is an abuse of discretion. Again, this claim is without merit.

Chippas' reliance on the Commission's procedures manual is both inappropriate, Caporate v. Gasele, supra, and incorrect. When Chippas challenged the Commission's decision not to grant him credit for the 37 months he spent in New Jersey custody prior to commencing his federal sentence, the reviewer noted that "[t]he provision subject cites applies to reasons for decisions below the guidelines." [DE 9, Ex.10 at 2] The Board subsequently declined to give Chippas an earlier release date based on the time he served for the New Jersey marijuana offense. [DE 9, Ex.11] The cited provision of the Commission's procedural manual is simply not relevant to Chippas' case.

Based upon the principle of dual sovereignty, there is no requirement that the federal courts allow a prisoner credit for time served in a state prison system. Meagher v. Clark, 943 F.2d 1277 (11 Cir. 1991), and cases discussed at 1280-84. The Commission's considered decision in this case not to credit Chippas with the time he spent in New Jersey custody for a marijuana offense unrelated to the cocaine and methaqualone importation schemes that  formed the bases of his federal prosecutions was well within its discretion, and does not warrant federal habeas corpus relief.

14

In his third claim, Chippas asserts that significantly different decisions by the Parole Commission as to himself and his codefendants without relevant individual case specifics resulted in unwarranted codefendant disparity. This claim is without merit. A prisoner has no enforceable right to the same parole decision as that given to a codefendant. Coleman v. Perrill, 845 F.2d 876 (9 Cir. 1988); Sheary v. U.S. Parole Commission, 822 F.2d 556 (5 Cir. 1987); Augustine v. Brewer, 821 F.2d 365 (7 Cir. 1987).

In this case, Chippas raised the issue of codefendant disparity in his 1996 administrative appeal, and the National Appeals Board found it to be without merit. It is apparent, based on the record materials now on file with this Court, that Chippas and his codefendants are not similarly situated. According to his PSI, Chippas and codefendant Carcaise were primarily responsible for arranging the cocaine shipment in case number 84-6033-Cr-Roettger. [DE 9, Ex.4 at 8] However, as has been noted, Carcaise eventually was sentenced to serve less than half the time in prison that Chippas received. See n.4, supra. In the methaqualone scheme, Chippas and codefendant Vershish were considered to be the most culpable individuals in the scheme. [Id. at 12]

Because of his record of repeated participation in large-scale drug importation and distribution schemes, Chippas was determined to be a "professional drug trafficker" [DE 9, Ex.7 at 3], and his parole application was adjudicated accordingly. He has not shown

15

that the codefendants were similarly situated, because there is no indication that their records of criminal behavior were equally egregious. In the absence of such a showing, there is no basis for Chippas' contention that there was "unwarranted" disparity in their parole dispositions.

For the foregoing reasons, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: May 13, 1958

UNITED STATES MAGISTRATE JUDGE

cc: Joe Daniel Harrington, Esq.
Law Office of Mark E. NeJame
One South Orange Avenue, Ste. 304
Orlando, FL 32801

Juan C. Elso, Esq.
Law Office of J. C. Elso
3780 West Flagler Street
Coral Gables, FL 33134

Jennifer Prior, AUSA
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132

16

&lt;SUMCODE-SIH_SUM&gt;

## SIH/REVIEW HEARING SUMMARY

**Hearing Type:** . . .  SIH

**Name:** . . . . . . . . .  Chippas, Louis H.

**Reg No:** . . . . . . .  18565-004

**Hearing Date:** . . .  3/16/99

**Institution:** . . . . . .  Miami FCI

**Examiner:** . . . . . .  Kenneth Walker

**2/3 or MR Date:** . . . . .  1/15/2016

**Projected MR Date:** . .  1/15/2003

**Full Term Date:** . . . . .  1/15/2036

**Months in Custody:** . .  159

**As Of:** . .  3/16/99

**Recommended Release**  9/15/2002 **After Service of  200 Months**

---

### I.    Previous Commission Action:

The latest NOA dated 5/12/97 ordered presumptive parole after the service of 204 months (1/15/2003). Subject's offense behavior was rated as Category Eight severity because it involved conspiracy to import more than 18.75 kilograms of Cocaine, the subject had a SFS of an 8 giving him guidelines of 100+ months. The subject was deemed to be a more serious risk than indicated by the SFS that he had a history of repetitive and sophisticated criminal behavior. The subject received a conviction in 1972 for the importation of approximately 859 pounds of Marijuana. The subject was on parole when he absconded from supervision and then traveled to Columbia. Also, in 78 the subject was convicted in New Jersey for another drug conspiracy which entailed loading in excess of 10 tons of Marijuana from Columbia. The subject was placed on bond status after sentencing in this case and subsequently went on fugitive status until December 1982. While on fugitive status he then became involved in two separate indictments one for conspiracy to import 3000 pounds of Methaqualone powder and the second was an attempt to import 340 kilos of Cocaine from Columbia.

Please refer to Pre-review dated 3/4/99.

### II.    Codefendants:

No new information indicated.

### III.    Institutional Adjustment And Release Plans:

Since the subject last appeared before the US Parole Commission (4/3/97), the subject's overall adjustment has been satisfactory. The subject has maintained clear conduct and has maintained a very good work record. The subject has not been involved in any recent educational or vocational programs. The subject has been employed in the recreation department since 1995 and appears to be doing an outstanding job. A letter was submitted

Chippas.185

Page 1 of 2





dated 10/8/98 from Jose Torres, Assistant Safety Management reflecting the outstanding job that the subject has maintained in keeping the recreational equipment in proper order. He indicated that because of his efforts the injury rate has been very low in the recreational area and the subject has attempted to create a safe atmosphere.

Upon the subject's release he plans to reside with family members in Boca Raton, FL and is hopeful to secure employment in the family business.

## IV.    Fines, Restitution, Court Assessment:

None.

## V.    Representative:

The subject was represented by Attorney Joe Harrington, One South Orange Avenue, Suite 304, Orlando, FL 32801, telephone number (407) 896-0536. Mr. Harrington is not only the subject's attorney as well as the inmate's nephew. He indicated that Mr. Chippas is currently 67 years of age, he has no history of violence, the subject is classified as a low level security risk and he's requesting that the subject be considered for early release than what has previously been rendered. Mr. Harrington points out that the subject's SFS is an 8 which places him in the very good risk category and that based on his age a more favorable consideration should be rendered in regarding an earlier parole date. The counsel pointed out that the subject is eligible for approximately 31 months at SPA and that at his previously hearing Examiner Beale took into consideration that because of the subject's age and other factors she was making a more favorable recommendation of parole in January of 2000. He believes that if the subject is awarded the full amount of SPA that this would continue to satisfy the accountability level as well as give the subject an opportunity to return to his family.

## VI.    Risk:

It appears that the subject is a poorer risk than is reflected by the SFS due to his history of involvement in large drug conspiracies.

## VII.    Evaluation:

Retroactivity does not apply.

The examiner believes that based on the subject's overall adjustment which includes very good work habits the subject should be considered for a small amount of SPA. The examiner is recommending that the subject be considered for approximately 4 months of SPA based on his institutional record which include the subject sustaining a very safe work environment in the recreation detail for the past several years. The examiner is not recommending a high amount of SPA because of the sophistication that was involved in the instant federal crimes which

Chippas.185                                                    Page 2 of 2



included conspiracy to attempt to import 340 kilograms of Cocaine from Columbia.

## VIII. Recommendation:

Reopen an advance presumptive parole date of 1/15/2003. Continue to a presumptive parole date of 9/15/2002.

## IX.   Reasons:

You have sustained an excellent work record in the recreation department for the last 3½ years.

**Note:** Initially, the subject had not reviewed his institutional file. The counsel and the subject were allowed to review the file but the counsel agreed that there was no new information in the file.

PAH
March 19, 1999

**U.S. Department of Justice**                            **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

---

Name: CHIPPAS, Louis Harry

Register Number: 18565-004                    Institution:  Miami  FCI

---

In the case of the above-named, the following parole action was ordered:

Reopen and advance presumptive parole date 01-15-2003. Continue to a presumptive parole date of 09-15-2002.

The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26. You may obtain appeal forms from your caseworker or <officer> and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and to your <officer>. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

**REASONS**:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Very Good, old score 8; new Category Very Good, new score 8) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of Offense Severity or Salient Factor Scoring.

The above decision includes a 4 month credit for superior program achievement, specifically: You have sustained an excellent work record in recreation for the past 3 1/2 years.

As required by law, you have also been scheduled for a statutory interim hearing during March, 2001.

fc:       U.S. Probation Officer
          Southern District of Florida
          U.S. Courthouse
          300 N.E. 1 Avenue
          Room 315

          Miami, FL  33132-2126

**Date: March 29, 1999**                    Exh. 19              Clerk: frm

          BOP-MIA                    Page 1 of 1              **CHIPPAS.185**

U.S. Department of Justice                                    Notice of Action
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland   20815-7201

---

Name: CHIPPAS, Louis Harry

Register Number: 18565-004                    Institution: Miami FCI

---

In the case of the above-named, the following parole action was ordered:

### AMEND NOTICE OF ACTION DATED 03-29-1999 TO READ:

Reopen and advance presumptive parole date 01-15-2003. Continue to a presumptive parole date of 09-15-2002.

The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26.
You may obtain appeal forms from your caseworker or **U.S. Probation Officer** and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and to your **U.S. Probation Officer**. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

### REASONS:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Very Good, old score 8; new Category Very Good, new score 8) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of Offense Severity or Salient Factor Scoring.

The above decision includes a 4 month credit for superior program achievement, specifically: You have sustained an excellent work record in recreation for the past 3 1/2 years.

As required by law, you have also been scheduled for a statutory interim hearing during March, 2001.


fc:      U.S. Probation Officer
         Southern District of Florida
         U.S. Courthouse
         300 N.E. 1 Avenue
         Room 315
         Miami, FL  33132-2126


**Date: June 19, 1999**                                      Clerk: frm

**U.S. Department of Justice**                                    **Appeal**
United States Parole Commission
Chevy Chase. Md 20815



Name    Louis Chippas

Register  18565-004                    Institution  FCI    Miami

I received a Notice of Action sent    6-22-99                                        and hereby appeal that decision:

                                                    *(Date)*

**NATIONAL OR ORIGINAL**        I appeal to the *National Appeals Board – (Full Commission on O.J. cases)* to
**JURISDICTION APPEAL**          review and reverse or modify the decision.

_____          *Louis Chippas*                    July 1, 1999
   *(Witness Signature)*              *(Signature)*                          *(Date)*

**INSTRUCTIONS:**          All Appeals are decided on the basis of the written record. Appeals may be based on the follow-
ing grounds. Check one or more of the grounds that are applicable to your case. Explain your basis
for appeal on a separate sheet of paper. Use headings so that the Commission can see which of your grounds you are
discussing. Address one point at a time.

**MAILING INSTRUCTIONS:**
**NOTE:**     Appeals *(National and Original Jurisdiction)* must be mailed to the appropriate regional office within 30 days
         from the date on the Notice of Action

(1) [    ] The guidelines were incorrectly applied in my case as to any or all of the following:

         (A) [    ] Offense severity rating;
         (B) [    ] Salient factor score item(s) _____ ;
         (C) [    ] Time in custody.

(2) [ X ] A decision outside the guidelines was not supported by the reasons or the facts as stated in the Notice of Action;

(3) [    ] Especially mitigation circumstances justify a different decision.

(4) [ X ] The decision was based on erroneous information and the actual facts justify a different decision;

(5) [    ] The commission did not follow correct procedure in deciding my case, and a different decision would have
         resulted if the error had not occurred;

(6) [    ] There was significant information in existence but not known at the time of the hearing;

(7) [ X ] There are compelling reasons why a more lenient decision should be rendered on grounds of compassion.

*(Attach explanation on a separate sheet of paper)*

Exh 20

INMATE'S EXPLANATION OF APPEAL
RE: LOUIS H. CHIPPAS
Reg. No. 18565-004

<u>**NATIONAL APPEAL
TO THE
U. S. PAROLE COMMISSION**</u>

**SUMMARY**

The appellant, Louis Chippas, hereby appeals Notice of Action sent June 2, 1999 that he received upon request from his caseworker at FCI-Miami on June 25, 1999. Pursuant to ss 2.26, the executed form I-22 is appropriately accompanied by this brief.

The issues raised herein specifically address the parole action taken as a result of the new hearing that reopened the Appellant's parole case that was in litigation to rebut new adverse information that the Commission discovered while reviewing documents from the file of one of his codefendants. Based on that reason, the Commission advised the U.S. District Court that the new hearing may possibly result in his prompt parole. A compromise totally overlooked after the Commission's findings were acknowledged on record as being favorable to the Appellant's cause. The outcome of the Commission's new hearing and the issues arising as a result thereof are incorporated herein, where pertinent, and made a part of this appeal.

## BACKGROUND STATEMENT OF THE CASE

The Appellant, Louis H. Chippas, age 67, has been in continuous incarceration since December 6, 1982, serving an aggregate fifty (50) year sentence following his convictions on multiple counts spawned from the conspiracy case to import methaqualone powder (Case No. 84-6034) and the multiple count convictions stemming from the other conspiracy case to import cocaine (Case No.84-6033). The Appellant is acutely aware that the Commission is bound by the jury verdicts and has no intent to reargue the outcome of those convictions. In the aftermath of that premise, however, coupled with the lengthy incarceration, it is certainly within the purview of the Commission to revisit with the actual facts in this parole case to reassess the Appellant's risk for a more reasonable release date in the parole process.

It is noteworthy that neither case ever came to fruition. The significance in that is there are no actual underlying facts from any substantive criminal offense to gauge the extent of the criminal activity that can be attributed to his role in those separate episodes save for his criminal history that is factored in the salient score.

Viewing all the facts with a fresher perspective in mind, the Appellant suggests that the Commission's main

2

focus would yield a more realistic analysis of the parole case at hand rather than some mere perfunctory determination based on sheer dated information. **Otherwise, the Commission is discounting crucial mitigating factors (e.g., present age of 67; continuous lengthy incarceration) that are binding on the Commission via its own rules to fulfill an accurate assessment based on more recent courses of action from its own continuing research on recidivism.**

The Methaqualone conspiracy was aborted in Canada when the pilot self-admittedly sensed that law enforcement was watching the aircraft he was supposed to fly. The cocaine conspiracy case was also aborted when, based on the same pilot's account, the cocaine-laden aircraft crashed on takeoff on a clandestine airstrip in Colombia. In essence, the Appellant's harsh sentence is actually based merely on the historical narration of two drug related conspiracies from the self-serving testimony of a transmogrified Government's witness after he was caught a couple of years later in another criminal episode delivering five (5) kilograms of cocaine to an undercover DEA agent in Key West, Florida. Thereby, without mincing words, the instant convictions are actually based on the bartered for testimony of a Government's witness, Robert L. Armstrong,

3

whose testimony in both cases is the only information about the Appellant's actual role in those offenses.

Ironically, the undercover DEA agent who pursued and arrested Robert L. Armstrong in the unrelated state-cocaine case became the case agent in both of the Appellant's federal prosecutions. The Commission should note that the Government's witness maintained that he was brokering the sale of a private aircraft and was then coerced into piloting the same plane to Colombia in the course of demonstrating it in flight. Thereafter, the aircraft crashed on takeoff. The authorities never actually produced any evidence that the aircraft crashed. The evidence was sufficient to sustain the conviction. The Commission, however, will note that the same pilot obviously continued to practice his trade without any coercing when he was subsequently nabbed by the DEA in an unrelated state case. In exchange for his freedom in the face of a fifteen (15) year state mandatory minimum sentence, the Government's witness, Robert L. Armstrong, provided testimony to resurrect the aforementioned drug cases against the Appellant who was then serving an unrelated sentence for the State of New Jersey. In sum, the subject convictions yet endure but will always hinge on the self-serving testimony the Commission should look beyond when assessing

4

the Appellant's role in those offenses, specially in light of the severe punishment meted out, as a check and balance in the judicial system that the Commission has sole jurisdiction.

It appears to the Appellant that the Commission has uncharacteristically lost focus in the instant case by overly relying on the Appellant's criminal history interspersed with the seriousness of the two drug conspiracies as if they were completed crimes. The Commision, understandably, is empowered to base its decisions from any information in its files. However, not without also considering obvious ameliorative factors beyond bare convictions to determine a more rational parole release date.

The Commission must reflect that its only basis for the new hearing was predicated on the newly found adverse information in the parole file of Joseph Vershish. That issue was ultimately dispelled by the Commission's own findings for lack of credibility. The only saving grace in that hearing was the advancement of the Appellant's parole date of four (4) months based on institutional superior achievement. Aside from that, the Commission's decision totally disregarded the hearing examiner's recommendation for a substantial reduction in accounting for the

Appellant's present age of 67. Unfortunately, the Commission's latest decision is consistent with all of its prior decisions that seem to methodically always exclude the Appellant from ever receiving any equitable consideration when it is obviously applicable and most appropriate. Such an arbitrary practice undermines the Commission's true objective in managing parole and remains totally out of step with its own updated policy such as considering mitigating factors affecting recidivism and maintaining uniformity in its decisions.

The Appellant submits that the factual circumstances in his case should be read by the Commission strictly as a more accurate account for reviewing his appeal in another light rather than solely on mere inferences based on other inferences as before. The Commission thus far has overlooked that there are no underlying facts to infer conduct from in the Appellant's convictions to reasonably deduce anything more than the conspiracy itself.

### BASIS ON APPEAL AND ARGUMENT

I.   **A decision outside the guidelines was not supported by the reasons or the facts as stated in the Amended Notice of Action**.

The Commission should not discount that all of the Appellant's priors have already been contributed to his

Salient Factor Score. The score is an eight because the
Commission has recognized that the older inmate is less
likely to recidivate, and currently added Item G to
implement that assessment, an issue previously argued
before the Commission to no avail. The appellant
steadfastly maintains that given all the facts in the
instant case, he is not a poorer risk than indicated in the
Salient Factor Score nor such an extreme case to circumvent
it. Factually, the newly recalculated severity rating and
salient factor score has remained the same without change
from the Commission but that does not negate the facially
irrational finding of an "extreme case" as a basis for its
decision to go outside the guideline of 148 months. It is
inescapable that in the instance of the Appellant's parole
review, the Commission chose to ignore examples citing
"extreme cases" in its own rules from illustrated samples
for guidance. In retrospect, this whimsical application was
worsened in that the Appellant's criminal conduct stemmed
from simply interacting in utter conspiracies.
Interestingly, at the time those offenses were committed,
the statutory maximum sentence for any substantive cocaine
offense was fifteen (15) years save for any atomized counts
spawned from relative conduct and similarly five (5) years
for a methaqualone substantive count, an aggregate twenty

7

(20) years. While the courts in the same federal district chose to sentence otherwise, specifically in tandem and consecutively, the Commission has seemingly compounded that insensitivity with its decision to even go beyond the 48 months aggravation mainly based on conspiratorial activity. The Appellant submits that such a harsh result is a feat probably unmatched historically in any other parole case from the Commission's voluminous files sans a substantive offense. It is given that the Commission may rely on the "sophistication" of a crime as reason to warrant an aggravation of 48 months but it cannot be reasonably ignored that there is a limit to everything. A more considerate review of the Appellant's case would show the Commission has always made an exception in applying any recommended mitigative factor in his favor. In all fairness, the Commission as a whole should not allow whimsical standards as a basis in its decision making.

II. **The decision was based on erroneous information and the actual facts justify a different decision**.

The Appellant submits that the Commission departed from its response submitted in Court at the U.S. District for the Southern District of Florida, Case. No. 96-2602-CIV-MIDDLEBROOKS, when it represented during the habeas



proceedings that "...a new hearing may possibly result in a prompt parole for Chippas, which would probably moot the habeas claim and obviate judicial review." The "new information", assuming arguendo it was pursued in "good faith", had nevertheless been in the Commission's files for a substantial period of time spanning well over a decade, not to discount the fact that its true evidentiary worth was always innocuous.

The subject adversary information evolved from the Commission's search in the files of Joseph Vershish, Reg. #18515-004. Previous to that occasion, there was no dispute that Vershish was the primary mover in the Methaqualone conspiracy case. The Government labeled Joe Vershish the "manager organizer." The Commission found that the new adverse information was discreditable. However, the Commission overlooked where a favorable finding in the petitioner's cause could result in his prompt parole or at least a substantial advance in his projected date of release. The net result in that decision outwardly impugns the integrity of the Parole Commission when in fact retroactivity was never an issue and neither was the recalculation of the salient factor risk category. The thrust of the Commission's reason in reopening the case was the newly found adverse information. Actually, the

Commission's combing of the Vershish file produced evidence entered by the U.S. Probation Office that characterized Vershish as a con man who in essence hoodwinked the judicial system to gain his freedom and thereafter violated that trust. That finding can not undo the Appellant's conviction per se nonetheless the information should have accounted for mitigating the previously assessed findings of "sophistication" and "large scale activity." The new information merely discredited Vershish who as codefendant was more culpable than the Appellant in the methaqualone conspiracy case. Here, the inherent disparity issue involved was entirely overlooked by the Commission simultaneously with its decision to circumvent its commitment in court for prompt parole contingent on the Appellant successfully rebutting the new adverse information.

III. **There are compelling reasons why a more lenient decision should be rendered on grounds of compassion**.

It is respectfully submitted that irrespective of the magnitude of this request in light of the Commission's former decisions, the unique circumstances in the immediate parole case still cry out for a more lenient decision on grounds of compassion. Probably, there are scores of cases

the Commission remains unsympathetic to an inmate's plea for compassion. The immediate case, however, is distinguishable from those because representatives from the Commission have recommended a more lenient decision on two previous separate occasions. The first Parole Examiner recommended that the appellant be given full credit for continuous time served from the commencement of the Appellant's unrelated state conviction as provided for in the rules. The second Parole Examiner recommended credit for 36 months based on the Appellant's present age that the rules also provide for under Item G.

The Appellant in his unique circumstances simply asks the Commission to empathize rather than sympathize. Putting oneself in the Appellant's shoes lends a different perspective considering that both of the previous favorable recommendations were to no avail. The two previous separate decisions to disregard both parole examiners exemplify mercilessness that is a matter the Commission should correct in keeping with its presumed integrity. Otherwise, both of its former decisions will either remain suspect or serve to demonstrate the unnecessary need of parole examiners because they are never right, especially when it comes to applying its rules in the Appellant's case.

The Appellant's present age at 67 is the most compelling reason to warrant a more lenient decision because most any other reason revolves around such a reason for compassion. The Commission cannot disregard that it recently added Item G to its rules after recognizing that an older inmate is less likely to recidivate. Presumably, the Appellant cannot logically be determined as an exception to such in depth studies.

This overall parole case has a tortuous history mainly because of the Commission's initial reliance on facts that could be argued as being rather questionable in view of a rather lengthy passing of time. Considering that the Commission has incessantly reflected on the Appellant's criminal history to shore up separate and independent parole issues to the detriment of the Appellant, it should have also recognized that a long period of time still takes its toll.

It is illogical to envision the Appellant as a greater parole risk at his present age of 67 as if time has stood still. Nearly two decades have passed since the Appellant was first incarcerated on December 6, 1982. Sheer reliance on misdeeds from the past to predict the future is patently flawed for a litany of reasons considering the interplay and affect of constant change. While it cannot be stated

with pinpoint accuracy, it is most likely that anyone who had ever interacted with the appellant in the illicit market from long ago has either moved, died, been imprisoned, or virtually unreachable. Anticipating the Appellant is a greater parole risk at this stage in his life (67) is irrational and utterly inconsistent with the feedback garnered from extensive parole case studies on recidivism. Presumably, the Commission will not make the Appellant as an exception once again.

Hopefully, the Commission will focus mainly on the Appellant's substantial family times coupled with his present age as less likely to repeat for a more lenient decision rather than the reliance on dated criminal activities from out of the past.

The Appellant has maintained the concern and support of his entire huge family for a great period of time that should speak volumes by itself unlike most others. The Appellant's continued incarceration presently lacks a true societal benefit save for the inherent hardship on him and his family. A needless expense to the taxpayers considering prison space needed to house violent prisoners has become such a valuable commodity. The Appellant urges that prompt parole based solely on compassion is most appropriate. The Commission should base its decision on the likelihood that

the Appellant will not likely recidivate at the age of 67 nor be a charge to society because of his family resources. Otherwise, only the mentality of merely getting "a pound of flesh" endures that is totally incongruous with justice who presumably metes out punishment tempered with mercy.

The Commission will hopefully note that this Appellant has sustained a markedly long imprisonment in prisons where violence prevails without incident. However, the Commission cannot ignore the statistical risks that are starkly incompatible with younger individuals. That factor was discussed by the Parole Examiner during the special hearing which the Commission should reassess in determining the Appellant's risk for parole on a more rational basis in step with reality regarding recidivism.

Based on the foregoing reasons, the Appellant requests a prompt parole as represented by the Commission in the U.S. District Court or in the alternative a more lenient decision.

Respectfully submitted,


Joe Daniel Harrington, P.A.
Fla. Bar #970181
1 S. Orange Ave., Suite 304
Orlando, FL 32801
(407) 245-1232

**EXHIBITS**



**U.S. Department of Justice**                            Notice of Action
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

Name: CHIPPAS, Louis Harry

Register Number: 18565-004                    Institution: Miami FCI

---

In the case of the above-named, the following parole action was ordered:

### AMEND NOTICE OF ACTION DATED 03-29-1999 TO READ:

Reopen and advance presumptive parole date 01-15-2003. Continue to a presumptive parole date of 09-15-2002.

The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26.
You may obtain appeal forms from your caseworker or **U.S. Probation Officer** and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and to your **U.S. Probation Officer**. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

### REASONS:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Very Good, old score 8; new Category Very Good, new score 8) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of Offense Severity or Salient Factor Scoring.

The above decision includes a 4 month credit for superior program achievement, specifically: You have sustained an excellent work record in recreation for the past 3 1/2 years.

As required by law, you have also been scheduled for a statutory interim hearing during March, 2001.

fc:    U.S. Probation Officer
       Southern District of Florida
       U.S. Courthouse
       300 N.E. 1 Avenue
       Room 315                                        6/25/99
       Miami, FL 33132-2126

---

**Date: June 19, 1999**                                **Clerk: frm**

BOP-MIA                    **Page 1 of 1**                    CHIPPAS.185

marijuana offense (approximately thirty-seven months) in determining whether an earlier presumptive parole date should have been set. Finally, he contends that the Commission's determination requires him to serve far longer than several of co-defendants in his two federal drug offenses, and that the Commission failed to obey guidance in its procedures manual in comparing his case with the cases of his co-defendants.

Parole decisions are reviewable only for flagrant, unwarranted, or unauthorized action that constitutes an abuse of discretion. Glumb v. Honsted, 891 F.2d 872 (11th Cir. 1990), citing, Whitehead v. U.S. Parole Commission, 755 F.2d 1536 (11th Cir. 1985). As noted above, the Commission has decided to reopen Chippas's case for a special reconsideration hearing. This hearing will allow the Commission to re-examine the reasoning employed for the continuance given to Chippas, after receiving any further arguments by the petitioner on his parole denial. It also gives Chippas the chance to rebut new adverse information that the Commission discovered about him in reviewing documents from the file of one of his codefendants. This new information could lead to the rescission of Chippas's present presumptive parole date. (See 28 C.F.R. §2.28(f)).

The new hearing provides an administrative remedy to Chippas that he must exhaust before the Court considers his habeas corpus petition. United States v. Lucas, 898 F.2d 1554 (11th Cir. 1990) (court does not have jurisdiction over prisoner's complaint for jail credit until he has demonstrated exhaustion of administrative remedies). At a minimum, the new hearing will allow the Commission to develop a better administrative record of the reasoning for its decision in this case, which will facilitate judicial review. A new hearing may possibly result in a prompt parole for Chippas, which would probably

5

moot the habeas claim and obviate judicial review. Therefore, dismissal of the present petition, without prejudice to refiling, would advance the goals of the exhaustion doctrine. See generally, McKart v. United States, 395 U.S. 185, 194-95 (1969). Exhaustion is required even though the Commission will also be considering information adverse to Chippas in the new proceeding. Bridge v. U.S. Parole Commission, 981 F.2d 97 (3rd Cir. 1992) (Commission is entitled to the presumption of good faith in reopening a case pendente lite). If Chippas is not satisfied with the results of the new hearing, he will have the opportunity to submit another appeal to the National Appeals Board under 28 C.F.R. §2.26.

WHEREFORE, the Respondents respectfully request that the petition be dismissed, without prejudice, until Movant exhausts his administrative remedies.

Respectfully submitted,

WILLIAM A. KEEFER
UNITED STATES ATTORNEY

BY: _____
JENNIFER PRIOR
Assistant United States Attorney
Florida Bar No. 793337
99 N.E. 4th Street
Miami, Florida 33132
(305) 536-6591

6

Commissioner, U.S. Parole Commission
Chevy Chase, MD
March 16, 1992
Page 3

RE:  VERSHISH, Joseph
Warrant Request

29, 1992.  He wrote a letter dated March 10, 1992 (attached)
implying he is aware of these matters but is not prepared to report
to discuss them.

I have other information that he has possibly traveled without
permission based on statements made from the victims in the seafood
import/export business.

Because the parolee has failed to notify the U.S. Probation
Officer of his employment in the seafood import/export business,
falsified his monthly supervision reports and wrote worthless
checks, it is recommended that a parole warrant be issued.

Respectfully submitted

David L. Sutherland
U.S. Probation Officer

DLS:gwf
Attachments

**U.S. Department of Justice**                    **NOTICE OF ACTION ON APPEAL**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

---

Name:  Chippas, Louis

Register Number: 18565-004                    Institution: Miami FCI

---

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

**<u>REASONS</u>:**

You contend that a decision above your guidelines is not supported by the reasons provided on your Notice of Action and that the decision was based on erroneous information.  Your arguments relate to the Notice of Action that was issued in your case on May 12, 1997.  You had the opportunity to appeal that Notice in 1997, but you failed to do so.  The Board has reviewed the previous Notice of Action and finds that no error was made and therefore, will not reconsider the 1997 decision.

You contend that the Commission failed to consider mitigating circumstances in your case, specifically your age.  Your contention has no merit.  The Commission does not believe that your propensity for criminal activity has lessened with age since you did not begin your criminal involvement in the importation of drugs until the age of 40, and you were arrested on the instant federal offense at the age of 54.

All decisions by the National Appeals Board on appeal are final.

---

Date: September 9, 1999          National Appeals Board          Clerk: pgn

BOP-MIA                          Page 1 of 1                     CHIPPAS.185

Exh. 21