**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 00-6148-CIV-ZLOCH/JOHNSON**

LOUIS H. CHIPPAS,

    Petitioner,

v.

UNITED STATES PAROLE
COMMISSION, et al,

    Respondents,
_____/

FILED by __ D.C.
SEP 07 2000
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Petitioner, Louis Chippas' Petition for Writ of Habeas Corpus (Docket Entry Nos. 1 & 2). This matter was referred to the undersigned United States Magistrate Judge by the Honorable William Zloch, United States District Judge for the Southern District of Florida, and is now ripe for judicial review. For the following reasons the undersigned respectfully recommends said motion be denied.

### A. BACKGROUND

Petitioner is a federal prisoner incarcerated at the Federal Correctional Institution in Miami serving a total term of fifty years. He was first sentenced to a thirty-year prison term along with a five-year probation term on January 16, 1986 by the U.S. District Court for the Southern District of Florida. The charge was for conspiracy to possess cocaine with intent to distribute, and aiding and abetting an attempt to import cocaine. The Eleventh Circuit Court of Appeals remanded and the U.S. District Court for the Southern District of

Florida imposed a twenty-year prison term to run consecutively with the earlier sentence for conspiracy to import, distribute, aid and abet the importation of methaqualone powder and interstate travel to distribute proceeds of illegal activities.

The presentence report for Petitioner's Methaqualone offenses stated that Petitioner was sentenced in New Jersey for possession and intent to distribute ten tons of marijuana in 1980. Following the sentence, Petitioner jumped bail and was arrested in 1982 for unlawful flight to avoid confinement. Petitioner served his sentence in New Jersey and was writted in to the Southern District of Florida to stand trial on his federal charges. He began his federal sentence in 1986 after the Bureau of Prisons agreed to commence his term while he was still in New Jersey custody but he was not released from that custody until November 18, 1986.

Chippas applied for parole on October 17, 1995 and was given his initial hearing on November 7, 1995. At his initial parole hearing in November 1995, the hearing examiner recommended a presumptive parole date of January 5, 2001, after 180 months in prison. Upon review in the Regional Office, the reviewing examiner set presumptive parole after 204 months of service. The National Appeals Board affirmed the Commission's decision following an appeal by Petitioner.

Petitioner filed a petition for writ of habeas corpus on September 9, 1996 in the United States District Court for the Southern District of Florida, challenging the parole decision. See Petition in Case No. 96-2602-CIV-MIDDLEBROOKS, attached as Exh. "11" to Respondents' Response Brief. Therein, Petitioner argued that the commissioner did not have a rational basis for the parole decision, that the commission did not provide adequate reasons for providing him a parole date more than 48 months above the lower limit of his

guideline range, and that there was unwarranted disparity in the parole decisions for himself and his codefendant. Id.

On or about December 12, 1996, the Parole Commission reopened Petitioner's case for a special reconsideration hearing. See Exh.12 to Respondents' Response Brief. This decision to reopen was made following a review of Chippas' habeas petition, parole file and the files of several of his codefendants. Id. In so doing, the Commission explained that it intended to reexamine the conclusion that Petitioner was a "more serious" parole risk than shown by his salient factor score. Id. The purpose of the reopening was stated to be to ensure that the Commission appropriately used the "more serious" risk reasons for Petitioner who does not have a history of violence and to give Petitioner the opportunity to present his arguments on the issue of whether he was a "more serious" parole risk. Id. Additionally the Commission wanted to integrate allegations of criminal behavior found in Petitioner's codefendant's file. Id.

The special reconsideration hearing was presided over by Dorothy Beale, a hearing examiner with the Parole Commission. See Exh.13 to Respondents' Response Brief. Examiner Beale concluded that the allegations of other criminal behavior were not supported by the records from the codefendant's file. Id. She also determined that Petitioner was a "poorer parole risk" and not a "more serious parole risk" and recommended that the presumptive release date be reduced by 36 months because Petitioner was unlikely to repeat his criminal behavior due to his advanced age (67). Id.

This determination was reviewed by Executive Hearing Examiner Katherine Pinner who agreed with Beale that there was insufficient evidence that Petitioner had committed other criminal acts. Id. Pinner disagreed, however, with Beale's conclusion that Petitioner

3

was not a "more serious" parole risk, finding that Petitioner's criminal record of large-scale and extremely large-scale drug importation offenses indicated there was a significant likelihood that Petitioner would resume such drug importation activities in the future. Id. Pinner also disagreed with Beale's use of Petitioner's age for a more lenient decision, finding that inasmuch as Petitioner did not commence his drug importation offenses until the age of 40 and continued his drug crimes until arrested on the instant federal offense at the age of 54, it was doubtful that Petitioner's propensity for criminal activity would lessen with age. Id.

Based upon the foregoing, Pinner concluded the presumptive parole date should remain January 15, 2003, at 204 months. The concurrence of a third examiner, Sam Shoquist, and the Regional Commissioner, John Simpson, resulted in the final decision on May 12, 1997 to keep the parole date of January 15, 2003. See Exhs.14 & 15 to Respondents' Response Brief. Petitioner subsequently received The Notice of Action which informed him that he could appeal the decision to the Commission's National Appeals Board, but Petitioner failed to do so. In a subsequently filed motion to expedite, Petitioner supplemented his earlier arguments by challenging the 1997 special reconsideration hearing decision on the grounds that the Commission did not, among other things, adequately take into consideration petitioner's age. See Motion to Expedite Ruling on Pending Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241 filed in Case No. 96-2602-CIV-MIDDLEBROOKS. Thereafter, Magistrate Judge Sorrentino recommended dismissal of the petition and Judge Middlebrooks adopted the recommendation ordering the petition be dismissed. See Report and Recommendation of Magistrate Judge Sorrentino and Final Judgment in Case No. 96-2602-CIV-MIDDLEBROOKS.

4

On March 16, 1999, Petitioner received a statutory interim hearing before another hearing examiner to determine new developments in Petitioner's status. See Exh. 18 to Respondents' Response Brief. Therein, Petitioner was rewarded for outstanding work in the recreational department at Miami Federal Correctional Institution by receiving an advance in his parole date by four months advancing his presumptive parole date to September 15, 2002. Id. Petitioner appealed this decision to the Commission's National Appeals Board and again raised issues previously resolved by the Court, and the National Appeals Board affirmed the Commission's decision. See Exhs. 20 & 21 to Respondents' Response Brief.

## LEGAL ANALYSIS

Petitioner has filed the instant Petition for Writ of Habeas Corpus challenging the Commission's May 17, 1997 parole decision which denied Petitioner parole and granted him a presumptive parole date of January 15, 2003. The Petition raises two issues: first, that the Regional Commissioner modified the recommendation of the hearing examiner panel more than six months, thus violating 28 C.F.R. § 2.24 (b)(2); and second, that in formulating the 1997 parole decision, Petitioner's age was not adequately considered. Each of these issues shall be addressed in turn.[1]/

---

[1]/ Respondents contend that Petitioner is procedurally barred from raising these issues inasmuch as they have either been previously litigated and determined adversely to Petitioner or could have been raised in previous litigation but were not, thereby resulting in abuse of the writ. See Sanders v. United States, 373 U.S. 1, 12 (1963); McClesky v. Zant, 499 U.S. 467 (1991); Emery v. Johnson, 139 F.3d 191, 195 (5th Cir. 1987); Glumb v. Honsted, 891 F.2d 872, 873 (11th Cir. 1990). This argument appears sound. However, inasmuch as it is not entirely clear whether Judge Middlebrooks in Case No. 96-2602-CIV-MIDDLEBROOKS, addressed the issues of the Commission's modification of the hearing examiner's recommendation and Petitioner's age in the 1997 proceedings, this Court, in an abundance of caution, shall proceed on

5

First, the Court considers the allegation that the Regional Commissioner modified the hearing examiner panel's recommendation in violation of 28 C.F.R. § 2.24 (b)(2), which requires any modification by a Regional Commissioner of a hearing examiner panel's recommendation be by six months or less from the date recommended by the earlier panel. The fatal flaw in this argument is Petitioner's obvious confusion regarding the decision-making process following a parole hearing. Once this decision-making process is understood, it becomes clear that what happened in this case is that the Regional Commissioner adopted the recommendation of the hearing examiner panel in full. Thus, not only did the Regional Commissioner not modify the panel's recommendation by more than six months, but he did not modify the panel's recommendation *at all*.

18 U.S.C. §4203(c)(2) (1976) authorizes the Commission to delegate to hearing examiners the power to conduct hearings and proceedings, receive evidence, make findings of fact and recommend parole and parole revocation decisions. Pursuant to §4203(c)(2), "any such findings or recommendations shall be based upon the concurrence of not less than two hearing examiners." Id. In the instant case, Examiner Beale made a recommendation that Petitioner's parole date be advanced on account of his advanced age and that he be paroled on January 15, 2000. However, Examiner Beale did *not* get the concurrence of any other hearing examiner. As a result, Examiner Beale's recommendation did not constitute a statutory hearing examiner recommendation under 18 U.S.C. §4203(c)(2).

Where, as here, one hearing examiner does not get the concurrence of another, 28

---

the merits.


C.F.R. §2.23(c) (1999), provides that "the case shall be referred to another hearing examiner ... for another vote. If concurring votes do not result from such a referral, the case shall be referred to any available examiner until a panel recommendation is obtained." Id. [2]/ Herein, the Commission fully and completely complied with the regulatory and statutory scheme in place in obtaining a hearing examiner panel recommendation. Inasmuch as the Regional Commissioner did not order that Petitioner's hearing be conducted by a panel of two hearing examiners, the hearing was conducted by only one hearing examiner, Examiner Beale. Following the hearing, Examiner Beale recommended that Petitioner receive a 36-month reduction in his time to be served due to his advanced age (67). Pursuant to 18 U.S.C. §4203(c)(2), before the Commission may adopt the findings and recommendations of a hearing examiner, there must exist the concurrence of at least two hearing examiners, what the Commission's Regulations refer to as a "panel recommendation." In this case Beale's recommendation never obtained the required concurring vote.

Following Beale's recommendation Executive Hearing Examiner Katherine Pinner undertook her review of Petitioner's parole status and in her recommendation disagreed with Beale's conclusion that Petitioner was not a "more serious" parole risk. Pinner found

---

[2]/ Under 28 C.F.R. §2.23(a), "any hearing may be conducted by a single examiner or by a panel of examiners. A Executive Hearing Examiner shall function as a hearing examiner for the purpose of obtaining a panel recommendation whenever the Regional Commissioner has not ordered that a hearing be conducted by a panel of two examiners." The Regulations also provide that, regardless of the number of examiners conducting a hearing, a panel recommendation of at least two hearing examiners is necessary. 28 C.F.R. §2.23(b) (1999) ("The concurrence of two hearing examiners, or of a hearing examiner and the Executive Hearing Examiner, shall be required to obtain a panel recommendation to the Regional Commissioner.")

7

that Petitioner's criminal record of large-scale and extremely large-scale drug importation offenses indicated there was a significant likelihood that Petitioner would resume such drug importation activities in the future. Pinner also disagreed with Beale's use of Petitioner's age for a more lenient decision, finding that inasmuch as Petitioner did not commence his drug importation offenses until the age of 40 and continued his drug crimes until arrested on the instant federal offense at the age of 54, it was doubtful that Petitioner's propensity for criminal activity would lessen with age. Based upon the foregoing, Pinner concluded the presumptive parole date should remain January 15, 2003. Pinner then made her recommendation and obtained the concurrence of another Commission employee functioning as another Executive Hearing Examiner, Sam Shoquist. Consequently, Examiners Pinner and Shoquist joined in the panel recommendation, required by statute and regulation, for submission to the Regional Commissioner. [3]/ Pursuant to 28 C.F.R. §2.23(d), "[a] recommendation of a hearing examiner panel shall become an effective Commission decision only upon the Regional Commission's approval, and docketing at the Regional Office." 28 C.F.R. §2.23(d) (1999). The Pinner/Shoquist panel recommendation was thereafter submitted to Regional Commissioner John Simpson who on May 12, 1997, agreed with and adopted the recommendation. With the Regional Commissioner having adopted the Pinner/Shoquist panel recommendation, the Pinner/Shoquist panel recommendation, in effect, became the Commission's decision. As such, Petitioner's

---

[3]/ To the extent that Petitioner contends the absence of Executive Hearing Examiners Pinner and Shoquist at the hearing, renders their recommendation violative of due process, this argument is without merit. As Respondent correctly notes, a parolee has no right to a hearing before the ultimate decision-maker. See, e.g., Moore v. Dubois, 848 F.2d 1115 (10th Cir. 1988).

8

contention that the Regional Commissioner modified the recommendation of the hearing examiner panel more than six months, thus violating 28 C.F.R. § 2.24 (b)(2), is not only unsound but impossible, as there was in fact *no* modification, unlawful or otherwise.

Petitioner's final argument, that the Commission did not adequately consider his age in making his parole decision, is equally lacking in merit. Judicial review of a parole decision by the Parole Commission is extremely limited: review is limited to whether the Commission has abused its discretion. See Brown v. Lundgren, 528 F.2d 1050, 1054 (5th Cir. 1976). This Court has reviewed the record in this case, including the recommendations, decisions, and exhibits contained therein and is satisfied that the Commission had a rational basis for continuing Petitioner to a presumptive parole date of January 15, 2003, after the service of 204 months. The Commission applied its Regulations at 28 C.F.R. §2.20 to the facts of Petitioner's case and gave Petitioner a salient factor score of 8, indicating a good parole prognosis. Balanced against this, however, was the fact that Petitioner had been involved in an extremely large-scale drug importation enterprise, thus warranting an offense severity rating of category 8. [4]/ With a salient factor score of 8 and an offense severity rating of category 8, Petitioner's guideline

---

[4]/ The Commission found that Petitioner was involved in an extremely large-scale drug organization in that Petitioner's offense involved conspiracy to import more than 18.75 kilograms of cocaine. This fact was elicited at Petitioner's initial hearing and is noted in his presentence report. Where, as here, the Court is asked to review the fact finding function of an agency like the Parole Commission, inquiry is limited to whether the agency had "some evidence" to support the finding before it when it made the decision. See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Maddox v. U.S. Parole Com'n, 821 F.2d 997, 1000 (5th Cir 1987). Inasmuch as the Commission considered the information in Petitioner's presentence report and at his hearing demonstrating that Petitioner was involved in an extremely large-scale drug trafficking operation, the Commission had the "some evidence" required.

9

range was 100+ months.[5]/ Petitioner was given the Commissions May 12, 1997 Notice of Action which granted Petitioner a parole date after the service of 204 months, and explained the case-specific factors why the decision was more than 48 months above the minimum guideline range, as required by 28 C.F.R. §2.20. Given Petitioner's background as a serious drug offender with a history of drug offenses committed after he was convicted of previous drug crimes and while he was on fugitive status, this Court finds the Commission had a rational basis for continuing Petitioner to a presumptive parole date of January 15, 2003, after the service of 204 months.

Also eminently rational was the Commission's decision not to grant Petitioner "credit" for his age. As Hearing Examiner Pinner observed, Petitioner did not begin his criminal drug career until he was 40 years old, and continued his criminal behavior until his arrest at age 54. It was Piner's belief, and apparently that of Shoquist as well, that in light of Petitioner's continual involvement in numerous drug crimes, some committed after arrests and convictions and while on fugitive status, that there was a significant risk of Petitioner's becoming involved in similar drug importation schemes upon his release. The Commission ultimately agreed with this determination and found that Petitioner's advanced age was not a factor indicating that Petitioner was less likely to commit crimes in the future, and ultimately set a parole date without granting any credit for age. Given the above history the undersigned finds the Commission's decision not to grant Petitioner credit for his advanced age amply justified and rational. In accordance with the above and foregoing it is hereby,

---

[5]/ As a category 8 offender, Petitioner's guideline range has no upper limit.

10

**RECOMMENDED** that Chippas' Petition for Writ of Habeas Corpus be **DENIED**. The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable William Zloch, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993).

**RESPECTFULLY SUBMITTED,** this July 27, 2000 at West Palm Beach, Florida.

LINNEA R. JOHNSON
CHIEF UNITED STATES MAGISTRATE JUDGE

CC: Hon. William Zloch
    Thomas P. Lanigan, Esq.
    Joe D. Harrington, Esq.