**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE: NO. 00-6148-CIV-ZLOCH/JOHNSON**

LOUIS H. CHIPPAS,
              Petitioner,

v.

UNITED STATES PAROLE
COMMISSION, et. al,

              Respondents.
_____/



**PETITIONER'S OBJECTIONS**
**TO U.S. MAGISTRATE'S REPORT AND RECOMMENDATION**

COMES NOW the Petitioner, Louis H. Chippas, by and through his undersigned attorney pursuant to 28 U.S.C. 636(b)(1) and files his objections to the U.S. Magistrate's Report and Recommendation entered on July 27, 2000 to deny the Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. s. 2241. The Petitioner actually received his copy of the Report and Recommendation on September 8, 2000 at FCI-Miami and forwarded the same to undersigned counsel who received it on September 16, 2000. As a result of the Respondents' aforementioned oversight, the following written objections to the U. S. Magistrate's proposed findings and recommendation follow:

## **WRITTEN OBJECTIONS**

The Petitioner respectfully submits that the Honorable Chief United States Magistrate Judge misapprehended the scope of the Commission's permissible discretion based solely on the reason stated in the Notice of Action (NOA) entered September 9, 1999, to deny the Petitioner credit for his advanced age. In compliance with the statutory direction to "state with particularity" its reasons, the NOA reads, in pertinent part, "The Commission does not believe that your propensity for criminal activity has lessened with age since you did not begin your criminal involvement in the importation of drugs until the age of 40, and you were arrested on the instant offense at the age of 54." 18 U.S.C. s 4206. See  Exhibit A.

The consideration of an inmate's advanced age by the Commission is a crucial mitigating parole-factor in the instant case that the Petitioner is truly entitled. The Petitioner is mindful of the Parole Commission's broad discretion in decision-making, however, that authority is not unbridled. This Honorable Court has jurisdiction to reverse a decision of the Commission if it involves flagrant, unwarranted, or unwarranted action that constitutes an abuse of the Commission's discretion.

2

Whitehead v. United States Parole Commission, 755 F.2d 1536, 1537 (11th Cir. 1985).

The Petitioner's objections mainly focus on the Commission's whimsical application of rules that are seemingly always decided to the detriment of his cause which can be reasonably inferred from the convoluted history in this unique case. The particular reason articulated by the Commission in the NOA ignores the teachings passed down by the Eleventh Circuit. The Court previously clarified that "Congress intended that the Commission periodically amend the guidelines to reflect contemporary views concerning the seriousness of given crimes **and parole recidivism.**" See Dufresne v. Baer, 744 F.2d 1543, 1550 (11th Cir. 1984).

Consequently, the lower Court's recommendation that embraces the Commission's decision to deny the Petitioner "credit" for the mitigating factor recommended by Examiner Dorothy Beale is patently irrational, unjustified and starkly inconsistent with the Commission's true mission in maintaining an empirical approach for crediting older offenders advanced parole. Ms. Beale recommended reducing the Petitioner's parole date by 36 months because she deemed it unlikely that he would recidivate due to his present age. The Petitioner is of the view that Examiner

Beale conducted the reconsideration hearing in harmony with the Commission's stated purpose for reopening the case. In light of all the information considered, the Parole Examiner found that the record did not support the alleged "newly found adverse information". However, based on her current re-assessment of all the circumstances in the case, the Parole Examiner recommended reducing the Petitioner's presumptive parole date by 36 months based on a newly found mitigating factor not previously considered. The Commission cannot deny that by opening the door to a special parole hearing it also invited considering viable mitigating factors as well.

**It is of great significance that the Commission recently represented that its mission is to exercise its authority in a way that promotes justice by taking into account the need for just punishment, the offender's risk of recidivism, and his/her conduct in the institution. Its guiding principle is to apply the least restrictive sanction consistent with those factors.** See Exhibit B. That objective, however, seems in sharp contrast with its rejection of Examiner Beale's recommendation by ignoring its own standard when applying it to the Petitioner's case. (1) The Petitioner has been in continuous confinement nearing a span of twenty (20) years that should reasonably

4

suffice for just punishment; (2) the risk of recidivism lessens with age [present age of 68] based on reliable research adopted by the Commission; and (3) his record reflects exemplary institutional conduct.

More specific, the overall record reflects that the Commission previously reopened the Petitioner's initial parole case during the course of habeas proceedings based on adverse information combed from the parole files of Joseph Vershish, codefendant in the Petitioners Methaqualone case. This Honorable Court should also note that the Commission previously represented to the Court, in the course of the previous habeas proceedings, that the reconsideration hearing could prompt immediate parole for the Petitioner. See Exhibit C.

Examiner Beale concluded that the adverse information was unfounded. Mr. Vershish's file also reflects that he manipulated the judicial system by obtaining a substantial reduction of sentence and absconded parole. As reflected in the Commission's "Pre-hearing Assessment" the reconsideration hearing was predicated on the Commission considering new and adverse information located in codefendant Joseph Vershish's file that had been in its possession for nearly a decade. **The Commission was also seeking additional information because the "arrival of**

5

subject (Petitioner Chippas) as a "more serious" risk is not clearly identified in the Commission's rationale because the Commission "normally" views violent or assaultive behavior as a more "serious risk". The document further stated that the Commission "could argue that the subject would again engage in drug offenses at a higher end of the offense scale." See Exhibit D.

Petitioner, most respectfully, maintains that the legal advice of the Commission's house counsel referred to by Mr. Chait in the previously described-exhibit, is incongruous if not contrary to precedent law. In deciding U.S. ex rel. Graham v. U.S. Parole Commission, 629 F.2d 1040, 1044 (5th Cir. 1980), the Fifth Circuit explained that "the purpose" of parole interim proceedings "shall be to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing." Plainly told, the Commission's rejection of Vershish's unreliable information was the main ingredient in its concoction of the special parole hearing. Technically, the Commission could have used the alleged adverse information during the initial parole hearing, considering it was in its possession, rather than being permitted a second bite of the apple. See Schiselman v. U.S. Parole Com'n, 858 F.2d 1232 (7th Cir. 1988). The only

6

existing true " **significant developments or changes in the prisoner's status**" for consideration was the Petitioner's present age. 18 U.S.C. s 4208(h). This, the Honorable U.S. Magistrate Judge failed to grasp in the face of a parole file that essentially reveals the Commission was actually cued by house counsel it "could argue that" the Petitioner is nonetheless a more serious risk "if the Commission found it probable" that he could recidivate.

Petitioner submits the Commission never had a true intent to grant him prompt parole regardless of the favorable resolve. The conscience of this Honorable Court could weigh whether the Commission circumvented its "rationale" to intentionally **maintain** the Petitioner in a status of a "more serious risk" when that is a basis "normally" applied to inmates with a history for violent or assaultive behavior. Here, it is moot point that the Petitioner is a non-violent offender who has reached age 68 during the period of his incarceration. And whether a reasonable **realistic** probability exists that the Petitioner would again engage in drug offenses at the higher end of the offense scale.

Examiner Beale's recommendation merely followed the Commission's policy that adopts the more "contemporary views concerning parole recidivism" by reducing the

7

Petitioner's presumptive parole date by 36 months because of his present age. Dufresne v. Baer, supra.

The U.S. Magistrate Judge possibly never considered Mr. Chickinell's assessment of the reconsideration hearing or that the Commission initially factored in the Petitioner's entire criminal history to derive at his Salient Factor Score. In deciding Baker v. McCall, 543 F.Supp. 498 (S.D.N.Y. 1981) aff'd mem. 697 F.2d 287 (2d Cir. 1982), the Second Circuit Court of Appeals stated "it is irrational and therefore a violation of due process...for the Commission to confine a prisoner beyond the applicable guideline **for the same reason used to select the prisoner's guideline in the first place...**" **Similarly, the Commission in this instance** relied on the exact reason, criminal history, to distinguish him from other older offenders entitled "credit" for their advanced age that the Parole Commission now recognizes are less likely to recidivate. This pertinent mitigating factor has been added in its rules as Item G. In addition, the Commission also acknowledges the aging effect of inmates 65 or older by providing geriatric parole warranted under special circumstances. See Exhibit E.

This Honorable Court has jurisdiction to re-evaluate the rationale of the Commission's sole reason in its

decision not to grant the Petitioner "credit" for his age, a decision that the Honorable Linnea R. Johnson, Chief United States Magistrate Judge, embraced in its entirety. The Petitioner maintains that the Commission's reason for its decision, without more, is starkly novel and not in harmony with the more modern concept of recidivism derived from extensive empirical research. The decision to distinguish the Petitioner from other older offenders based on his criminal history that was already factored in his Salient Factor Score renders the Commission's objective for a modern parole practice totally unnecessary. Contrary to the Commission's decision, parole history teaches that the risk of paroling older offenders lessens rather than increasing with age.

This Honorable Court should not permit the Commission's indiscretion to endure on sheer speculation as a rational reason that there is a realistic significant risk the Petitioner, now age 68, will become involved in similar drug importation schemes upon his release.

Based on the above-stated reasons, the Petitioner respectfully requests this Honorable Court to find the Commission abused its discretion and grant his Petition for

Writ of Habeas Corpus.

Respectfully submitted,

Joe D. Harrington, P.A.
Attorney for Petitioner
Law Offices of
Mark E. NeJame, P.A.
One S. Orange Ave., Ste. 304
Orlando, FL 32801
(407) 245-1231

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been

sent on this the 27 day of September to:

United States Attorney
U.S. Courthouse
299 E. Broward Blvd.
Ft. Lauderdale, FL 33301

on this the 27 day of September, 2000.

Joe D. Harrington, Esquire

EXHIBIT A

**Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**NOTICE OF ACTION ON APPEAL**

Name: Chippas, Louis

Register Number: 18565-004          Institution: Miami FCI

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

## REASONS:

You contend that a decision above your guidelines is not supported by the reasons provided on your Notice of Action and that the decision was based on erroneous information. Your arguments relate to the Notice of Action that was issued in your case on May 12, 1997. You had the opportunity ....al that Notice in 1997, but you failed to do so. The Board has reviewed the previous Notice ....tion and finds that no error was made and therefore, will not reconsider the 1997 decision.

You contend that the Commission failed to consider mitigating circumstances in your case, specifically your age. Your contention has no merit. The Commission does not believe that your propensity for criminal activity has lessened with age since you did not begin your criminal involvement in the importation of drugs until the age of 40, and you were arrested on the instant federal offense at the age of 54.

All decisions by the National Appeals Board on appeal are final.

Date: September 9, 1999          National Appeals Board          Clerk. pgn

EXHIBIT B

U.S. Department of Justice
United States Parole Commission

# AN OVERVIEW OF THE UNITED STATES PAROLE COMMISSION

UNITED STATES DEPARTMENT OF JUSTICE

JANET RENO, ATTORNEY GENERAL

UNITED STATES PAROLE COMMISSION

MICHAEL J. GAINES, CHAIRMAN

EDWARD F. REILLY.JR., COMMISSIONER

JOHN R. SIMPSON, COMMISSIONER

Headquarters Office
Park Place Building
5550 Friendship Boulevard, Suite 420
Chevy Chase. Maryland 20815-7286
301-492-5990

MARCH 11, 1997

## I. INTRODUCTION.

## A. MISSION.

The mission of the United States Parole Commission is to exercise its authority regarding the release and supervision of offenders under its jurisdiction in a way that promotes justice. In making its decisions. the Commission must take into account the need for just punishment, the offender's risk of recidivism, and

the offender's conduct in the institution. Its guiding principle is to apply the least restrictive sanction consistent with just punishment and the protection of the public. The Commission carries out its mission through the conscientious application of its guidelines and policies to each case, tempered by a willingness to give due regard to individual circumstances. The Commission considers information from various sources including, but not limited to, the presentence report, the victim of the offense, the sentencing judge, the prosecutor, prison officials, as well as the offender.

## B. Organization.

The United States Board of Parole was created by Congress in 1930. In 1976, the Parole Commission and Reorganization Act (Public Law 94-233) retitled the agency as the United States Parole Commission. The Commission, an independent agency within the Department of Justice, has parole release jurisdiction over all eligible federal prisoners and supervisory jurisdiction over federal prisoners who are released on parole or as if on parole (mandatory release).

The Commission is responsible for the parole functions pertaining to eligible federal prisoners confined and all federal parolees and mandatory releasees. Hearing examiners conduct parole hearings with eligible federal prisoners. They also conduct revocation hearings for alleged parole or mandatory release violators.

Field supervision of released prisoners is provided by United States Probation Officers, who are employed by the United States District Courts. United States Probation Officers function as parole officers for parolees and mandatory releasees, monitoring and reporting their activities to the Commission.

Policies and procedures are determined by the Commission at quarterly or special meetings of the Commissioners. Rules and regulations are published in the Federal Register of the United States as part of the Code of Federal Regulations. These regulations are set forth at 28 C.F.R. §2.1-2.67. The Chairman, as the Commission's Chief Executive Officer, is responsible for the management of the Commission.

## C. Jurisdiction.

A prisoner serving a sentence of more than one year who committed his/her offense prior to November 1, 1987, is eligible for parole consideration by the Parole Commission, unless sentenced under a statute expressly prohibiting eligibility for parole.

In addition, the Parole Commission has ongoing responsibility for certain cases even if the defendant committed his/her offense on or after November 1, 1987. These are:

... Foreign Transfer Treaty Cases. The Anti Drug Abuse Act of 1988 assigned to the Parole Commission jurisdiction over all "new law" foreign transfer treaty cases. For offenses committed on or after November 1, 1987, the Parole Commission is to apply the guidelines promulgated by the United States Sentencing Commission. Commission decisions in these cases are appealable directly to a U.S. Court of Appeals.   .

...State Witness Protection Cases. The Commission has jurisdiction to supervise probationers and parolees serving state sentences who are transferred to federal jurisdiction because of participation in the Federal Witness Protection Program.

EXHIBIT C

discretion when it reopened his case and then refused to reduce his presumptive parole date in 1997, and that the respondents' failure to provide documentation relating to the reconsideration hearing as directed by Court Order indicates that abuse.

A re-reading of the respondents' First Response, and of the petitioner's two motions to expedite reveals that the basis for the charge that the government is "stonewalling," and attempting to "derail due process," is the petitioner's apparent belief that: 1) the reopening of his case in the first instance in December of 1996 was an act in bad faith, designed to prevent or delay review of his federal habeas corpus claims, and 2) that the reasons given by the respondents for doing so were disingenuous since, notwithstanding the fact that Chippas was informed that he would be required to defend against "new and significant adverse information" which could result in rescission of his presumptive parole date [the same information which according to Chippas was "dismissed" as "not credible" by the hearing examiner on April 3, 1997] the government in it's response to the §2241 petition (DE# 9) also suggested that the reconsideration hearing could, on the other hand, result in prompt parole for Chippas.

The government's first response, in addition to stating the government's intent to reopen Chippas' case because there was adverse information which the Commission believed might warrant rescission of Chippas' presumptive parole date (DE# 9, at pp. 4 and 5), also stated that: "[t]he new hearing will give Chippas the opportunity to present his side of the story concerning the new adverse information..."(DE# 9, p. 4); "[t]his [reconsideration] hearing will allow the Commission to re-examine the reasoning employed for the continuance given to Chippas, after receiving any further arguments by the petitioner on his parole denial..." (DE# 9, at p. 5); "[a]t a minimum, the new hearing will allow the Commission to develop a better administrative record of the reasoning for its decision in this case, which will facilitate

judicial review..." (DE# 9, at p. 5); and "[a] new hearing may possibly result in a prompt parole for Chippas, which would probably moot the habeas corpus claim and obviate judicial review..." (DE# 9, at pp. 5-6).

From a review of the present record it appears unlikely that the government reopened Chippas' case because the reconsideration hearing might "possibly result in a prompt parole for Chippas."

It may very well be that the Commission did reopen Chippas' case in reaction to his filing this habeas corpus action. The government, without disclosing the possible existence of adverse information in its December 2, 1996 motion for extension of time, requested an extension of time until December 13, to respond to the petition. The government's first response (DE# 9) was filed on December 13, 1996, just one day after the December 12 Notice of Action was issued informing Chippas that his parole case was being reopened.

While the government stated in its response that the reconsideration hearing: 1) would allow the Commission to reconsider it's decision to set Chippas' presumptive parole date at 204 months, and 2) would "at a minimum" allow "development of the administrative record" and "facilitate judicial review," its failure to comply with the supplemental order to show cause issued in June of 1997 is inconsistent with those goals, and at this juncture, at least, appears to lend credence to petitioner Chippas' arguments.

Chippas has disclosed that the 1997 reconsideration hearing was recorded. This suggests that the earlier proceeding in 1995 may also have been recorded. It appears that judicial review of the administrative record which the government has developed in Chippas' case therefore need not be limited solely to written hearing summaries; and copies of transcripts of the November 1995 hearing before hearing examiner Chait, and of the April 1997

6

EXHIBIT D

## PREHEARING ASSESSMENT

| Hearing Type:SIH/Rescission | Institution:FCI MIAMI |
|---|---|
| Name:        CHIPPAS, Louis | 2/3 or MR Date:  1/15/2016 |
| Reg No:       18565-004 | Fines/Restitution/Court Assessment: non |
| Date Dictated:2/16/97 | Reviewer:    Lee H. Chait |

### I.    PREVIOUS COMMISSION ACTION:

An initial hearing was conducted 11/7/95 at the FCI Miami. A recommendation was made for a release at 180 months, later modified upon review to 204 months (1/15/2003).

The offense was rated category eight (cocaine); sf score was 8; guidelines 100+ months. Subject was found to be a more serious risk based on narcotic trafficking related convictions in 1972 and 1978. He was also acquitted of other narcotics charges. his prior encounters with the criminal justice system did not deter him from his current behavior which involved two separate, unrelated, extremely large scale drug trafficking behaviors.

On appeal, the decision was affirmed but the reasons modified to eliminate reference to subjects acquittal but to include a reference to his leaving the USA and being arrested in Columbia with 49 kilograms of hashish.

**NOTE: The reasons that were modified did not appear on the NOA dated** ⚡ **6/4/96.**

Notice of Action dated 12/12/96 ordered the case reopened for a special reconsideration hearing on the next available docket to give subject the opportunity to submit further arguments and for the Commission to consider information located in codefendant Joseph Vershish's file.

This information was to be disclosed to subject.

In summary the information is described as: Allegations that you obtained computerized law enforcement information from a US Customs agent; that you intimidated witnesses in federal prosecutions; and that you directed co-conspirators in the methaqualone offense.

The Commission was also seeking additional information.

See Mr. Chickinell's memo recommending reopening dated 12/9/96. Mr. Chickinell points out that the arrival of subject as a " more serious" risk is not clearly identified in the Commission's rationale. Mr. Chickinell argues that the Commission "normally" views violent or assaultive behavior as a "more serious" risk. The Commission could argue that subject is a "more serious" risk if the Commission found it probable that the subject would again engage in drug offenses at the higher end of the offense scale.

CHIPPAS.185                                              Page 1 of

If more detailed information is not obtained regarding the alleged possessio of hashish in Colombia in 1975 than the Commission should consider not using this information.

That the subject left the USA while under supervision and went to a country commonly known to be a source of drugs may be significant.

If inquiry to the USA's office regarding the threats against Vershish by Chippas; the leaking of computerized information (subject and the agent were acquitted) and other factors is not supported by new information (current information is insufficient in Mr. Chickinell's opinion) this area of inquiry should be terminated.

Mr. Chickinell also points out that Vershish's credibility includes parole violations of false reporting.

**SUMMARY OF INFORMATION IN VERSHISH FILE:**

Letter of AUSA Massey reporting that according to Vershish, Chippas had access to "classified law enforcement information". Vershish faced a death threat following the indictment of Chippas and ASAIC Moore but the letter does not say the threat could be connected to Chippas.

The file contains handwritten statements of Vershish which allege that witnesses gave "distorted' information out of fear of Louis Chippas.

One of the documents provided is a handwritten outline of the Methaqualone case, 84-6034 in which Vershish again describes pressure from Chippas and gives a detailed listing of the occurrences in this case to include meetings with Chippas and Chippas' directions to others.

There is an 8 page typed statement regarding the Methaqualone that identifies Chippas as the prime-mover behind this case.

The file contains excerpts of testimony in the Williams case in which the Judge apparently allowed the written statement of Vershish to be admitted into evidence.

The file contains the letter of 3/26/92 from the USPO requesting a warrant for Vershish for multiple charges including failure to file truthful reports on 4 occasions.

**II.  INSTITUTIONAL ADJUSTMENT AND RELEASE PLANS:**

unavailable

**III. MISCONDUCT DETAILS:**

**Severity Category:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PROBATION OFFICE

CARLOS JUENKE
CHIEF PROBATION OFFICER

101 N.E. THIRD AVENUE
FOURTH FLOOR
FT. LAUDERDALE, FL 33301

March 16, 1992

MAR 1 0 1992

DEPT. OF JUSTICE
PAROLE COMMISSION

SERO - United States Parole Commission
5550 Friendship Boulevard - Suite 420
Chevy Chase, Maryland 20815
ATTENTION: Regional Office

RE: VERSHISH, Joseph
Reg. No. 18515-004
FTD: 7-18-94
Institution: FCI, Pensacola
WARRANT REQUEST

Dear Commissioner:

On February 28, 1986, the above named was sentenced in the Southern District of Florida for Conspiracy to Import Methaqualone, Conspiracy to Possess/Distribute Methaqualone, Conspiracy to Create Counterfeit Substance, Aiding and Abetting, Importation of Methaqualone, Traveling Interstate Commerce, Distribute Proceeds of illegal Transactions, and received five years custody of the Attorney General as to Count One and five years consecutive to Count One for Counts Two through Seven. A five year special parole term was ordered as to Count Four. On November 24, 1986, he was sentenced on another case in the Southern District of Florida for the offense of Conspiracy to Import Cocaine for which he received five years custody of the Attorney General concurrent with the previously mentioned case. On May 26, 1989, his original Judgment was amended and ordered to serve five years custody of the Attorney General on all counts concurrent. On January 15, 1992, his special parole term was set aside, as it should not have not been imposed based on a conspiracy case. On September 13, 1990, he was released from the halfway house to begin supervision in the Southern District of Florida. Mr. Vershish is currently in violation of terms of his release as follows:

"Failure to Submit a Truthful Written Report" in that on April 4, 1991, the parolee received $13,100 from William Haslam Sr. and failed to report same on his monthly supervision report.

Commissioner, U.S. Parole Commission
Chevy Chase, MD
March 16, 1992
Page 2

RE:    VERSHISH, Joseph
       Warrant Request

"Failure to Submit a Truthful Written Report" in that on or
before April 1991, and continuing to the present, the parolee has
been operating a seafood import/export business without the
permission or knowledge of the U.S. Probation Office.  Monthly
supervision reports for the months of April 1991 through February
1992 have failed to include said employment.

"Failure to Submit a Truthful Written Report" in that in
September 1991, he received $6,500 from Larry Palumbo and failed
to indicate same on his monthly supervision report for September.

"Violation of the Law" in that on October 9, 1991, the parolee
issued a worthless check to Larry Palumbo in the amount of $7,000.

"Failure to Submit a Truthful Written Report" in that on or
about December 26, 1991, the parolee received $15,000 from Sam May
and failed to include same on his monthly supervision report for
the month of December.

"Failure to Submit Monthly Supervision Reports" in that the
parolee has failed to submit monthly supervision reports for
January and February 1992.

"Failure to Report Change of Residence" in that, on or before
February 11, 1992, the parolee has absconded and his present
whereabouts are unknown.

HISTORY OF SUPERVISION:  The parolee has maintained residence
at 1505 Congressional Way, Pompano Beach, Florida and employment
at Colorado Prime, Incorporated as a branch manager in their Miami
office.

Recently, the parolee requested permission to relocate to
Philadelphia in an effort to work with law enforcement agents in
an attempt to bring evidence against Colombian money launderers.
Shortly after his request for relocation, various victims of the
seafood business began contacting me and informing that they had
given subject monies to open a seafood import/export business and
have lost contact with subject and were worried about their
investments.

The parolee never informed me that he was actively operating
a seafood import/export business nor did he inform that he had
received such monies from any of the victims previously mentioned.
I have been unable to make contact with the parolee since January

Commissioner, U.S. Parole Commission
Chevy Chase, MD
March 16, 1992
Page 3

                    RE:  VERSHISH, Joseph
                         <u>Warrant Request</u>

29, 1992.  He wrote a letter dated March 10, 1992 (attached)
implying he is aware of these matters but is not prepared to report
to discuss them.

        I have other information that he has possibly traveled without
permission based on statements made from the victims in the seafood
import/export business.

        Because the parolee has failed to notify the U.S. Probation
Officer of his employment in the seafood import/export business,
falsified his monthly supervision reports and wrote worthless
checks, it is recommended that a parole warrant be issued.

                            Respectfully submitted

                            David L. Sutherland
                            U.S. Probation Officer

DLS:gwf
Attachments

EXHIBIT E

[Code of Federal Regulations]
[Title 28 Volume 1, Parts 0 to 42]
[Revised as of July 1, 1999]
From the U.S. Government Printing Office via GPO Access
[CITE: 28CFR2.78]

[Page 162-163]

TITLE 28--JUDICIAL ADMINISTRATION

CHAPTER I--DEPARTMENT OF JUSTICE

PART 2--PAROLE, RELEASE, SUPERVISION AND RECOMMITMENT OF PRISONERS, YOUTH OFFENDERS,

Subpart C--District of Columbia Code Prisoners and Parolees

Sec. 2.78  Geriatric parole.

    (a) Upon receipt of a report from the institution in which the
prisoner is confined that a prisoner who is at least 65 years of age has
a chronic infirmity, illness, or disease related to aging, the
Commission shall determine whether or not to release the prisoner on
geriatric parole. Release on geriatric parole may be ordered by the
Commission at any time, whether or not the prisoner has completed his or
her minimum sentence. Consideration for geriatric parole shall be in
addition to any other parole for which a prisoner may be eligible.
    (b) A prisoner may be granted a geriatric parole if the Commission
finds that:
    (1) There is a low risk that the prisoner will commit new crimes;
and
    (2) The prisoner's release would not be incompatible with the
welfare of society.

[[Page 163]]

    (c) The seriousness of the prisoner's crime, and the age at which it
was committed, shall be considered in determining whether or not a
geriatric parole should be granted prior to completion of a prisoner's
minimum sentence.
    (d) A prisoner, or a prisoner's representative, may apply for a
geriatric parole by submitting an application to the institution case
management staff, who shall forward the application accompanied by a
medical report and any recommendations within 30 days. The Commission
shall render a decision within 30 days of receiving the application and
report.
    (e) In determining whether or not to grant a geriatric parole, the
Commission shall consider the following factors:
    (1) Age of the prisoner;
    (2) Severity of illness, disease, or infirmities;
    (3) Comprehensive health evaluation;
    (4) Institutional behavior;
    (5) Level of risk for violence;
    (6) Criminal history; and
    (7) Alternatives to maintaining geriatric long-term prisoners in
traditional prison settings.
    (D.C. Code 24-265(c)(1)-(7)).
    (f) A prisoner, the prisoner's representative, or the institution,
may request the Commission to reconsider its decision on the basis of
changed circumstances.
    (g) Notwithstanding any other provision of this section--
    (1) A prisoner who has been convicted of first degree murder or who
has been sentenced for a crime committed while armed under D.C. Code 22-
2903, 22-3202, or 22-3204(b), shall not be eligible for geriatric parole
(D.C. Code 24-267); and
    (2) A prisoner shall not be eligible for geriatric parole on the